## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HERB CHAMBERS 1188, Inc., d/b/a HERB CHAMBERS JAGUAR LAND ROVER BOSTON,   )<br><br>Plaintiff,   )<br><br>v.   )<br><br>DERIC MARCELL THOMPSON,   )<br><br>Defendant.   ) | Civil Action No. |

## VERIFIED COMPLAINT

Plaintiff, Herb Chambers 1188, Inc. ("Chambers"), by and through its attorney, alleges the following:

## NATURE OF THE ACTION

1.     This action arises out of the misuse by defendant, Deric Marcell Thompson ("defendant"), of the Uniform Commercial Code ("UCC") filing system to create false liens purportedly totaling over $2.7 Million at the Massachusetts Secretary of State's Office, based upon false claims, which are in turn supported by fabricated contract documents.  Defendant's antics amount to a form of paper terrorism that imperils Chambers' inventory financing which is provided by a legitimate lender with valid and enforceable liens.  Chambers' financing arrangement requires that Chambers not use or allow its inventory to secure any other financing instruments. Defendant's false UCC-1 filing creates the appearance of a breach of that obligation and clouds Chambers' title to its inventory.

2.      Chambers brings this action seeking a declaration that defendant's false UCC-1 financing statement and subsequent UCC-3 amendment, which he filed with the Massachusetts Secretary of State against Chambers, are null, void, and without legal effect and seeking an injunction prohibiting the defendant from filing any further false lien documents or taking any action seeking to enforce his claims based on the fraudulently filed UCC-1 financing statement. Plaintiff also requests that defendant's copyright and trademark claims pertaining to Chambers' use of his name on written correspondence, and which he asserted in connection with his scheme, be declared invalid. Finally, plaintiff seeks an injunction prohibiting defendant from filing any action in the United States Tax Court based on a fraudulent 1099C he created which purported to relate to the cancellation of a debt that never existed, or any action alleging Copyright or Trademark infringement naming Chambers, its officers, employees, attorneys, related entities and agents, without first seeking and obtaining leave from this Court.

<u>**PARTIES**</u>

3.      Plaintiff is a Massachusetts corporation with its principal place of business at 1188 Commonwealth Avenue, Boston, Massachusetts.

4.      Defendant is an individual who resides in Woonsocket, Rhode Island.

<u>**JURISDICTION AND VENUE**</u>

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.§ 1332 in that this is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars ($75,000).

6.      Jurisdiction is also conferred on this Court pursuant to 28 U.S.C. §1338(a) in that this civil action includes issues of copyright and/or trademark infringement.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District. In addition, venue is proper in this District pursuant to 28 U.S.C. § 1392 because a substantial portion of the property that is the subject of this lawsuit – namely, Chambers' inventory which is falsely identified by defendant as collateral in a UCC-1 Financing Statement filed in the Massachusetts Secretary of State's Office – is also located in this District.

## FACTS

8.      On January 29, 2022, defendant contacted Chambers to inquire about purchasing a Range Rover Sport V8 and, when prompted, opted into text messaging with a sales associate to discuss the vehicle. True and accurate copies of the texts are attached hereto as Exhibit 1.

9.      Upon being notified that the vehicle was available, defendant responded: "OK are you able to put together a purchase order signed by an authorized rep at the dealer.  My trust is going to pay for it. I need that to give it to my trustee so he can sign and approve funding for the vehicle.  Is that possible?". See Ex. 1, p. 1.

10.     The sales associate confirmed that he could send a signed Motor Vehicle Purchase Contract ("MVPC") for defendant to present to his Trustee for execution and approval of funding, requested the full address to which the car would be registered to calculate the correct tax, and requested a copy of defendant's license.  Ex. 1, p. 2.

11.     The defendant alleged that he didn't drive but that he would send his state identification. A true and accurate copy of the Rhode Island Identification Card defendant sent to Chambers is attached as Exhibit 2. The name and address on the Identification Card is the same as the name and address he provided for the vehicle's registration.  See Ex. 1, p.3.

12.     After getting confirmation that an MVPC would be forthcoming, the defendant and Chambers had the following text exchange:

> Defendant: OK and once my trustee signs I can scan it and send it back and we can schedule delivery. Is that included in the cost or is it separate?
>
> Chambers: We need the money to be in our account 1st then we can either ship the vehicle which is about 1200 I can add that.
>
> Defendant: I forgot, is the MCO [Manufacturer's Certificate of Origin] \ MSO [Manufacturer's Statement of Origin] going to be included in the paperwork?
>
> Chambers: No. Money has to be in our account 1st.
>
> Defendant: **No problem please send me banking information. Routing and account number please. (emphasis added).**

See, Ex. 1, p. 6.

13.     On January 29, 2022, pursuant to the communications with the defendant, Chambers sent the defendant a Motor Vehicle Purchase Contract ("MVPC") to sell the vehicle to defendant for $147,497.40 which was signed by dealer representative, Adriano Polanco. The MVPC required that defendant pay "cash…simultaneously with its delivery." A true and accurate copy of the MVPC is attached as Exhibit 3.

14.     On January 30, 2022, Chambers also emailed the defendant the wiring instructions. A true and accurate copy of the email with attached wire instructions is attached as Exhibit 4.

15.     Defendant responded by email that same day advising Chambers as follows: "I just wanted to advise you that a signed contract and payment for $148,498.00 for the [vehicle]…will go out tomorrow via certified mail…We will schedule a pickup for the vehicle within 24 hours after receipt of payment…." See, Ex. 4.

16.     The package that arrived at the dealership, however, did not contain the original MVPC signed by defendant or payment of the purchase price. Instead, it contained a rambling,

4

discursive, and largely unintelligible letter designated as a "Conditional Acceptance of Motor Vehicle Purchase Contract" and addressed to Chambers' Sales Manager as "Trustee of the Social Security Cestui Trust." A true and accurate copy of the January 29, 2022, letter and accompanying documents is attached hereto as Exhibit 5 (hereafter the "CA Letter").

17.     The CA Letter was accompanied by a copy of the MVPC signed by Chambers to which the defendant had made significant unilateral changes, blacking out large sections of text and writing in additional terms, including changing the form of payment from cash to a "Certificate of Deposit" (the "CD").  See Ex. 5, p.7.

18.     The CD purports to be for the entire purchase price of the vehicle of $147,498.00 and purports to be underwritten by, among other things, "over three quintillion, five hundred quadrillion in equity debt against the debtors." See Ex. 5, p.9.

19.     The CD is not backed or issued by any bank or financial institution. Instead, the CD was issued and signed by "Deric-Marcell Thompson ©, beneficiary".

20.     Defendant claimed in the CA Letter that his "Conditional Acceptance" of the MVPC established "a Common Law-contract between us under the Postal rule" and stated that "I, Deric-Marcell: Thompson©, Beneficiary, intend to deposit a tender payment (Certificate of Deposit), in full transparency, under my terms and conditions as true/full custodian of the Social Security Cestui Trust." See Ex. 5.

21.     The letter also stated that "I shall make a Certificate of Deposit tender payment of $147,498.00 to HERB CHAMBERS JAGUAR RANGE ROVER BOSTON for your financial institution to convert my tender payment to money of account USD" and claimed that the CD was "pre-paid, pre-authorized and pre-approved secured under perpetuity UCC Record No.

202183423070" and that it was "backed by the full faith and credit of the United States of America, restated, and incorporated in full by reference as if set forth in full, without prejudice." See Ex. 5, p.2.

22.     This UCC filing number listed on the certificate is linked to a UCC-1 statement filed with the Massachusetts Secretary of State on December 6, 2021 which lists the debtor as the "State of Massachusetts Deric Marcell Thompson COLB#R756986", lists the secured party as Deric M Thompson, and lists the collateral as "any and all collateral held/deposited in any commercial accounts in the name of the legal fiction debtor aka DERIC MARCELL THOMPSON© . . . ."

23.     The CA Letter includes several pages under the heading "Points and Authorities" which are ramblings on the legal system and the UCC. The burden of defendant's discourse in this largely unintelligible rant is to establish the purported legitimacy of the obviously fraudulent CD as a means of payment. In that regard, the "Points and Authorities" in the CA Letter culminates in the following bizarre, and legally untenable, conclusion:

> Under 18 USC 8, The term ***"obligation or other security of the United States"*** includes all bonds, certificates of indebtedness, national bank currency, Federal Reserve notes, Federal Reserve bank notes, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, ***cerificates of deposit,*** bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, issued under any Act of Congress, and ***<u>canceled United States stamps</u>.***
>
> **<u>Under 12 USC 411, The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, Customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve Bank. (Dec. 23, 1913, Ch. 6, § 16 (par.), 38 Stat. 265; Jan. 30, 1934, Ch. 6, § 2(b)(1), 48 Stat. 337; Au. 23, 1935, Ch, 614, title II, § 203(a), 49 Stat. 704.)</u>**

See Ex. 5, CA Letter, Points and Authorities, p. 4, ¶¶ 18-19 (all emphasis in original).

24.     The CA Letter concludes by stating that defendant is "fully aware of my rights under the Uniform Commercial Code" and that if Chambers did not understand any of the conditions, its "financial institution should be able to clarify what is intended after review of Point and Authorities."  See Ex. 5, p. 5.

25.     The CA Letter concludes with the threat of creating a "Claim of Lien" against each of Chambers' sales associates addressed in the letter heading and Chambers "and file a financing statement against you each, supporting my lien as I deem necessary." The letter states that Chambers had "no right of action or recourse in any action at law, action in equity or Admiralty or any other law herein written or implied against me or my filings." See Ex. 5, p. 5.

26.     The CA Letter also purported to unilaterally grant defendant a "Power of Authority/Attorney [from Chambers] to me . . . so that I am able to collect the full amount through a lien…" and the alleged power to file additional liens each year thereafter "if any such injury to me persists on a yearly basis." See Ex. 5, p. 5.

27.     On January 31, 2022, defendant filed a UCC-3 amendment with the Rhode Island Secretary of State, purporting to add the Range Rover Sport that was the subject of the original MVPC and the fraudulently revised "Conditional Acceptance" as additional collateral under a previously filed and equally bogus UCC-1.  A true and accurate copy of the Rhode Island UCC-3 filing is attached hereto as Exhibit 6.

28.     Defendant then emailed several Chambers' associates on February 1, 2022, advising them that the vehicle would be picked up via a flatbread truck on that day to which Sean King, Chambers' Manager, responded stating that no vehicle would be picked up without the signed original MVPC and full payment being made.

29.     On February 2, 2022, defendant filed a UCC-1 Financing Statement filing number

202285220810 with the Massachusetts Secretary of State listing Chambers and Chambers'

Manager, Sean King, as debtors without any basis in law or fact for doing so and listing "any and

all items of property of debtor . . .[including] all: motor vehicles . . . ." as collateral. A true and

accurate copy of the Massachusetts UCC-1 filing is attached hereto as Exhibit 7.

30.     On February 3, 2022, defendant filed a fraudulent UCC-3 amendment form with

the Massachusetts Secretary of State purporting to amend the collateral subject to the UCC-1 as

including 27 specifically listed vehicles in Chambers' inventory with a total estimated value,

according to defendant, of $2,670,770.  A true and accurate copy of the Massachusetts UCC-3

filing is attached hereto as Exhibit 8.

31.     Also, on February 3, 2022, defendant replied to Sean King's earlier email falsely

alleging that he had a binding contract with Chambers, even though he had unilaterally altered

the terms to reflect payment by virtue of a bogus CD, and attaching copies of the UCC filings as

well as complaints he had filed with the Massachusetts Attorney General, the Federal Trade

Commission, and the Better Business Bureau – all arising out of his fabricated and fraudulent

contract claim.  A true and accurate copy of the February 3, 2022 email and attachments is

attached hereto as Exhibit 9.

32.     As with his previous bizarre rants, defendant's February 3, 2022 email was based

on the "Postal Rule" and his previously stated "Points and Authorities" and alleged that there

was a binding contract based on his fraudulent "Conditional Acceptance" on which he claimed

he was entitled to file UCC-1 liens, which he could sell and thereby cause Chambers' inventory

worth $2.7 million dollars to be seized. The email states in pertinent part:

> …You have 24 hours to deliver the vehicle to my home, or I will sell the UCC lien
> to the highest bidder to where they can collect any and all assets listed. Especially,

the 27 vehicles listed in the 2022 Inventory which are included as collateral in the UCC 3 attached. You are an authorized agent of Land Rover Boston. I authorize you, Sean King, with my Power of Authority/Attorney to release the vehicle, to have it delivered with All Vehicle Documentation, and All Keys, to 233 Halsey Road, Woonsocket Rhode Island, 02895. I'm within my rights, due to the conditions of the <u>Conditional Acceptance of the Motor Vehicle Purchase Contract, Certified Mail # 7019 0700 0001 1733 0625</u> which has been delivered at 1:17 pm today! I would rather handle this administratively between private parties than to get courts involved, so would you. Writs of Execution and Seizure of Assets by the Suffolk County Sheriff's Department is not where I want to go, but it's a trip I will take with no problem. It did not have to come to this, but my hand was forced. The 2022 inventory is an estimated $2.7 million dollars.  The [vehicle] is only $147,497.40. Don't let one vehicle that's paid for be the cause of seizure of an entire inventory. Thanks in Advance Deric….

33.     On February 8, 2022, Chambers filed a UCC-5 Information Statement with the Massachusetts Secretary of State, to provide notice of the fraudulently filed UCC-1.  A true and accurate copy of the UCC-5 Information Statement is attached hereto as Exhibit 10.

34.     On February 9, 2022, Chambers, through counsel, sent a letter to defendant demanding that he file a termination statement pursuant to the provisions of M.G.L.c. 106 § 9-513 with each filing officer with whom the false UCC-1 financing statement had been filed. A true and accurate copy of the February 9, 2022 Demand for Filing Termination Statement of Wrongfully Filed Financing Statement is attached hereto as Exhibit 11.

35.     On February 11, 2022, in furtherance of his fraudulent scheme, defendant sent an email to Chambers stating that he had "cancelled the debt ($147,498.00)" for the vehicle, even though no debt to him ever existed, and attached an IRS Form 1099C that he claimed "has been submitted to the IRS."  Incredibly, the attached 1099C included the figure $1,474,980 as the amount of the debt discharged and it is this amount that would be deemed income to Chambers if the document had been validly issued.  A true and accurate copy of the February 11 email and the attached Form 1099C is attached hereto as Exhibit 12.

36.     The defendant asserted in the February 11, 2022 email that through this wholly fraudulent and absurd artifice, he was entitled to delivery of the vehicle he had not paid for and stated that:

> If there is dishonor with this, I will have no choice but to petition your dishonor to the ***United States Tax Court under*** <u>***Title XXXII Rule 331. Commencement of Lien and Levy Action***</u>. I will also file a 3949A form with the IRS reporting Herb Chambers 1188, Inc. This is within the conditions of Conditional Acceptance of the Motor Vehicle Purchase Contract.

See Ex. 12, February 11, 2022 email.

37.     On February 12, 2022, defendant responded to Chambers' demand that he file a termination statement, with another rambling, discursive, and confusing response which was titled "Conditional Acceptance upon Proof of Claim for Amendment of UCC Financing Statement". In the response, defendant demanded Chambers respond to 23 "Proofs of Claim" under penalty of perjury. Defendant then stated that he would only terminate the UCC-1 Financing statements upon delivery of the vehicle. He also asserted that he was owed $4,000,000 "for any injuries to me" and further claimed that Chambers agreed to give defendant a power of attorney to collect payment on this debt, which also authorized him to file UCC-1 statements related to the debt. A true and accurate copy of the February 12, 2022 letter is attached hereto as Exhibit 13.

38.     In a further effort to perpetrate a fraud on Chambers, the defendant included in the February 12, 2022 letter an alleged "Copyright Notice" in which he essentially purported to copyright his name and establish a $500,000 charge for each use of his name in any document. Based on this document, defendant asserted that he was entitled to total damages of $1,000,000 relating to the use of his name in Chambers' demand letter. The Copyright Notice begins "All rights reserved re; copyright of trade-name/trademark, DERIC MARCELL THOMPSON" – the

10

exact same name that appears on his Rhode Island Identification Card. Compare, Exhibit 13 and enclosed "Copyright Notice" and Exhibit 2, Rhode Island Identification Card.

39.     On February 21, 2022, Chambers responded through counsel asserting that the Demand for Filing Termination Statement of Wrongfully Filed Financing Statement was unconditional and required an unconditional response, and that Chambers would be seeking relief in court. A true and accurate copy of the February 21, 2022 letter is attached hereto as Exhibit 14.

40.     On February 22, 2022, defendant sent a second document purporting to be a "Copyright Notice", to Chambers' counsel and attached an invoice addressed individually to counsel demanding $1,500,000 – or $500,000 for each instance that counsel used defendant's name in the demand letter and subsequent response letter. A true and accurate copy of the February 22, 2022 "Copyright Notice" is attached hereto as Exhibit 15.

41.     This "Copyright Notice" claims a security interest in "all of Edward C. Cooley's property and interest in property" for the total amount invoiced and bizarrely asserts that counsel agrees to pledge all of his property as collateral for the copyright claim, that counsel agrees to the filing of a UCC-1 financing statement stating same, that any and all resulting UCC-1 statements are not bogus nor will counsel claim as much, and asserts that counsel waives any and all defenses.   See, Exhibit 15.

## COUNT I
### (Declaratory Judgment 28 USC §2201 – No Valid Contract or Power of Attorney)

42.     Chambers repeats and realleges paragraphs 1-41 as if fully set forth herein.

43.     The defendant has asserted that his "Conditional Acceptance" formed a binding contract, notwithstanding his unilateral alteration of material terms including changing the

payment term from cash to a bogus certificate of deposit that he created and which was not issued by any bank nor supported by any currency or thing of value.

44.     Defendant further asserts that the "Conditional Acceptance" permitted him to file a UCC-1 financing statement and granted him a power of attorney to act on behalf of Chambers.

45.     Defendant's claims are without legal basis and no valid contract of any kind between Chambers and defendant was ever formed.

46.     Pursuant to 28 USC §2201, Chambers seeks a binding declaration that no valid contract was entered, defendant has no power of attorney to act on behalf of Chambers, and defendant had no valid security interest that would enable him to file a UCC-1 Financing Statement listing Chambers and/or its representatives as the debtors.

47.     Such determination of the issues presented will afford relief from uncertainty and insecurity with respect to rights, status, and legal relations between the parties.

## COUNT II
### (Declaratory Judgment 28 USC §2201 – Invalid UCC Filings)

48.     Chambers repeats and realleges paragraphs 1-47 as if fully set forth herein.

49.     The defendant has asserted through the UCC-1 filing that he has a security interest in the 2022 Range Rover Sport and, by virtue of the UCC-3, a security interest in other motor vehicles in Chambers' inventory valued at more than $2.7 Million. He also threatened to sell his alleged security interest to a third party.

50.     There is no valid contract, loan, or other instrument that grants defendant a security interest in any of Chambers' property and Chambers never authorized any security interest in its property, nor did its employees or counsel.

51.     Defendant's UCC filings with the Massachusetts Secretary of State have created an actual controversy within the jurisdiction of this court by falsely representing that Chambers

is indebted to defendant and that Chambers granted defendant a security interest in its property when Chambers never authorized or entered a contract granting any security interest in its property.

52.     Pursuant to 28 USC §2201, Chambers seeks a binding declaration that the UCC-1 financing statement and UCC-3 amendment are fraudulent, invalid, null, void and of no legal effect.

53.     Such determination of the issues presented will afford relief from uncertainty and insecurity with respect to rights, status, and legal relations between the parties.

## COUNT III

### (Declaratory Judgment 28 USC §2201 – Invalid Copyright)

54.     Chambers repeats and realleges paragraphs 1-53 as if fully set forth herein.

55.     Defendant has threatened copyright actions against Chambers and its employees, representatives, and counsel, for using defendant's name in correspondence, even going so far as send counsel an "Invoice" for $1,500,000 for alleged infringements.

56.     Defendant's name, which is set out on his Rhode Island ID card, is not a proper subject of copyright pursuant to 17 U.S.C. § 102.

57.     Pursuant to 28 USC §2201, Chambers seeks a binding declaration that defendant has no valid copyright and therefore no claim for any amount of damages against Chambers, its employees, or its counsel.

58.     Defendant's assertion of a copyright claim has caused a genuine controversy in this case.

59.     Such determination of the issues presented will afford relief from uncertainty and insecurity with respect to rights, status, and legal relations between the parties.

## COUNT IV

### (Declaratory Judgment 28 USC §2201 – Invalid Trademark)

60.     Chambers repeats and realleges paragraphs 1-59 as if fully set forth herein.

61.     Defendant has asserted that his name is trademarked, and he has threatened actions against Chambers and its employees and representatives for allegedly violating his trademark.

62.     Defendant's claim of trademark has created an actual controversy within the jurisdiction of this court.

63.     Plaintiff's name is not a valid trademark pursuant to 15 U.S.C.A. § 1051, § 1125, and § 1127.

64.     There is no viable cause of action for a noncommercial use of a trademark. 15 USCA § 1125.

65.     Pursuant to 28 USC §2201, Chambers seeks a binding declaration that the defendant has no valid trademark on his name and therefore no claim against Chambers, its employees, or counsel for using his name in correspondence, communications, or otherwise.

66.     Such determination of the issues presented will afford relief from uncertainty and insecurity with respect to rights, status, and legal relations between the parties.

## COUNT V

### (Declaratory Judgment 28 USC §2201 – No Debt Owed and Invalid Form 1099)

67.     Chambers repeats and realleges paragraphs 1-66 as if fully set forth herein.

68.     The defendant has asserted that that he "cancelled the debt ($147,498.00)" for the vehicle, even though no debt to him ever existed, and he submitted to the IRS a Form 1099C.

14

69.     The defendant threatened to bring an action against Chambers in the United States Tax Court and to also file a 3949A form with the IRS reporting Herb Chambers 1188, Inc. if the vehicle was not delivered to him.

70.     Defendant's actions are without legal basis as no debt was ever owed to him and there was therefore no debt for him to cancel and report to the IRS with a Form 1099C.

71.     Defendant's claim of a debt owed to him on which the purported cancellation and subsequent 1099C were based have created an actual controversy within the jurisdiction of this court.

72.     Pursuant to 28 USC §2201, Chambers seeks a binding declaration that defendant was not owed any debt by Chambers and the 1099C was therefore invalidly issued and is void.

73.     Such determination of the issues presented will afford relief from uncertainty and insecurity with respect to rights, status, and legal relations between the parties.

## COUNT VI
### (Injunctive Relief)

74.     Chambers repeats and realleges paragraphs 1-73 as if fully set forth herein.

75.     Pursuant to G.L. c. 106 § 9-625, upon establishing that defendant filed a false UCC-1, Chambers is entitled to an order enjoining defendant from taking any action to enforce the UCC-1 or from collecting or disposing of collateral pursuant to the UCC-1.

76.     Defendant's conduct described herein constitutes violations of G.L. c. 106 §9-509 by filing a UCC-1 statement without satisfying the conditions required by that section that Chambers authorize the filing by entering a security agreement or otherwise, and defendant does not hold any valid security interest against Chambers.

77.     Pursuant to G.L. c. 106 § 9-625, Chambers is entitled to an order permanently enjoining defendant, his agents, and all others in active participation with him from filing or recording documents which purport to create any nonconsensual lien against Chambers.

78.     Additionally, Chambers is entitled to an injunction prohibiting defendant from filing any further UCC-1 Financing Statements, liens, encumbrances, or any other instruments, clouding Chambers' title to its property and inventory. This request for relief is appropriate based on defendant's previous filing of multiple fraudulent documents concerning the property, including the UCC-1 Financing Statement, UCC-3 Amendment, and Form 1099C, forcing Chambers to engage in litigation to secure its ownership of the property.

79.     Chambers is further entitled to an injunction prohibiting defendant from filing any action in the United States Tax Court based on the fraudulent 1099C, or any Copyright or Trademark infringement claim regarding the use of defendant's name against Chambers, its officers, employees, attorneys, related entities and agents, without first seeking and obtaining leave from this Court.

80.     This injunction is necessary to preserve and protect the jurisdiction of this court to decide the merits of this case by preventing defendant from filing collateral attacks on Chambers in other forums. There is a substantial likelihood that defendant, who has threatened to file fraudulent claims in the Tax Court and elsewhere against Chambers and its officers, employees, attorneys, and agents, and who has already filed a fraudulent UCC-1 financing statement, UCC-3 amendment, and a Form 1099C, will file such fraudulent actions unless restrained.

## <u>COUNT VII</u>
### (Damages under UCC Section 9-625(e))

81.     Chambers repeats and realleges paragraphs 1-80 as if fully set forth herein.

82.     Defendant has falsely filed a UCC-1 statement against Chambers and a UCC-3 amendment.

83. Section 9-625(e) authorizes the debtor to recover $500 in each case from a person who has falsely filed a record that the person is not entitled to file.

84. Chambers is therefore entitled to the $500 for each false record defendant filed.

WHEREFORE, Chambers respectfully prays as follows:

1. As to Count I, that the court determine, adjudge, and declare that no valid Motor Vehicle Purchase Contract was entered, defendant has no power of attorney to act on behalf of Chambers, and defendant had no valid security interest that would enable him to file a UCC-1 Financing Statement listing Chambers and/or its representatives as the debtors.

2. As to Count II, that the court determine, adjudge, and declare that the UCC-1 financing statement and UCC-3 amendment are fraudulent, invalid, null, void and of no legal effect.

3. As to Count III, that the court determine, adjudge, and declare that defendant has no valid copyright and therefore no claim for any amount of damages against Chambers, its employees, or its counsel.

4. As to Count IV, that the court determine, adjudge, and declare that the defendant has no valid trademark on his name and therefore no claim against Chambers, its employees, or counsel for using his name in correspondence, communications, or otherwise.

5. As to Count V, that the court determine, adjudge, and declare that Chambers owed no debt to defendant and the 1099C was invalidly issued and is void and of no legal effect.

6. As to Count VI, that the court enjoin the defendant as follows:

    a. prohibiting defendant, his agents, and all others in active participation with him from taking any action to enforce the UCC-1 or from collecting or disposing of collateral pursuant to the UCC-1;

    b.  permanently enjoining defendant, his agents, and all others in active participation with him from filing or recording documents which purport to create any nonconsensual lien against Chambers including any further UCC-1 Financing Statements, liens, encumbrances, or any other instruments, clouding Chambers' title to its property and inventory.

    c.  prohibiting defendant from filing any action in the United States Tax Court based on the fraudulent 1099C, or any Copyright or Trademark infringement claim regarding the use of defendant's name against Chambers, its officers, employees, attorneys, related entities and agents, without first seeking and obtaining leave from this Court.

7.     As to Count VII, that the court enter judgment for Chambers in an amount to be determined at trial.

8.     That the court award Chambers its reasonable attorneys' fees as an element of damages, under its inherent powers as redress for bad faith filings and conduct that prompted this litigation, and pursuant to 17 U.S.C. §505;

9.     That the court grant such other and further relief as the court deems to be just and proper.

Respectfully submitted,
HERB CHAMBERS 1188 INC.
By its attorney,


*/s/ Edward C. Cooley*
Edward C. Cooley, BBO # 550117
GIARRUSSO, NORTON, COOLEY
& McGLONE, P.C.
308 Victory Road
Quincy, MA 02171
(617)770-2900

18

**VERIFICATION**

I, Sean King, state under the pains and penalties of perjury that I am the General Manager (also known as "Centre Manager") of Herb Chambers 1188, Inc., the plaintiff in this action. I sign this Verified Complaint for and on behalf of the plaintiff and am duly authorized to do so. The facts stated in the foregoing Verified Complaint are not all within my personal knowledge nor is there an officer of the plaintiff who has personal knowledge of all such matters. The facts asserted in the Verified Complaint which are not within my personal knowledge have been assembled by authorized employees and managers of the plaintiff and are true and I so state under the pains and penalties of perjury this

_____2_____ day of April, 2022.

_____

Sean King