UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HERB CHAMBERS 1188, Inc., d/b/a HERB CHAMBERS JAGUAR LAND ROVER BOSTON, <br><br> Plaintiff, <br><br> v. <br><br> DERIC MARCELL THOMPSON, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65(a), the plaintiff, Herb Chambers 1188, Inc. ("Chambers"), moves for a preliminary injunction against defendant, Deric Marcell Thompson, that will enjoin and restrain him from continuing what amounts to a campaign of paper terrorism by fraudulent UCC filings, IRS filings, and Copyright notices. Many courts have endorsed injunctions for just such purposes. See e.g. Crystal City Emerald Inc. v. J.P. Morgan Chase Bank, N.A., No. 3:16-CV-00104-MPM-RP, 2016 WL 6561507, at *3 (N.D. Miss. Nov. 1, 2016) (defendant entitled to injunction because "Crystal City has filed multiple fraudulent documents concerning the property, forcing Chase to engage in litigation to secure its ownership of the property. Because Chase has provided sufficient proof of its lawful ownership of the property and Crystal City has filed multiple fraudulent documents in connection with the property, the Court finds that Chase is entitled to an injunction prohibiting Crystal City from filing additional documents clouding Chase's title to the property.").

In particular, Chambers seeks a preliminary injunction that will enjoin defendant and his agents, servants, employees and attorneys from taking any action to enforce the fraudulently filed UCC-1 statement as amended by the fraudulently filed UCC-3 purporting to take a security interest in $2.7 million of Chambers' inventory, or from collecting or disposing of collateral pursuant to the UCC filings; from making any further UCC filings which purport to create any nonconsensual lien against Chambers, its employees, or counsel; from filing any action in the United States Tax Court based on the fraudulent 1099C defendant filed with the IRS; or from filing any copyright or trademark infringement claim regarding the use of defendant's name against Chambers, its officers, employees, attorneys, related entities and agents, without first seeking and obtaining leave from this Court.

As more fully set forth in the Verified Complaint, the plaintiff seeks this preliminary injunction, to be made permanent, and states in support thereof as follows:

1. Defendant inquired about purchasing a Range Rover Sport V8 from Chambers in late January 2022. The purchase price for the vehicle was $147,497.40. Defendant requested that Chambers send him a Motor Vehicle Purchase Contract to sign and indicated he would wire the payment for the vehicle. (VC¶¶1-12).[1]

2. Once defendant was sent the Motor Vehicle Purchase Contract, he made significant unilateral changes to the contract, including changing the method of payment from cash to "Certificate of Deposit". (VC¶17). He also attached a bogus "Certificate of Deposit" purporting to be payment for the purchase price of the vehicle; the certificate was not issued by any financial institution or backed by anything of value. (VC¶¶18-19).

---

[1] The facts asserted are supported by the Verified Complaint, references to which take the form (VC ¶___).

3. Following this transaction, Chambers obviously did not release the car to defendant since he had not purchased it or signed the original Motor Vehicle Purchase Contract. (VC¶28).

4. Defendant proceeded to file a fraudulent UCC-1 financing statement filing number 202285220810 with the Massachusetts Secretary of State listing Chambers and its manager as debtors and defendant as the secured party and listing collateral as "any and all items of property of debtor . . .[including] all: motor vehicles . . . ." (VC¶29).

5. Defendant later also filed a fraudulent UCC-3 amendment form with the Massachusetts Secretary of State purporting to amend the collateral subject to the UCC-1 as including 27 specifically listed vehicles with a total estimated value, according to defendant, of $2,670,770.  (VC¶30).

6. Defendant also sent an email to Chambers stating that he had "cancelled the debt ($147,498.00)" for the vehicle, even though no debt to him ever existed, and attached an IRS Form 1099C that he claimed "has been submitted to the IRS."  (VC¶35). He then threatened action in tax court regarding the debt and threatened filing additional IRS forms related to the transaction. (VC¶36).

7. Defendant also emailed Chambers a "Copyright Notice" in which he essentially purported to copyright his name and establish a $500,000 charge for each use of his name in any document. Based on this document, defendant asserted that he was entitled to total damages of $1,000,000 relating to the use of his name in a demand letter sent by Chambers. The Copyright Notice begins "All rights reserved re; copyright of trade-name/ trademark, DERIC MARCELL THOMPSON" – the exact same name that appears on his Rhode Island Identification Card. (VC¶38).

8. Defendant sent a second document purporting to be a "Copyright Notice", to Chambers' counsel and attached an invoice addressed individually to counsel demanding $1,500,000 – or $500,000 for each instance that counsel used defendant's name in the demand letter and a subsequent response letter. This document also claimed a security interest in all of counsel's property. (VC¶¶40-41).

9. All of defendant's actions were intentional to perpetrate a fraud on Chambers and are without any basis in law.

10. Chambers' financing arrangement requires that Chambers not use or allow its inventory to secure any other financing instruments. Defendant's false UCC-1 filing creates the appearance of a breach of that obligation and clouds Chambers' title to its inventory.

11. The plaintiff has clearly demonstrated that it will be irreparably harmed if an injunction is not issued because the lien clouds title to Chambers' inventory, could prevent Chambers from acquiring legitimate lending, and could harm their business. Defendant has no legitimate security interest in any of Chambers' property.

12. Chambers clearly has a likelihood of success on the merits. Defendant's UCC-1 and UCC-3 statements constitute violations of G.L. c. 106 §9-509 by filing a UCC-1 statement without satisfying the conditions required by that section that Chambers authorize the filing by entering a security agreement or otherwise, and defendant does not hold any valid security interest against Chambers.

13. Defendant cannot copyright or trademark his name as this is not a valid copyright or trademark. See 15 U.S.C.A. § 1051, § 1125, and § 1127; 17 U.S.C. § 102. See Arvelo v. Am. Int'l Ins. Co., 66 F.3d 306 (1st Cir. 1995)("The Copyright Office's own interpretive regulations explicitly embrace the rule of non-copyrightability for names and

titles. *See* 37 C.F.R. § 202.1(a) (1994) (listing as an example of non-copyrightable material: 'Words and short phrases such as names, titles, and slogans....'")).

14. The 1099C is invalid as it is based on the discharge of an alleged "debt" that never existed.

15. Defendant will suffer no injury because his scheme is based on fraudulent actions and he has not paid any money or valid consideration of any kind to Chambers for the vehicle and therefore has no right or basis to claim any liens against Chambers or debt due from Chambers.

16. Enjoining defendant from further fraudulent action is in the public interest because the public relies on the accuracy of the UCC public data and officials rely on the accuracy of IRS information. The public interest is also served by promoting the integrity of trademark and copyright laws.

17. Accordingly, the plaintiff has satisfied criteria for obtaining an injunction because it has proved a likelihood of success on the merits, immediate irreparable injury if the injunction is not granted, that the injury to the plaintiff outweighs any harm which granting the injunctive relief would inflict upon the defendant, and that the injunction is beneficial to the public interest.  See LaBelle Chevrolet, LLC v. Gen. Motors, LLC, 705 F. Supp. 2d 97, 99 (D. Mass. 2010).

18. Additionally, G.L. c. 106 § 9-625 authorizes a court to use its injunctive power to restrain collection or enforcement of collateral where, as here, a person does not have a validly filed security interest.

19. Finally, courts have recognized the need for, and issued injunctions, in circumstances similar to those present here.  See, <u>Peters v. BMW of N. Am., Inc.</u>, No. CIV.A. DKC2004-3451, 2005 WL 2250785, at *4 (D. Md. Sept. 15, 2005) (injunctive relief was "necessary to preserve and protect the jurisdiction of this court to decide the merits of this case by preventing plaintiff from filing collateral attacks … by way of plaintiff filing involuntary bankruptcy proceedings, liens, UCC financing statements, and other encumbrances naming BMW, its officers, employees, attorneys, related entities and agents as purported debtors, and that, absent the issuance of an injunction, there is a substantial likelihood that Plaintiff, who has threatened to file fraudulent involuntary bankruptcy proceedings against BMW and its officers, and who has already filed a fraudulent UCC financing statement … will file such bankruptcy petitions or other fraudulent liens, UCC financing statements, and encumbrances naming BMW, its officers, employees, attorneys, related entities and agents as purported debtors . . ..").

WHEREFORE, Chambers prays that this honorable court allow the within motion and enter the requested preliminary injunction, attached hereto as Exhibit A. Plaintiff also requests a hearing, at the Court's earliest convenience, on its Motion for Preliminary Injunction.

> Respectfully submitted,
> Herb Chambers 1188, Inc.
> By its attorney,
>
> <u>/s/ Edward C. Cooley</u>
> Edward C. Cooley BBO# 550117
> GIARRUSSO, NORTON, COOLEY
> & MCGLONE, P.C.
> Marina Bay
> 308 Victory Road
> Quincy, MA 02171
> (617)770-2900

DATED:  April 5, 2022