## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| HERB CHAMBERS 1188, Inc., d/b/a ) | |
| HERB CHAMBERS JAGUAR ) | |
| LAND ROVER BOSTON, ) | |
| ) | |
|      Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | |
| DERIC MARCELL THOMPSON, ) | |
| ) | |
|      Defendant. ) | |

---

## PLAINTIFF'S MEMORANDUM
## IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

The plaintiff Herb Chambers 1188, Inc. ("Chambers") submits this memorandum in support of its Motion for a Preliminary Injunction.

## STATEMENT OF FACTS[1]

On January 29, 2022, defendant contacted Chambers regarding the purchase of a Range Rover Sport V8, a vehicle priced at $147,497.40. (VC ¶¶8, 13). The defendant requested that a purchase order signed by the dealership be sent to him so he could arrange to give it to his trustee for signing and payment. (VC ¶9). Upon being notified that the vehicle would not be released until payment in full was received, the defendant requested and received from Chambers its bank's wiring instructions. (VC ¶¶12, 14).  Chambers sent a signed Motor Vehicle Purchase

---

[1] The Statement of Facts is supported by the Verified Complaint, references to which take the form (VC ¶___).

Contract ("MVPC") to defendant as requested, listing a selling price of $147,497.40 and requiring that defendant pay "cash…simultaneously with its delivery." (VC ¶13).

Defendant, instead of signing the MVPC and arranging for a wire transfer in payment of the vehicle, sent a letter titled "Conditional Acceptance of Motor Vehicle Purchase Contract." (VC ¶16). The letter included the MVPC, to which defendant had made significant unilateral changes including changing the form of payment from cash to a "Certificate of Deposit", and a fraudulent "Certificate of Deposit" not backed by any bank or financial institution and claimed this to be payment for the vehicle (VC ¶16-19). Instead, the "Certificate of Deposit" purports to be underwritten by, among other things, "over three quintillion, five hundred quadrillion in equity debt against the debtors" and "backed by the full faith and credit of the United States of America, restated, and incorporated in full by reference as if set forth in full, without prejudice." (VC ¶¶18, 21). Defendant also claimed that his "Conditional Acceptance" established a contract between Chambers and the defendant under the "Postal Rule" (VC ¶20).

The Conditional Acceptance letter closes with a threat of creating a "Claim of Lien" against each of Chambers' sales associates and Chambers and a threat to "file a financing statement against you each, supporting my lien as I deem necessary" (VC ¶25). The letter also purports to unilaterally grant defendant a power of attorney from Chambers to defendant in order to collect the full amount through a lien and the ability to file additional liens in the coming years (VC ¶26).

On February 2, 2022, defendant filed a UCC-1 Financing Statement with the Massachusetts Secretary of State listing Chambers and Chambers' Manager, Sean King, as debtors without any basis in law or fact for doing so and listing "any and all items of property of debtor . . .{including] all: motor vehicles . . . ." as collateral (VC¶29). On February 3, 2022, defendant filed a fraudulent UCC-3 amendment form with the Massachusetts Secretary of State purporting to amend the

collateral subject to the UCC-1 as including 27 specifically listed vehicles with a total estimated value, according to defendant, of $2,670,770 (VC¶30). Defendant followed up with an email to manager Sean King in which he claimed to have a valid contract with Chambers through his unilateral modification of the MVPC and attaching the UCC filings and complaints that he filed with the Massachusetts Attorney General, the Federal Trade Commission, and the Better Business Bureau (VC¶31).

Chambers filed a UCC-5 information statement to provide notice that defendant's UCC-1 filing was fraudulent and sent a letter to defendant through counsel demanding that defendant file a termination statement. (VC¶¶33-34, 37). On February 11, 2022, defendant sent an email to Chambers stating that he had "cancelled the debt ($147,498.00)" for the vehicle, even though no debt to him ever existed, and attached an IRS Form 1099C that he claimed "has been submitted to the IRS" (VC¶35).

On February 12, 2022, defendant responded to Chambers' demand that he file a termination statement asserting that he would only terminate the UCC-1 financing statement upon delivery of the vehicle (VC¶37). He also asserted that he was owed $4,000,000 "for any injuries to me" and further claimed that Chambers agreed to give defendant a power of attorney to collect payment on this debt, which also authorized him to file UCC-1 statements related to the debt (VC¶37). Additionally within defendant's February 12 letter was a "Copyright Notice" in which he alleged that he had copyrighted his name and that he was owed $500,000 per use of his name in any document from Chambers (VC¶38). The Copyright Notice begins "All rights reserved re; copyright of trade-name/trademark, DERIC MARCELL THOMPSON" – the exact same name that appears on his Rhode Island Identification Card (VC¶38). Defendant then later sent another "Copyright Notice" directly to Chambers' counsel and attached an invoice for $1,500,000 for using defendant's

name three times in his demand letter and subsequent response letter (VC¶40). This letter also alleged a security interest in all of counsel's property and states that counsel agrees to the filing of a UCC-1 statement stating same (VC¶40).

Based on this campaign of fraudulent filings and claims, Chambers filed the above captioned action seeking declaratory judgment that: there was never a contract between Chambers and defendant, the UCC-1 financing statement is invalid, the defendant's purported copyright and trademark of his name are invalid, and there was never a debt owed to the defendant and the 1099C is invalid.  The Complaint also requested the following injunctive relief that is the subject of the present motion:  a preliminary injunction, to be made permanent, that will enjoin defendant and his agents, servants, employees and attorneys from taking any action to enforce the fraudulently filed UCC-1 statement as amended by the fraudulently filed UCC-3 purporting to take a security interest in $2.7 million of Chambers' inventory, or from collecting or disposing of collateral pursuant to the UCC filings; from making any further UCC filings which purport to create any nonconsensual lien against Chambers, its employees, or counsel; from filing any action in the United States Tax Court based on the fraudulent 1099C defendant filed with the IRS; or from filing any copyright or trademark infringement claim based on the use of defendant's name against Chambers, its officers, employees, attorneys, related entities and agents, without first seeking and obtaining leave from this Court.

## **ARGUMENT**

### 1.    **Standard of Review**

To obtain preliminary injunctive relief under Fed. R. Civ. P. 65, a movant must demonstrate
(1) a substantial likelihood of success on the merits,
(2) a significant risk of irreparable harm if the injunction is withheld,
(3) a favorable balance of hardships and
(4) a fit (or lack of friction) between the injunction and the public interest.

4

Likelihood of success on the merits is the critical factor in the analysis and, accordingly, a strong likelihood of success may overcome a "somewhat less" showing of another element.

LaBelle Chevrolet, LLC v. Gen. Motors, LLC, 705 F. Supp. 2d 97, 99 (D. Mass. 2010)(internal citations omitted). See also Cushing v. Packard, No. 21-1177, 2022 WL 884195, at *6 (1st Cir. Mar. 25, 2022)(listing factors as "'(1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest' weigh[ ] in favor of granting the request.").

1.    **An Injunction is Warranted Because Plaintiff Has a Substantial Likelihood of Success on the Merits.**

This case follows what has become a too familiar scheme in which people have used false UCC financing statements to harass public officials and business owners who have never authorized any security interests. See United States v. Johnson, No. 15-1831, 2016 WL 7408832, at *6 (E.D.N.Y. May 4, 2016); United States v. Crawford, No. CV 19-15776 (RBK/JS), 2019 WL 5677750, at *1 (D.N.J. Nov. 1, 2019); United States v. Rodriguez Ramirez, 291 F. Supp. 2d 266 (S.D.N.Y. 2003); Crystal City Emerald Inc. v. J.P. Morgan Chase Bank, N.A., No. 3:16-CV-00104-MPM-RP, 2016 WL 6561507, at *1 (N.D. Miss. Nov. 1, 2016); UNITED STATES OF AMERICA, Plaintiff, v. 'gullett-el:taquan-rashe,' aka TAQUAN GULLETT, Defendant., No. 15-CV-652-EGS-RMM, 2021 WL 7447977, at *7 (D.D.C. Oct. 14, 2021); United States v. Agra, No. 2:13-CV-1662 GEB DAD, 2014 WL 1671592, at *5 (E.D. Cal. Apr. 28, 2014), report and recommendation adopted, No. 2:13-CV-1662 GEB DAD, 2014 WL 2700272 (E.D. Cal. May 21, 2014).

It is clear from the facts in this matter that defendant's UCC-1 financing statement and UCC-3 amendment are wholly fraudulent with no basis in fact or law. A required predicate to

filing a legitimate UCC-1 financing statement, is an agreement authorizing the security interest which is the subject of the lien. See M.G.L. c. 106, § 9-509. Here, there was never any such contract.  The MVPC never matured into a contract based on defendant's unilateral and material alterations of the terms that changed, among other things, the payment method from cash to his bogus "Certificate of Deposit". Chambers never agreed to any of defendant's changes. "Federal common law on contract formation requires mutual assent as to all material terms in order for a valid contract to be formed." Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC, 994 F.3d 77, 85 (1st Cir. 2021). Therefore, no contract was ever formed between Chambers and defendant, but even if the MVPC had by mutual assent become a contract it could not have been used as the basis for a UCC-1 because it did not expressly authorize a security interest in Chambers' property.

Similarly, defendant's Form 1099C is clearly fraudulent, as it is also based on the contract that he allegedly entered with Chambers, which does not exist. There was never any debt owed to defendant because he never paid a cent toward the vehicle, nor did he sign the original MVPC for purchase of the vehicle. Therefore, there was no discharged debt on which to base the 1099C and it is clearly invalid.

There is also no basis in law for defendant's claim of a valid copyright on his name. A person's name is not a valid subject for copyright. 17 U.S.C. § 102; Arvelo v. Am. Int'l Ins. Co., 66 F.3d 306 (1st Cir. 1995)("The Copyright Office's own interpretive regulations explicitly embrace the rule of non-copyrightability for names and titles. See 37 C.F.R. § 202.1(a) (1994) (listing as an example of non-copyrightable material: 'Words and short phrases such as names, titles, and slogans....'")). This is another all too familiar scam that defendant incorporates in his scheme. See Ray v. Credit Union One, No. CIVA 06-11694, 2007 WL 522700, at *1 (E.D.

Mich. Feb. 14, 2007); <u>United States v. Rodriguez Ramirez,</u> 291 F.Supp.2d 266

(S.D.N.Y.2003); <u>Gannon v. Tucknott Miller</u>, No. 1:05CV00168 TS, 2006 WL 1793581, at *2

(N.D. Ind. June 28, 2006); <u>United States v. DeClerck</u>, No. 02-40072-01-RDR, 2003 WL

22716919, at *3 (D. Kan. Sept. 18, 2003).

       The facts in <u>Ray v. Credit Union One</u> are very similar to the case at hand. In <u>Ray v.</u>

<u>Credit Union One</u> the plaintiff alleged that "Defendants have 'continued to use [his] common-

law copyrighted trade-name/trade-mark property Johnnie Charles Ray©'" despite him giving

"several 'written notifications' to inform them of their copyright infringement" they continued to

use his name without compensation and, as a result, allegedly owed him $7,500,000.00 for

copyright infringement. <u>Ray v. Credit Union One</u>, No. CIVA 06-11694, 2007 WL 522700, at *1.

The court ruled that plaintiff's name was not a valid subject for copyright and cited a host of

cases reaching the same result:

> Plaintiff's Complaint fails to state a claim for relief because his name is not
> subject to copyright protection. *See United States v. Rodriguez Ramirez,* 291
> F.Supp.2d 266 (S.D.N.Y.2003) (in voiding leins placed on federal judge's and
> prosecutor's property, the court rejected defendant's claim of a common law
> copyright in his name because common law copyright was substantially
> preempted by Title 17 of the U.S.Code and because "a name is not a proper
> subject for copyright"); *Gannon v. Tucknott Miller,* 2006 WL 1793581 (N.D.Ind.
> June 28, 2006) (finding that person's name does not "exhibit the minimal
> creativity required for copyright protection," and that common law copyright
> protection does not exist because it has been preempted by federal
> law); *Compliance Review Servs., Inc. v. Callista Davis-Osuawu,* 2006 WL
> 2385291 (S.D.Tex. Aug.17, 2006) (finding plaintiff failed to state claim for relief
> because a name is not subject to copyright protection under Title 17); *United
> States v. DeClerck,* 2003 WL 22716919 (D.Kan. Sept.18, 2003) (rejecting claim
> of copyright protection in a name because it does not "constitute an original work
> of authorship or a derivative work as defined in 17 U.S.C. §§ 102 and 103").

<u>Ray v. Credit Union One</u>, No. CIVA 06-11694, 2007 WL 522700, at *2. Similarly, defendant's

name here is not a valid subject for copyright. Furthermore, defendant alleges the infringing use

is using his name in letters addressed to him. However, Chambers "has a First Amendment right to use the [defendant's] name in its correspondence. . . ." Gannon v. Tucknott Miller, No. 1:05CV00168 TS, 2006 WL 1793581, at *2 (N.D. Ind. June 28, 2006) citing N.Y. Stock Exch., Inc. v. Gahary, 196 F.Supp.2d 401, 413 (S.D.N.Y.2002).

The same is true for defendant's allegation that his name is trademarked. Defendant's name is not a valid trademark pursuant to 15 U.S.C.A. § 1051, § 1125, and § 1127. There is no viable cause of action for a noncommercial use of a trademark. 15 USCA § 1125. 15 U.S.C.A. § 1051 requires any owner of a trademark to certify that the mark is used in commerce. 15 USCA § 1125 requires that for an action for trademark infringement that a person:

> on or in connection with any goods or services, or any container for goods, **uses in commerce** any word, term, name, symbol, or device, . . .which a) is likely to cause confusion . . . of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or b) **in commercial advertising or promotion**, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

15 USCA § 1125(a)(1)(emphasis added). See Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 218 (1st Cir. 1989)("The 'tort' of infringement is thus the use of a registered mark in connection with the sale of goods, without the consent of the owner, that is likely to cause confusion."); see Smartling, Inc. v. Skawa Innovation Ltd., 358 F. Supp. 3d 124, 138 (D. Mass. 2019)("To succeed on a claim of trademark infringement, a plaintiff must establish ... that the allegedly infringing use is likely to cause consumer confusion." quoting Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008)).

Applying these basic concepts, it is clear that defendant has no valid claim for trademark infringement in connection with Chambers' counsel using his name in correspondence or otherwise.  Such use is simply not a commercial use for the purpose of selling products.

Additionally, addressing a letter to someone by their name does not constitute infringement as it would not cause consumer confusion regarding the source of a product.

2.   **There is a Significant Risk of Irreparable Harm to Chambers if the Injunction Does Not Issue.**

The false UCC-1 financing statement and UCC-3 amendment harm Chambers' credit, harm its ability to obtain and maintain their legitimate lending, and cloud title to its inventory. Chambers' financing arrangement requires that Chambers not use or allow its inventory to secure any other financing instruments. Defendant's false UCC-1 filing creates the appearance of a breach of that obligation. Defendant's false UCC-1 also clouds title to Chambers' inventory by claiming collateral of "any and all items of property of debtor . . .[including] all: motor vehicles . . . ."

Courts have frequently and consistently awarded injunctive relief against parties for the filing of false liens. See United States v. Crawford, No. CV 19-15776 (RBK/JS), 2019 WL 5677750, at *4 (D.N.J. Nov. 1, 2019)(ruling that when defendant filed various bogus liens against prosecutors and an IRS special agent that "Filing meritless liens to encumber the property of government employees causes irreparable harm to both the individual employees and the IRS as an institution." quoting United States v. Johnson, No. 15-1831, 2016 WL 7408832, at *6 (E.D.N.Y. May 4, 2016); Peters v. BMW of N. Am., Inc., No. CIV.A. DKC2004-3451, 2005 WL 2250785, at *4 (D. Md. Sept. 15, 2005); Crystal City Emerald Inc. v. J.P. Morgan Chase Bank, N.A., No. 3:16-CV-00104-MPM-RP, 2016 WL 6561507, at *3 (N.D. Miss. Nov. 1, 2016).

Additionally, G.L. c. 106 § 9-625 authorizes a court to uses its injunctive power to restrain collection or enforcement of collateral when, as here, a party does not comply with the requirements of Article 9 for valid secured transactions. As described in the previous section, defendant violated Article 9 by not having an agreement authorizing the security interest before

filing and by not having any legitimate security interest in the property. See M.G.L. c. 106, § 9-509. Therefore, the court may enjoin the collection and enforcement of defendant's fraudulent lien and the filing of additional nonconsensual liens against Chambers or its agents or attorneys to prevent further irreparable harm. See United States v. Strother, No. 1:16-CV-00007, 2016 WL 7664303, at *6 (E.D. Tex. Dec. 7, 2016), report and recommendation adopted, No. 1:16-CV-7, 2017 WL 67864 (E.D. Tex. Jan. 6, 2017)("The filing of fraudulent lien documents causes irreparable harm because the subject of those baseless liens suffer losses in potential threat to their title to real and personal property and credit ratings.")

In Crystal City Emerald Inc. v. J.P. Morgan Chase Bank, N.A., the court stated that where Crystal City Emerald, Inc. had filed several false liens against property lawfully owned by J.P. Morgan Chase that Chase was entitled to injunctive relief because "Crystal City has filed multiple fraudulent documents concerning the property, forcing Chase to engage in litigation to secure its ownership of the property. Because Chase has provided sufficient proof of its lawful ownership of the property and Crystal City has filed multiple fraudulent documents in connection with the property, the Court finds that Chase is entitled to an injunction prohibiting Crystal City from filing additional documents clouding Chase's title to the property." Crystal City Emerald Inc. v. J.P. Morgan Chase Bank, N.A., No. 3:16-CV-00104-MPM-RP, 2016 WL 6561507, at *3 (N.D. Miss. Nov. 1, 2016).

In Peters v. BMW of N. Am., Inc., the court ruled that injunctive relief was "necessary to preserve and protect the jurisdiction of this court to decide the merits of this case by preventing plaintiff from filing collateral attacks … by way of plaintiff filing involuntary bankruptcy proceedings, liens, UCC financing statements, and other encumbrances naming BMW, its officers, employees, attorneys, related entities and agents as purported debtors, and that, absent

the issuance of an injunction, there is a substantial likelihood that Plaintiff, who has threatened to file fraudulent involuntary bankruptcy proceedings against BMW and its officers, and who has already filed a fraudulent UCC financing statement naming himself as both debtor and creditor, will file such bankruptcy petitions or other fraudulent liens, UCC financing statements, and encumbrances naming BMW, its officers, employees, attorneys, related entities and agents as purported debtors . . .." Peters v. BMW of N. Am., Inc., No. CIV.A. DKC2004-3451, 2005 WL 2250785, at *4 (D. Md. Sept. 15, 2005).

Similarly, defendant here has filed multiple fraudulent documents concerning Chambers' property, namely its inventory, and has forced Chambers to engage in litigation to secure its ownership. Furthermore, defendant has threatened suits in tax court, threatened filing additional fraudulent liens, threatened selling the liens to the highest bidder who would collect Chambers' assets, and demanded $500,000 per use from Chambers and $1.5 million dollars individually from Chambers' counsel for infringement of an invalid copyright and/or trademark. Accordingly, here, as in Peters, an injunction is clearly warranted.

**3.      There is a Favorable Balance of Hardships and a Benefit to the Public Interest in Awarding Injunctive Relief.**

Chambers has had to pay to litigate the issue of fraudulent liens, tax documents, and invoices for false copyright infringement all due to defendant's scheme to obtain a Range Rover Sport V8 worth $147,498 without paying for the vehicle. The balance of hardships in this case clearly favors Chambers. Defendant has no legitimate claim and has caused significant hardship to Chambers and its agents and counsel to sort through and rectify defendant's fraudulent filings. On the other hand, there is no harm to defendant by preventing him from filing further baseless liens or actions to enforce them, nor is he harmed by an injunction barring the filing of copyright/trademark claims regarding the use of his name without obtaining leave of this court.

11

In terms of the injunction's effect on the public, the UCC database is a public resource which provides an avenue to learn of security interests in property. See <u>United States v. McGugan</u>, 600 F. Supp. 2d 608, 614–15 (D.N.J. 2009)(Ruling that a bogus "Default Judgment" document filed by defendant "imposes irreparable harm on the Government entities and officials that are the subject of the documents, and **is not within the public interest**.) (emphasis added). Similarly, individuals rely on IRS information to be accurate in order to proceed with various transactions. See <u>United States v. Knudson</u>, 959 F. Supp. 1180, 1187 (D. Neb. 1997)(ruling that "the fair administration of federal tax laws" is in the public interest). Therefore, the public interest is served by ensuring that UCC liens and tax documents are valid and that fraudulent liens are effectively removed and enjoined.

The public interest is also served by ensuring that invalid copyright/trademarks are not enforced. See <u>Midway Mfg. Co. v. Bandai-Am., Inc.</u>, 546 F. Supp. 125, 155 (D.N.J. 1982)(ruling that the public interest favors preserving  "the integrity of the copyright laws"), see also <u>Lego A/S v. Best-Lock Const. Toys, Inc.</u>, 874 F. Supp. 2d 75, 106 (D. Conn. 2012)("parties agree that the public interest factor favors whichever party has shown a likelihood of success on the merits").

<u>**CONCLUSION**</u>

For all of the foregoing reasons, plaintiff's Motion for Preliminary Injunction should be allowed in the form attached to the motion or on such other terms, which will enjoin and restrain defendant and his agents, servants, employees and attorneys from taking any action to enforce the fraudulently filed UCC-1 (statement filing number 202285220810) or from collecting or disposing of collateral pursuant to the UCC-1; from filing any further UCC financing statements or other documents which purport to create any nonconsensual lien against Chambers, its employees, or counsel which cloud title to Chambers' property and inventory; from filing any

action in the United States Tax Court based on the fraudulent 1099C or any copyright or

trademark infringement claim regarding the use of defendant's name against Chambers, its

officers, employees, attorneys, related entities and agents, without first seeking and obtaining

leave from this Court.

<div style="margin-left: 40%;">

Respectfully submitted,
Herb Chambers 1188, Inc.
By its attorney,


*/s/ Edward C. Cooley*
Edward C. Cooley BBO# 550117
GIARRUSSO, NORTON, COOLEY
& MCGLONE, P.C.
Marina Bay
308 Victory Road
Quincy, MA 02171
(617)770-2900

</div>

DATED:  April 5, 2022