Doc: 00221399
Book: 2725 Page:   98

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**HERB CHAMBERS 1188, INC.**

*Plaintiff*

v.

**DERIC MARCELL THOMPSON**

*Defendant*

Civil Action No.:
1:22-CV-10501-WGY

## SUMMONS IN A CIVIL ACTION



To: *(Defendant's name and address)*

> Deric Marcell Thompson
> 233 Halsey Road
> Woonsocket, RI  02895

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) —— or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) —— you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Edward C. Cooley
> Giarrusso Norton Cooley & McGlone, P.C.
> 308 Victory Road
> Quincy, MA  02171

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

*CLERK OF COURT*

/s/ – Douglas Warnock

*Signature of Clerk or Deputy Clerk*

ISSUED ON 2022–04–06 09:53:29, Clerk USDC DMA



A True Copy Attest
James Sylvester
#1103 Date 4/8/22



Civil Action No.: **1:22–CV–10501–WGY**

### PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for (name of individual and title, if any)_____ .

was received by me on (date)_____

☐ I personally served the summons on the individual at (place)_____
_____ on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____ , a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____ ; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true.


_____                    _____
Date                                                   *Server's Signature*

                                                       _____
                                                       *Printed name and title*


                                                       _____
                                                       *Server's Address*

Additional information regarding attempted service, etc:

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HERB CHAMBERS 1188, Inc., d/b/a )
HERB CHAMBERS JAGUAR )
LAND ROVER BOSTON, )

     Plaintiff, )

v. )

DERIC MARCELL THOMPSON, )

    Defendant. )

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65(a), the plaintiff, Herb Chambers 1188, Inc. ("Chambers"),

moves for a preliminary injunction against defendant, Deric Marcell Thompson, that will enjoin

and restrain him from continuing what amounts to a campaign of paper terrorism by fraudulent

UCC filings, IRS filings, and Copyright notices.  Many courts have endorsed injunctions for just

such purposes. See e.g. Crystal City Emerald Inc. v. J.P. Morgan Chase Bank, N.A., No. 3:16-

CV-00104-MPM-RP, 2016 WL 6561507, at *3 (N.D. Miss. Nov. 1, 2016) (defendant entitled to

injunction because "Crystal City has filed multiple fraudulent documents concerning the

property, forcing Chase to engage in litigation to secure its ownership of the property. Because

Chase has provided sufficient proof of its lawful ownership of the property and Crystal City has

filed multiple fraudulent documents in connection with the property, the Court finds that Chase

is entitled to an injunction prohibiting Crystal City from filing additional documents clouding

Chase's title to the property.").

Doc: 00221399
Book: 2725 Page:   101

In particular, Chambers seeks a preliminary injunction that will enjoin defendant and his agents, servants, employees and attorneys from taking any action to enforce the fraudulently filed UCC-1 statement as amended by the fraudulently filed UCC-3 purporting to take a security interest in $2.7 million of Chambers' inventory, or from collecting or disposing of collateral pursuant to the UCC filings; from making any further UCC filings which purport to create any nonconsensual lien against Chambers, its employees, or counsel; from filing any action in the United States Tax Court based on the fraudulent 1099C defendant filed with the IRS; or from filing any copyright or trademark infringement claim regarding the use of defendant's name against Chambers, its officers, employees, attorneys, related entities and agents, without first seeking and obtaining leave from this Court.

As more fully set forth in the Verified Complaint, the plaintiff seeks this preliminary injunction, to be made permanent, and states in support thereof as follows:

1. Defendant inquired about purchasing a Range Rover Sport V8 from Chambers in late January 2022. The purchase price for the vehicle was $147,497.40. Defendant requested that Chambers send him a Motor Vehicle Purchase Contract to sign and indicated he would wire the payment for the vehicle. (VC¶¶1-12). [1]

2. Once defendant was sent the Motor Vehicle Purchase Contract, he made significant unilateral changes to the contract, including changing the method of payment from cash to "Certificate of Deposit". (VC¶17). He also attached a bogus "Certificate of Deposit" purporting to be payment for the purchase price of the vehicle; the certificate was not issued by any financial institution or backed by anything of value. (VC¶¶18-19).

---

[1] The facts asserted are supported by the Verified Complaint, references to which take the form (VC ¶___).

Doc: 00221399
Book: 2725 Page: 102

3. Following this transaction, Chambers obviously did not release the car to defendant since he had not purchased it or signed the original Motor Vehicle Purchase Contract. (VC¶28).

4. Defendant proceeded to file a fraudulent UCC-1 financing statement filing number 202285220810 with the Massachusetts Secretary of State listing Chambers and its manager as debtors and defendant as the secured party and listing collateral as "any and all items of property of debtor . . . [including] all: motor vehicles . . . ." (VC¶29).

5. Defendant later also filed a fraudulent UCC-3 amendment form with the Massachusetts Secretary of State purporting to amend the collateral subject to the UCC-1 as including 27 specifically listed vehicles with a total estimated value, according to defendant, of $2,670,770.  (VC¶30).

6. Defendant also sent an email to Chambers stating that he had "cancelled the debt ($147,498.00)" for the vehicle, even though no debt to him ever existed, and attached an IRS Form 1099C that he claimed "has been submitted to the IRS." (VC¶35). He then threatened action in tax court regarding the debt and threatened filing additional IRS forms related to the transaction. (VC¶36).

7. Defendant also emailed Chambers a "Copyright Notice" in which he essentially purported to copyright his name and establish a $500,000 charge for each use of his name in any document. Based on this document, defendant asserted that he was entitled to total damages of $1,000,000 relating to the use of his name in a demand letter sent by Chambers. The Copyright Notice begins "All rights reserved re; copyright of trade-name/ trademark, DERIC MARCELL THOMPSON" – the exact same name that appears on his Rhode Island Identification Card. (VC¶38).

Doc: 00221399
Book: 2725 Page: 103

8. Defendant sent a second document purporting to be a "Copyright Notice", to Chambers' counsel and attached an invoice addressed individually to counsel demanding $1,500,000 – or $500,000 for each instance that counsel used defendant's name in the demand letter and a subsequent response letter. This document also claimed a security interest in all of counsel's property. (VC¶¶40–41).

9. All of defendant's actions were intentional to perpetrate a fraud on Chambers and are without any basis in law.

10. Chambers' financing arrangement requires that Chambers not use or allow its inventory to secure any other financing instruments. Defendant's false UCC-1 filing creates the appearance of a breach of that obligation and clouds Chambers' title to its inventory.

11. The plaintiff has clearly demonstrated that it will be irreparably harmed if an injunction is not issued because the lien clouds title to Chambers' inventory, could prevent Chambers from acquiring legitimate lending, and could harm their business. Defendant has no legitimate security interest in any of Chambers' property.

12. Chambers clearly has a likelihood of success on the merits. Defendant's UCC-1 and UCC-3 statements constitute violations of G.L. c. 106 §9-509 by filing a UCC-1 statement without satisfying the conditions required by that section that Chambers authorize the filing by entering a security agreement or otherwise, and defendant does not hold any valid security interest against Chambers.

13. Defendant cannot copyright or trademark his name as this is not a valid copyright or trademark. See 15 U.S.C.A. § 1051, § 1125, and § 1127; 17 U.S.C. § 102. See Arvelo v. Am. Int'l Ins. Co., 66 F.3d 306 (1st Cir. 1995)("The Copyright Office's own interpretive regulations explicitly embrace the rule of non-copyrightability for names and

Doc: 00221399
Book: 2725 Page: 104

titles. *See* 37 C.F.R. § 202.1(a) (1994) (listing as an example of non-copyrightable material: 'Words and short phrases such as names, titles, and slogans....'")).

14. The 1099C is invalid as it is based on the discharge of an alleged "debt" that never existed.

15. Defendant will suffer no injury because his scheme is based on fraudulent actions and he has not paid any money or valid consideration of any kind to Chambers for the vehicle and therefore has no right or basis to claim any liens against Chambers or debt due from Chambers.

16. Enjoining defendant from further fraudulent action is in the public interest because the public relies on the accuracy of the UCC public data and officials rely on the accuracy of IRS information. The public interest is also served by promoting the integrity of trademark and copyright laws.

17. Accordingly, the plaintiff has satisfied criteria for obtaining an injunction because it has proved a likelihood of success on the merits, immediate irreparable injury if the injunction is not granted, that the injury to the plaintiff outweighs any harm which granting the injunctive relief would inflict upon the defendant, and that the injunction is beneficial to the public interest. See LaBelle Chevrolet, LLC v. Gen. Motors, LLC, 705 F. Supp. 2d 97, 99 (D. Mass. 2010).

18. Additionally, G.L. c. 106 § 9-625 authorizes a court to use its injunctive power to restrain collection or enforcement of collateral where, as here, a person does not have a validly filed security interest.

19. Finally, courts have recognized the need for, and issued injunctions, in circumstances similar to those present here. See, Peters v. BMW of N. Am., Inc., No. CIV.A. DKC2004-3451, 2005 WL 2250785, at *4 (D. Md. Sept. 15, 2005) (injunctive relief was "necessary to preserve and protect the jurisdiction of this court to decide the merits of this case by preventing plaintiff from filing collateral attacks … by way of plaintiff filing involuntary bankruptcy proceedings, liens, UCC financing statements, and other encumbrances naming BMW, its officers, employees, attorneys, related entities and agents as purported debtors, and that, absent the issuance of an injunction, there is a substantial likelihood that Plaintiff, who has threatened to file fraudulent involuntary bankruptcy proceedings against BMW and its officers, and who has already filed a fraudulent UCC financing statement … will file such bankruptcy petitions or other fraudulent liens, UCC financing statements, and encumbrances naming BMW, its officers, employees, attorneys, related entities and agents as purported debtors . . ..").

WHEREFORE, Chambers prays that this honorable court allow the within motion and enter the requested preliminary injunction, attached hereto as Exhibit A. Plaintiff also requests a hearing, at the Court's earliest convenience, on its Motion for Preliminary Injunction.

Respectfully submitted,
Herb Chambers 1188, Inc.
By its attorney,

/s/ Edward C. Cooley
Edward C. Cooley BBO# 550117
GIARRUSSO, NORTON, COOLEY
& MCGLONE, P.C.
Marina Bay
308 Victory Road
Quincy, MA 02171
(617)770-2900

DATED:  April 5, 2022

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HERB CHAMBERS 1188, Inc., d/b/a HERB CHAMBERS JAGUAR LAND ROVER BOSTON, | ) ) ) |
| Plaintiff, | ) |
| v. | ) |
| DERIC MARCELL THOMPSON, | ) |
| Defendant. | ) |

## PLAINTIFF'S MEMORANDUM
## IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

The plaintiff Herb Chambers 1188, Inc. ("Chambers") submits this memorandum in

support of its Motion for a Preliminary Injunction.

## STATEMENT OF FACTS[1]

On January 29, 2022, defendant contacted Chambers regarding the purchase of a Range

Rover Sport V8, a vehicle priced at $147,497.40. (VC ¶¶8, 13). The defendant requested that a

purchase order signed by the dealership be sent to him so he could arrange to give it to his trustee

for signing and payment. (VC ¶9). Upon being notified that the vehicle would not be released

until payment in full was received, the defendant requested and received from Chambers its

bank's wiring instructions. (VC ¶¶12, 14).  Chambers sent a signed Motor Vehicle Purchase

---

[1] The Statement of Facts is supported by the Verified Complaint, references to which take the
form (VC ¶___).

1

Doc: 00221399
Book: 2725 Page: 107

Contract ("MVPC") to defendant as requested, listing a selling price of $147,497.40 and requiring that defendant pay "cash...simultaneously with its delivery." (VC ¶13).

Defendant, instead of signing the MVPC and arranging for a wire transfer in payment of the vehicle, sent a letter titled "Conditional Acceptance of Motor Vehicle Purchase Contract." (VC ¶16). The letter included the MVPC, to which defendant had made significant unilateral changes including changing the form of payment from cash to a "Certificate of Deposit", and a fraudulent "Certificate of Deposit" not backed by any bank or financial institution and claimed this to be payment for the vehicle (VC ¶16-19). Instead, the "Certificate of Deposit" purports to be underwritten by, among other things, "over three quintillion, five hundred quadrillion in equity debt against the debtors" and "backed by the full faith and credit of the United States of America, restated, and incorporated in full by reference as if set forth in full, without prejudice." (VC ¶¶18, 21). Defendant also claimed that his "Conditional Acceptance" established a contract between Chambers and the defendant under the "Postal Rule" (VC ¶20).

The Conditional Acceptance letter closes with a threat of creating a "Claim of Lien" against each of Chambers' sales associates and Chambers and a threat to "file a financing statement against you each, supporting my lien as I deem necessary" (VC ¶25). The letter also purports to unilaterally grant defendant a power of attorney from Chambers to defendant in order to collect the full amount through a lien and the ability to file additional liens in the coming years (VC ¶26).

On February 2, 2022, defendant filed a UCC-1 Financing Statement with the Massachusetts Secretary of State listing Chambers and Chambers' Manager, Sean King, as debtors without any basis in law or fact for doing so and listing "any and all items of property of debtor . . .{including] all: motor vehicles . . . ." as collateral (VC¶29). On February 3, 2022, defendant filed a fraudulent UCC-3 amendment form with the Massachusetts Secretary of State purporting to amend the

2

collateral subject to the UCC-1 as including 27 specifically listed vehicles with a total estimated

value, according to defendant, of $2,670,770 (VC¶30). Defendant followed up with an email to

manager Sean King in which he claimed to have a valid contract with Chambers through his

unilateral modification of the MVPC and attaching the UCC filings and complaints that he filed

with the Massachusetts Attorney General, the Federal Trade Commission, and the Better Business

Bureau (VC¶31).

Chambers filed a UCC-5 information statement to provide notice that defendant's UCC-1

filing was fraudulent and sent a letter to defendant through counsel demanding that defendant file a

termination statement. (VC¶¶33-34, 37). On February 11, 2022, defendant sent an email to

Chambers stating that he had "cancelled the debt ($147,498.00)" for the vehicle, even though no

debt to him ever existed, and attached an IRS Form 1099C that he claimed "has been submitted to

the IRS" (VC¶35).

On February 12, 2022, defendant responded to Chambers' demand that he file a termination

statement asserting that he would only terminate the UCC-1 financing statement upon delivery of

the vehicle (VC¶37). He also asserted that he was owed $4,000,000 "for any injuries to me" and

further claimed that Chambers agreed to give defendant a power of attorney to collect payment on

this debt, which also authorized him to file UCC-1 statements related to the debt (VC¶37).

Additionally within defendant's February 12 letter was a "Copyright Notice" in which he alleged

that he had copyrighted his name and that he was owed $500,000 per use of his name in any

document from Chambers (VC¶38). The Copyright Notice begins "All rights reserved re; copyright

of trade-name/trademark, DERIC MARCELL THOMPSON" -- the exact same name that appears

on his Rhode Island Identification Card (VC¶38). Defendant then later sent another "Copyright

Notice" directly to Chambers' counsel and attached an invoice for $1,500,000 for using defendant's

3

name three times in his demand letter and subsequent response letter (VC¶40). This letter also

alleged a security interest in all of counsel's property and states that counsel agrees to the filing of a

UCC-1 statement stating same (VC¶40).

Based on this campaign of fraudulent filings and claims, Chambers filed the above

captioned action seeking declaratory judgment that: there was never a contract between Chambers

and defendant, the UCC-1 financing statement is invalid, the defendant's purported copyright and

trademark of his name are invalid, and there was never a debt owed to the defendant and the 1099C

is invalid.  The Complaint also requested the following injunctive relief that is the subject of the

present motion:  a preliminary injunction, to be made permanent, that will enjoin defendant and

his agents, servants, employees and attorneys from taking any action to enforce the fraudulently

filed UCC-1 statement as amended by the fraudulently filed UCC-3 purporting to take a security

interest in $2.7 million of Chambers' inventory, or from collecting or disposing of collateral

pursuant to the UCC filings; from making any further UCC filings which purport to create any

nonconsensual lien against Chambers, its employees, or counsel; from filing any action in the

United States Tax Court based on the fraudulent 1099C defendant filed with the IRS; or from

filing any copyright or trademark infringement claim based on the use of defendant's name

against Chambers, its officers, employees, attorneys, related entities and agents, without first

seeking and obtaining leave from this Court.

## ARGUMENT

### 1.    Standard of Review

To obtain preliminary injunctive relief under Fed. R. Civ. P. 65, a movant must
demonstrate
(1) a substantial likelihood of success on the merits,
(2) a significant risk of irreparable harm if the injunction is withheld,
(3) a favorable balance of hardships and
(4) a fit (or lack of friction) between the injunction and the public interest.

4

Doc: 00221399
Book: 2725  Page: 110

ACCEPTED FOR VALUE
AND RETURN FOR
EXEMPTION Rte#
By: Date.

Likelihood of success on the merits is the critical factor in the analysis and,
accordingly, a strong likelihood of success may overcome a "somewhat less"
showing of another element.

LaBelle Chevrolet, LLC v. Gen. Motors, LLC, 705 F. Supp. 2d 97, 99 (D. Mass. 2010)(internal

citations omitted). See also Cushing v. Packard, No. 21-1177, 2022 WL 884195, at *6 (1st Cir.

Mar. 25, 2022)(listing factors as "'(1) the movant's likelihood of success on the merits; (2) the

likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether

granting the injunction is in the public interest' weigh[ ] in favor of granting the request.").

1.   **An Injunction is Warranted Because Plaintiff Has a Substantial Likelihood of
     Success on the Merits.**

This case follows what has become a too familiar scheme in which people have used

false UCC financing statements to harass public officials and business owners who have never

authorized any security interests. See United States v. Johnson, No. 15-1831, 2016 WL 7408832,

at *6 (E.D.N.Y. May 4, 2016); United States v. Crawford, No. CV 19-15776 (RBK/JS), 2019

WL 5677750, at *1 (D.N.J. Nov. 1, 2019); United States v. Rodriguez Ramirez, 291 F. Supp. 2d

266 (S.D.N.Y. 2003); Crystal City Emerald Inc. v. J.P. Morgan Chase Bank, N.A., No. 3:16-CV-

00104-MPM-RP, 2016 WL 6561507, at *1 (N.D. Miss. Nov. 1, 2016); UNITED STATES OF

AMERICA, Plaintiff, v. 'gullett-el:taquan-rashe,' aka TAQUAN GULLETT, Defendant., No. 15-

CV-652-EGS-RMM, 2021 WL 7447977, at *7 (D.D.C. Oct. 14, 2021); United States v. Agra,

No. 2:13-CV-1662 GEB DAD, 2014 WL 1671592, at *5 (E.D. Cal. Apr. 28, 2014), report and

recommendation adopted, No. 2:13-CV-1662 GEB DAD, 2014 WL 2700272 (E.D. Cal. May 21,

2014).

It is clear from the facts in this matter that defendant's UCC-1 financing statement and

UCC-3 amendment are wholly fraudulent with no basis in fact or law. A required predicate to

filing a legitimate UCC-1 financing statement, is an agreement authorizing the security interest

which is the subject of the lien. See M.G.L. c. 106, § 9-509. Here, there was never any such

contract. The MVPC never matured into a contract based on defendant's unilateral and material

alterations of the terms that changed, among other things, the payment method from cash to his

bogus "Certificate of Deposit". Chambers never agreed to any of defendant's changes. "Federal

common law on contract formation requires mutual assent as to all material terms in order for a

valid contract to be formed." Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC,

994 F.3d 77, 85 (1st Cir. 2021). Therefore, no contract was ever formed between Chambers and

defendant, but even if the MVPC had by mutual assent become a contract it could not have been

used as the basis for a UCC-1 because it did not expressly authorize a security interest in

Chambers' property.

Similarly, defendant's Form 1099C is clearly fraudulent, as it is also based on the contract

that he allegedly entered with Chambers, which does not exist. There was never any debt owed to

defendant because he never paid a cent toward the vehicle, nor did he sign the original MVPC for

purchase of the vehicle. Therefore, there was no discharged debt on which to base the 1099C and

it is clearly invalid.

There is also no basis in law for defendant's claim of a valid copyright on his name. A

person's name is not a valid subject for copyright. 17 U.S.C. § 102; Arvelo v. Am. Int'l Ins. Co.,

66 F.3d 306 (1st Cir. 1995)("The Copyright Office's own interpretive regulations explicitly

embrace the rule of non-copyrightability for names and titles. See 37 C.F.R. § 202.1(a) (1994)

(listing as an example of non-copyrightable material: 'Words and short phrases such as names,

titles, and slogans....'")). This is another all too familiar scam that defendant incorporates in his

scheme. See Ray v. Credit Union One, No. CIVA 06-11694, 2007 WL 522700, at *1 (E.D.

6

Mich. Feb. 14, 2007); <u>United States v. Rodriguez Ramirez</u>, 291 F.Supp.2d 266

(S.D.N.Y.2003); <u>Gannon v. Tucknott Miller</u>, No. 1:05CV00168 TS, 2006 WL 1793581, at *2

(N.D. Ind. June 28, 2006); <u>United States v. DeClerck</u>, No. 02-40072-01-RDR, 2003 WL

22716919, at *3 (D. Kan. Sept. 18, 2003).

The facts in <u>Ray v. Credit Union One</u> are very similar to the case at hand. In <u>Ray v.</u>

<u>Credit Union One</u> the plaintiff alleged that "Defendants have 'continued to use [his] common-

law copyrighted trade-name/trade-mark property Johnnie Charles Ray©'" despite him giving

"several 'written notifications' to inform them of their copyright infringement" they continued to

use his name without compensation and, as a result, allegedly owed him $7,500,000.00 for

copyright infringement. <u>Ray v. Credit Union One</u>, No. CIVA 06-11694, 2007 WL 522700, at *1.

The court ruled that plaintiff's name was not a valid subject for copyright and cited a host of

cases reaching the same result:

> Plaintiff's Complaint fails to state a claim for relief because his name is not
> subject to copyright protection. *See United States v. Rodriguez Ramirez,* 291
> F.Supp.2d 266 (S.D.N.Y.2003) (in voiding leins placed on federal judge's and
> prosecutor's property, the court rejected defendant's claim of a common law
> copyright in his name because common law copyright was substantially
> preempted by Title 17 of the U.S.Code and because "a name is not a proper
> subject for copyright"); *Gannon v. Tucknott Miller,* 2006 WL 1793581 (N.D.Ind.
> June 28, 2006) (finding that person's name does not "exhibit the minimal
> creativity required for copyright protection," and that common law copyright
> protection does not exist because it has been preempted by federal
> law); *Compliance Review Servs., Inc. v. Callista Davis-Osuawu,* 2006 WL
> 2385291 (S.D.Tex. Aug.17, 2006) (finding plaintiff failed to state claim for relief
> because a name is not subject to copyright protection under Title 17); *United
> States v. DeClerck,* 2003 WL 22716919 (D.Kan. Sept.18, 2003) (rejecting claim
> of copyright protection in a name because it does not "constitute an original work
> of authorship or a derivative work as defined in 17 U.S.C. §§ 102 and 103").

<u>Ray v. Credit Union One</u>, No. CIVA 06-11694, 2007 WL 522700, at *2. Similarly, defendant's

name here is not a valid subject for copyright. Furthermore, defendant alleges the infringing use

is using his name in letters addressed to him. However, Chambers "has a First Amendment right

to use the [defendant's] name in its correspondence. . . ." <u>Gannon v. Tucknott Miller</u>, No.

1:05CV00168 TS, 2006 WL 1793581, at *2 (N.D. Ind. June 28, 2006) citing <u>N.Y. Stock Exch.,

Inc. v. Gahary</u>, 196 F.Supp.2d 401, 413 (S.D.N.Y.2002).

The same is true for defendant's allegation that his name is trademarked. Defendant's

name is not a valid trademark pursuant to 15 U.S.C.A. § 1051, § 1125, and § 1127. There is no

viable cause of action for a noncommercial use of a trademark. 15 USCA § 1125. 15 U.S.C.A.

§ 1051 requires any owner of a trademark to certify that the mark is used in commerce. 15

USCA § 1125 requires that for an action for trademark infringement that a person:

> on or in connection with any goods or services, or any container for
> goods, **uses in commerce** any word, term, name, symbol, or device, . . .which a)
> is likely to cause confusion . . . of such person with another person, or as to the
> origin, sponsorship, or approval of his or her goods, services, or commercial
> activities by another person, or b) **in commercial advertising or promotion**,
> misrepresents the nature, characteristics, qualities, or geographic origin of his or
> her or another person's goods, services, or commercial activities."

15 USCA § 1125(a)(1)(emphasis added). See <u>Keds Corp. v. Renee Int'l Trading Corp.</u>, 888 F.2d

215, 218 (1st Cir. 1989)("The 'tort' of infringement is thus the use of a registered mark in

connection with the sale of goods, without the consent of the owner, that is likely to cause

confusion."); see <u>Smartling, Inc. v. Skawa Innovation Ltd.</u>, 358 F. Supp. 3d 124, 138 (D. Mass.

2019)("To succeed on a claim of trademark infringement, a plaintiff must establish ... that the

allegedly infringing use is likely to cause consumer confusion." quoting <u>Boston Duck Tours, LP

v. Super Duck Tours, LLC</u>, 531 F.3d 1, 12 (1st Cir. 2008)).

Applying these basic concepts, it is clear that defendant has no valid claim for trademark

infringement in connection with Chambers' counsel using his name in correspondence or

otherwise.  Such use is simply not a commercial use for the purpose of selling products.

8

Additionally, addressing a letter to someone by their name does not constitute infringement as it would not cause consumer confusion regarding the source of a product.

## 2.     There is a Significant Risk of Irreparable Harm to Chambers if the Injunction Does Not Issue.

The false UCC-1 financing statement and UCC-3 amendment harm Chambers' credit, harm its ability to obtain and maintain their legitimate lending, and cloud title to its inventory. Chambers' financing arrangement requires that Chambers not use or allow its inventory to secure any other financing instruments. Defendant's false UCC-1 filing creates the appearance of a breach of that obligation. Defendant's false UCC-1 also clouds title to Chambers' inventory by claiming collateral of "any and all items of property of debtor . . .[including] all: motor vehicles . . . ."

Courts have frequently and consistently awarded injunctive relief against parties for the filing of false liens. See United States v. Crawford, No. CV 19-15776 (RBK/JS), 2019 WL 5677750, at *4 (D.N.J. Nov. 1, 2019)(ruling that when defendant filed various bogus liens against prosecutors and an IRS special agent that "Filing meritless liens to encumber the property of government employees causes irreparable harm to both the individual employees and the IRS as an institution." quoting United States v. Johnson, No. 15-1831, 2016 WL 7408832, at *6 (E.D.N.Y. May 4, 2016); Peters v. BMW of N. Am., Inc., No. CIV.A. DKC2004-3451, 2005 WL 2250785, at *4 (D. Md. Sept. 15, 2005); Crystal City Emerald Inc. v. J.P. Morgan Chase Bank, N.A., No. 3:16-CV-00104-MPM-RP, 2016 WL 6561507, at *3 (N.D. Miss. Nov. 1, 2016).

Additionally, G.L. c. 106 § 9-625 authorizes a court to uses its injunctive power to restrain collection or enforcement of collateral when, as here, a party does not comply with the requirements of Article 9 for valid secured transactions. As described in the previous section, defendant violated Article 9 by not having an agreement authorizing the security interest before

9

filing and by not having any legitimate security interest in the property. See M.G.L. c. 106, § 9-509. Therefore, the court may enjoin the collection and enforcement of defendant's fraudulent lien and the filing of additional nonconsensual liens against Chambers or its agents or attorneys to prevent further irreparable harm. See United States v. Strother, No. 1:16-CV-00007, 2016 WL 7664303, at *6 (E.D. Tex. Dec. 7, 2016), report and recommendation adopted, No. 1:16-CV-7, 2017 WL 67864 (E.D. Tex. Jan. 6, 2017)("The filing of fraudulent lien documents causes irreparable harm because the subject of those baseless liens suffer losses in potential threat to their title to real and personal property and credit ratings.")

In Crystal City Emerald Inc. v. J.P. Morgan Chase Bank, N.A., the court stated that where Crystal City Emerald, Inc. had filed several false liens against property lawfully owned by J.P. Morgan Chase that Chase was entitled to injunctive relief because "Crystal City has filed multiple fraudulent documents concerning the property, forcing Chase to engage in litigation to secure its ownership of the property. Because Chase has provided sufficient proof of its lawful ownership of the property and Crystal City has filed multiple fraudulent documents in connection with the property, the Court finds that Chase is entitled to an injunction prohibiting Crystal City from filing additional documents clouding Chase's title to the property." Crystal City Emerald Inc. v. J.P. Morgan Chase Bank, N.A., No. 3:16-CV-00104-MPM-RP, 2016 WL 6561507, at *3 (N.D. Miss. Nov. 1, 2016).

In Peters v. BMW of N. Am., Inc., the court ruled that injunctive relief was "necessary to preserve and protect the jurisdiction of this court to decide the merits of this case by preventing plaintiff from filing collateral attacks ... by way of plaintiff filing involuntary bankruptcy proceedings, liens, UCC financing statements, and other encumbrances naming BMW, its officers, employees, attorneys, related entities and agents as purported debtors, and that, absent

ACCEPTED FOR VALUE
AND RETURN FOR VALUE
EXEMPTION Date#    Bond#
BY

the issuance of an injunction, there is a substantial likelihood that Plaintiff, who has threatened to

file fraudulent involuntary bankruptcy proceedings against BMW and its officers, and who has

already filed a fraudulent UCC financing statement naming himself as both debtor and creditor,

will file such bankruptcy petitions or other fraudulent liens, UCC financing statements, and

encumbrances naming BMW, its officers, employees, attorneys, related entities and agents as

purported debtors . . .." Peters v. BMW of N. Am., Inc., No. CIV.A. DKC2004-3451, 2005 WL

2250785, at *4 (D. Md. Sept. 15, 2005).

Similarly, defendant here has filed multiple fraudulent documents concerning Chambers'

property, namely its inventory, and has forced Chambers to engage in litigation to secure its

ownership. Furthermore, defendant has threatened suits in tax court, threatened filing additional

fraudulent liens, threatened selling the liens to the highest bidder who would collect Chambers'

assets, and demanded $500,000 per use from Chambers and $1.5 million dollars individually

from Chambers' counsel for infringement of an invalid copyright and/or trademark. Accordingly,

here, as in Peters, an injunction is clearly warranted.

3.    **There is a Favorable Balance of Hardships and a Benefit to the Public Interest in Awarding Injunctive Relief.**

Chambers has had to pay to litigate the issue of fraudulent liens, tax documents, and

invoices for false copyright infringement all due to defendant's scheme to obtain a Range Rover

Sport V8 worth $147,498 without paying for the vehicle. The balance of hardships in this case

clearly favors Chambers. Defendant has no legitimate claim and has caused significant hardship

to Chambers and its agents and counsel to sort through and rectify defendant's fraudulent filings.

On the other hand, there is no harm to defendant by preventing him from filing further baseless

liens or actions to enforce them, nor is he harmed by an injunction barring the filing of

copyright/trademark claims regarding the use of his name without obtaining leave of this court.

ACCEPTED FOR VALUE
AND RETURN OR VALUE
EXEMPT Rte# Bond#
Date

In terms of the injunction's effect on the public, the UCC database is a public resource which provides an avenue to learn of security interests in property. See United States v. McGugan, 600 F. Supp. 2d 608, 614–15 (D.N.J. 2009)(Ruling that a bogus "Default Judgment" document filed by defendant "imposes irreparable harm on the Government entities and officials that are the subject of the documents, and **is not within the public interest**.) (emphasis added). Similarly, individuals rely on IRS information to be accurate in order to proceed with various transactions. See United States v. Knudson, 959 F. Supp. 1180, 1187 (D. Neb. 1997)(ruling that "the fair administration of federal tax laws" is in the public interest). Therefore, the public interest is served by ensuring that UCC liens and tax documents are valid and that fraudulent liens are effectively removed and enjoined.

The public interest is also served by ensuring that invalid copyright/trademarks are not enforced. See Midway Mfg. Co. v. Bandai-Am., Inc., 546 F. Supp. 125, 155 (D.N.J. 1982)(ruling that the public interest favors preserving "the integrity of the copyright laws"), see also Lego A/S v. Best-Lock Const. Toys, Inc., 874 F. Supp. 2d 75, 106 (D. Conn. 2012)("parties agree that the public interest factor favors whichever party has shown a likelihood of success on the merits").

## CONCLUSION

For all of the foregoing reasons, plaintiff's Motion for Preliminary Injunction should be allowed in the form attached to the motion or on such other terms, which will enjoin and restrain defendant and his agents, servants, employees and attorneys from taking any action to enforce the fraudulently filed UCC-1 (statement filing number 202285220810) or from collecting or disposing of collateral pursuant to the UCC-1; from filing any further UCC financing statements or other documents which purport to create any nonconsensual lien against Chambers, its employees, or counsel which cloud title to Chambers' property and inventory; from filing any

action in the United States Tax Court based on the fraudulent 1099C or any copyright or

trademark infringement claim regarding the use of defendant's name against Chambers, its

officers, employees, attorneys, related entities and agents, without first seeking and obtaining

leave from this Court.

Respectfully submitted,
Herb Chambers 1188, Inc.
By its attorney,

/s/ Edward C. Cooley
Edward C. Cooley BBO# 550117
GIARRUSSO, NORTON, COOLEY
& MCGLONE, P.C.
Marina Bay
308 Victory Road
Quincy, MA 02171
(617)770-2900

DATED: April 5, 2022

Case 1:22-cv-10501-WGY   Document 1-17   Filed 04/05/22   Page 1 of 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) Herb Chambers 1188 Inc. v. Deric Marcell Thompson

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

    [ ]   I.    160, 400, 410, 441, 535, 830*, 835*, 850, 880, 891, 893, R.23, REGARDLESS OF NATURE OF SUIT.

    [✓]  II.   110, 130, 190, 196, 370, 375, 376, 440, 442, 443, 445, 446, 448, 470, 751, 820*, 840*, 895, 896, 899.

    [ ]   III.  120, 140, 150, 151, 152, 153, 195, 210, 220, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 367, 368, 371, 380, 385, 422, 423, 430, 450, 460, 462, 463, 465, 480, 485, 490, 510, 530, 540, 550, 555, 560, 625, 690, 710, 720, 740, 790, 791, 861-865, 870, 871, 890, 950.

    *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)
   YES [ ]   NO [✓]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [✓]   NO [ ]

   A.   If yes, in which division do all of the non-governmental parties reside?
        Eastern Division [✓]      Central Division [ ]      Western Division [ ]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
        Eastern Division [ ]      Central Division [ ]      Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME Edward C. Cooley
ADDRESS 308 Victory Road, Quincy, MA  02171
TELEPHONE NO. 617-770-2900

(CategoryForm11-2020.wpd )

Doc: 00221399
Book: 2725 Page: 121

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HERB CHAMBERS 1188, Inc., d/b/a HERB CHAMBERS JAGUAR LAND ROVER BOSTON, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. |
| DERIC MARCELL THOMPSON, | ) ) |
| Defendant. | ) |

## VERIFIED COMPLAINT

Plaintiff, Herb Chambers 1188, Inc. ("Chambers"), by and through its attorney, alleges

the following:

### NATURE OF THE ACTION

1.      This action arises out of the misuse by defendant, Deric Marcell Thompson

("defendant"), of the Uniform Commercial Code ("UCC") filing system to create false liens

purportedly totaling over $2.7 Million at the Massachusetts Secretary of State's Office, based

upon false claims, which are in turn supported by fabricated contract documents. Defendant's

antics amount to a form of paper terrorism that imperils Chambers' inventory financing which is

provided by a legitimate lender with valid and enforceable liens. Chambers' financing

arrangement requires that Chambers not use or allow its inventory to secure any other financing

instruments. Defendant's false UCC-1 filing creates the appearance of a breach of that obligation

and clouds Chambers' title to its inventory.

1



Doc: 00221399
Book: 2725 Page: 122

2. Chambers brings this action seeking a declaration that defendant's false UCC-1 financing statement and subsequent UCC-3 amendment, which he filed with the Massachusetts Secretary of State against Chambers, are null, void, and without legal effect and seeking an injunction prohibiting the defendant from filing any further false lien documents or taking any action seeking to enforce his claims based on the fraudulently filed UCC-1 financing statement. Plaintiff also requests that defendant's copyright and trademark claims pertaining to Chambers' use of his name on written correspondence, and which he asserted in connection with his scheme, be declared invalid. Finally, plaintiff seeks an injunction prohibiting defendant from filing any action in the United States Tax Court based on a fraudulent 1099C he created which purported to relate to the cancellation of a debt that never existed, or any action alleging Copyright or Trademark infringement naming Chambers, its officers, employees, attorneys, related entities and agents, without first seeking and obtaining leave from this Court.

## PARTIES

3.      Plaintiff is a Massachusetts corporation with its principal place of business at 1188 Commonwealth Avenue, Boston, Massachusetts.

4.      Defendant is an individual who resides in Woonsocket, Rhode Island.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.§ 1332 in that this is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars ($75,000).

6.      Jurisdiction is also conferred on this Court pursuant to 28 U.S.C. §1338(a) in that this civil action includes issues of copyright and/or trademark infringement.

Doc: 00221399
Book: 2725 Page:   123

ACCEPTED FOR VALUE
AND RETURN FOR VALUE
EXEMPTION*
BY

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District. In addition, venue is proper in this District pursuant to 28 U.S.C. § 1392 because a substantial portion of the property that is the subject of this lawsuit – namely, Chambers' inventory which is falsely identified by defendant as collateral in a UCC-1 Financing Statement filed in the Massachusetts Secretary of State's Office – is also located in this District.

## FACTS

8.      On January 29, 2022, defendant contacted Chambers to inquire about purchasing a Range Rover Sport V8 and, when prompted, opted into text messaging with a sales associate to discuss the vehicle. True and accurate copies of the texts are attached hereto as Exhibit 1.

9.      Upon being notified that the vehicle was available, defendant responded: "OK are you able to put together a purchase order signed by an authorized rep at the dealer.  My trust is going to pay for it. I need that to give it to my trustee so he can sign and approve funding for the vehicle.  Is that possible?". See Ex. 1, p. 1.

10.     The sales associate confirmed that he could send a signed Motor Vehicle Purchase Contract ("MVPC") for defendant to present to his Trustee for execution and approval of funding, requested the full address to which the car would be registered to calculate the correct tax, and requested a copy of defendant's license. Ex. 1, p. 2.

11.     The defendant alleged that he didn't drive but that he would send his state identification. A true and accurate copy of the Rhode Island Identification Card defendant sent to Chambers is attached as Exhibit 2. The name and address on the Identification Card is the same as the name and address he provided for the vehicle's registration. See Ex. 1, p.3.

Doc: 00221399
Book: 2725 Page:  124

12.     After getting confirmation that an MVPC would be forthcoming, the defendant
and Chambers had the following text exchange:

> Defendant: OK and once my trustee signs I can scan it and send it back and we
> can schedule delivery. Is that included in the cost or is it separate?
>
> Chambers: We need the money to be in our account 1st then we can either ship
> the vehicle which is about 1200 I can add that.
>
> Defendant: I forgot, is the MCO [Manufacturer's Certificate of Origin] \ MSO
> [Manufacturer's Statement of Origin] going to be included in the paperwork?
>
> Chambers: No. Money has to be in our account 1st.
>
> Defendant: **No problem please send me banking information. Routing and
> account number please. (emphasis added).**

See, Ex. 1, p. 6.

13.     On January 29, 2022, pursuant to the communications with the defendant,
Chambers sent the defendant a Motor Vehicle Purchase Contract ("MVPC") to sell the vehicle to
defendant for $147,497.40 which was signed by dealer representative, Adriano Polanco. The
MVPC required that defendant pay "cash…simultaneously with its delivery." A true and
accurate copy of the MVPC is attached as Exhibit 3.

14.     On January 30, 2022, Chambers also emailed the defendant the wiring
instructions. A true and accurate copy of the email with attached wire instructions is attached as
Exhibit 4.

15.     Defendant responded by email that same day advising Chambers as follows: "I
just wanted to advise you that a signed contract and payment for $148,498.00 for the
[vehicle]…will go out tomorrow via certified mail…We will schedule a pickup for the vehicle
within 24 hours after receipt of payment…." See, Ex. 4.

16.     The package that arrived at the dealership, however, did not contain the original
MVPC signed by defendant or payment of the purchase price. Instead, it contained a rambling,

4

Doc: 00221399
Book: 2725 Page: 125

discursive, and largely unintelligible letter designated as a "Conditional Acceptance of Motor

Vehicle Purchase Contract" and addressed to Chambers' Sales Manager as "Trustee of the Social

Security Cestui Trust." A true and accurate copy of the January 29, 2022, letter and

accompanying documents is attached hereto as Exhibit 5 (hereafter the "CA Letter").

17.     The CA Letter was accompanied by a copy of the MVPC signed by Chambers to

which the defendant had made significant unilateral changes, blacking out large sections of text

and writing in additional terms, including changing the form of payment from cash to a

"Certificate of Deposit" (the "CD").  See Ex. 5, p.7.

18.     The CD purports to be for the entire purchase price of the vehicle of $147,498.00

and purports to be underwritten by, among other things, "over three quintillion, five hundred

quadrillion in equity debt against the debtors." See Ex. 5, p.9.

19.     The CD is not backed or issued by any bank or financial institution. Instead, the

CD was issued and signed by "Deric-Marcell Thompson ©, beneficiary".

20.     Defendant claimed in the CA Letter that his "Conditional Acceptance" of the

MVPC established "a Common Law-contract between us under the Postal rule" and stated that

"I, Deric-Marcell: Thompson©, Beneficiary, intend to deposit a tender payment (Certificate of

Deposit), in full transparency, under my terms and conditions as true/full custodian of the Social

Security Cestui Trust." See Ex. 5.

21.     The letter also stated that "I shall make a Certificate of Deposit tender payment of

$147,498.00 to HERB CHAMBERS JAGUAR RANGE ROVER BOSTON for your financial

institution to convert my tender payment to money of account USD" and claimed that the CD

was "pre-paid, pre-authorized and pre-approved secured under perpetuity UCC Record No.

Doc: 00221399
Book: 2725 Page: 126

2021183423070" and that it was "backed by the full faith and credit of the United States of America, restated, and incorporated in full by reference as if set forth in full, without prejudice." See Ex. 5, p.2.

22.     This UCC filing number listed on the certificate is linked to a UCC-1 statement filed with the Massachusetts Secretary of State on December 6, 2021 which lists the debtor as the "State of Massachusetts Deric Marcell Thompson COLB#R756986", lists the secured party as Deric M Thompson, and lists the collateral as "any and all collateral held/deposited in any commercial accounts in the name of the legal fiction debtor aka DERIC MARCELL THOMPSON© . . . ."

23.     The CA Letter includes several pages under the heading "Points and Authorities" which are ramblings on the legal system and the UCC. The burden of defendant's discourse in this largely unintelligible rant is to establish the purported legitimacy of the obviously fraudulent CD as a means of payment. In that regard, the "Points and Authorities" in the CA Letter culminates in the following bizarre, and legally untenable, conclusion:

> Under 18 USC 8, The term **"obligation or other security of the United States"** includes all bonds, certificates of indebtedness, national bank currency, Federal Reserve notes, Federal Reserve bank notes, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, **cerificates of deposit,** bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, issued under any Act of Congress, and **_canceled United States stamps_.**
>
> **Under 12 USC 411, The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, Customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve Bank. (Dec. 23, 1913, Ch. 6, § 16 (par.), 38 Stat. 265; Jan. 30, 1934, Ch. 6, § 2(b)(1), 48 Stat. 337; Au. 23, 1935, Ch, 614, title II, § 203(a), 49 Stat. 704.)**

6

Doc: 00221399
Book: 2725 Page: 127

See Ex. 5, CA Letter, Points and Authorities, p. 4, ¶¶ 18-19 (all emphasis in original).

24.     The CA Letter concludes by stating that defendant is "fully aware of my rights under the Uniform Commercial Code" and that if Chambers did not understand any of the conditions, its "financial institution should be able to clarify what is intended after review of Point and Authorities." See Ex. 5, p. 5.

25.     The CA Letter concludes with the threat of creating a "Claim of Lien" against each of Chambers' sales associates addressed in the letter heading and Chambers "and file a financing statement against you each, supporting my lien as I deem necessary." The letter states that Chambers had "no right of action or recourse in any action at law, action in equity or Admiralty or any other law herein written or implied against me or my filings." See Ex. 5, p. 5.

26.     The CA Letter also purported to unilaterally grant defendant a "Power of Authority/Attorney [from Chambers] to me . . . so that I am able to collect the full amount through a lien…" and the alleged power to file additional liens each year thereafter "if any such injury to me persists on a yearly basis." See Ex. 5, p. 5.

27.     On January 31, 2022, defendant filed a UCC-3 amendment with the Rhode Island Secretary of State, purporting to add the Range Rover Sport that was the subject of the original MVPC and the fraudulently revised "Conditional Acceptance" as additional collateral under a previously filed and equally bogus UCC-1. A true and accurate copy of the Rhode Island UCC-3 filing is attached hereto as Exhibit 6.

28.     Defendant then emailed several Chambers' associates on February 1, 2022, advising them that the vehicle would be picked up via a flatbread truck on that day to which Sean King, Chambers' Manager, responded stating that no vehicle would be picked up without the signed original MVPC and full payment being made.

7

Doc: 00221399
Book: 2725 Page:   128

29.    On February 2, 2022, defendant filed a UCC-1 Financing Statement filing number 202285220810 with the Massachusetts Secretary of State listing Chambers and Chambers' Manager, Sean King, as debtors without any basis in law or fact for doing so and listing "any and all items of property of debtor . . .[including] all: motor vehicles . . . ." as collateral. A true and accurate copy of the Massachusetts UCC-1 filing is attached hereto as Exhibit 7.

30.    On February 3, 2022, defendant filed a fraudulent UCC-3 amendment form with the Massachusetts Secretary of State purporting to amend the collateral subject to the UCC-1 as including 27 specifically listed vehicles in Chambers' inventory with a total estimated value, according to defendant, of $2,670,770. A true and accurate copy of the Massachusetts UCC-3 filing is attached hereto as Exhibit 8.

31.    Also, on February 3, 2022, defendant replied to Sean King's earlier email falsely alleging that he had a binding contract with Chambers, even though he had unilaterally altered the terms to reflect payment by virtue of a bogus CD, and attaching copies of the UCC filings as well as complaints he had filed with the Massachusetts Attorney General, the Federal Trade Commission, and the Better Business Bureau – all arising out of his fabricated and fraudulent contract claim. A true and accurate copy of the February 3, 2022 email and attachments is attached hereto as Exhibit 9.

32.    As with his previous bizarre rants, defendant's February 3, 2022 email was based on the "Postal Rule" and his previously stated "Points and Authorities" and alleged that there was a binding contract based on his fraudulent "Conditional Acceptance" on which he claimed he was entitled to file UCC-1 liens, which he could sell and thereby cause Chambers' inventory worth $2.7 million dollars to be seized. The email states in pertinent part:

> …You have 24 hours to deliver the vehicle to my home, or I will sell the UCC lien
> to the highest bidder to where they can collect any and all assets listed. Especially,

8

Doc: 00221399
Book: 2725 Page: 129

the 27 vehicles listed in the 2022 Inventory which are included as collateral in the UCC 3 attached. You are an authorized agent of Land Rover Boston. I authorize you, Sean King, with my Power of Authority/Attorney to release the vehicle, to have it delivered with All Vehicle Documentation, and All Keys, to 233 Halsey Road, Woonsocket Rhode Island, 02895. I'm within my rights, due to the conditions of the Conditional Acceptance of the Motor Vehicle Purchase Contract, Certified Mail # 7019 0700 0001 1733 0625 which has been delivered at 1:17 pm today! I would rather handle this administratively between private parties than to get courts involved, so would you. Writs of Execution and Seizure of Assets by the Suffolk County Sheriff's Department is not where I want to go, but it's a trip I will take with no problem. It did not have to come to this, but my hand was forced. The 2022 inventory is an estimated $2.7 million dollars. The [vehicle] is only $147,497.40. Don't let one vehicle that's paid for be the cause of seizure of an entire inventory. Thanks in Advance Deric….

33.     On February 8, 2022, Chambers filed a UCC-5 Information Statement with the Massachusetts Secretary of State, to provide notice of the fraudulently filed UCC-1. A true and accurate copy of the UCC-5 Information Statement is attached hereto as Exhibit 10.

34.     On February 9, 2022, Chambers, through counsel, sent a letter to defendant demanding that he file a termination statement pursuant to the provisions of M.G.L.c. 106 § 9-513 with each filing officer with whom the false UCC-1 financing statement had been filed. A true and accurate copy of the February 9, 2022 Demand for Filing Termination Statement of Wrongfully Filed Financing Statement is attached hereto as Exhibit 11.

35.     On February 11, 2022, in furtherance of his fraudulent scheme, defendant sent an email to Chambers stating that he had "cancelled the debt ($147,498.00)" for the vehicle, even though no debt to him ever existed, and attached an IRS Form 1099C that he claimed "has been submitted to the IRS." Incredibly, the attached 1099C included the figure $1,474,980 as the amount of the debt discharged and it is this amount that would be deemed income to Chambers if the document had been validly issued. A true and accurate copy of the February 11 email and the attached Form 1099C is attached hereto as Exhibit 12.

9

Doc: 00221399
Book: 2725 Page: 130

36.      The defendant asserted in the February 11, 2022 email that through this wholly
fraudulent and absurd artifice, he was entitled to delivery of the vehicle he had not paid for and
stated that:

> If there is dishonor with this, I will have no choice but to petition your dishonor to
> the **United States Tax Court under _Title XXXII Rule 331. Commencement of
> Lien and Levy Action_**. I will also file a 3949A form with the IRS reporting Herb
> Chambers 1188, Inc. This is within the conditions of Conditional Acceptance of the
> Motor Vehicle Purchase Contract.

See Ex. 12, February 11, 2022 email.

37.      On February 12, 2022, defendant responded to Chambers' demand that he file a
termination statement, with another rambling, discursive, and confusing response which was
titled "Conditional Acceptance upon Proof of Claim for Amendment of UCC Financing
Statement". In the response, defendant demanded Chambers respond to 23 "Proofs of Claim"
under penalty of perjury. Defendant then stated that he would only terminate the UCC-1
Financing statements upon delivery of the vehicle. He also asserted that he was owed $4,000,000
"for any injuries to me" and further claimed that Chambers agreed to give defendant a power of
attorney to collect payment on this debt, which also authorized him to file UCC-1 statements
related to the debt. A true and accurate copy of the February 12, 2022 letter is attached hereto as
Exhibit 13.

38.      In a further effort to perpetrate a fraud on Chambers, the defendant included in the
February 12, 2022 letter an alleged "Copyright Notice" in which he essentially purported to
copyright his name and establish a $500,000 charge for each use of his name in any document.
Based on this document, defendant asserted that he was entitled to total damages of $1,000,000
relating to the use of his name in Chambers' demand letter. The Copyright Notice begins "All
rights reserved re; copyright of trade-name/trademark, DERIC MARCELL THOMPSON" – the

10

Doc: 00221399
Book: 2725 Page: 131

exact same name that appears on his Rhode Island Identification Card. Compare, Exhibit 13 and enclosed "Copyright Notice" and Exhibit 2, Rhode Island Identification Card.

39.     On February 21, 2022, Chambers responded through counsel asserting that the Demand for Filing Termination Statement of Wrongfully Filed Financing Statement was unconditional and required an unconditional response, and that Chambers would be seeking relief in court. A true and accurate copy of the February 21, 2022 letter is attached hereto as Exhibit 14.

40.     On February 22, 2022, defendant sent a second document purporting to be a "Copyright Notice", to Chambers' counsel and attached an invoice addressed individually to counsel demanding $1,500,000 – or $500,000 for each instance that counsel used defendant's name in the demand letter and subsequent response letter. A true and accurate copy of the February 22, 2022 "Copyright Notice" is attached hereto as Exhibit 15.

41.     This "Copyright Notice" claims a security interest in "all of Edward C. Cooley's property and interest in property" for the total amount invoiced and bizarrely asserts that counsel agrees to pledge all of his property as collateral for the copyright claim, that counsel agrees to the filing of a UCC-1 financing statement stating same, that any and all resulting UCC-1 statements are not bogus nor will counsel claim as much, and asserts that counsel waives any and all defenses.  See, Exhibit 15.

## COUNT I

### (Declaratory Judgment 28 USC §2201 – No Valid Contract or Power of Attorney)

42.     Chambers repeats and realleges paragraphs 1-41 as if fully set forth herein.

43.     The defendant has asserted that his "Conditional Acceptance" formed a binding contract, notwithstanding his unilateral alteration of material terms including changing the

11

ACCEPTED FOR VALUE
AND RETURN FOR VALUE
EXEMPTION Rte Bond#
Date
BY

Doc: 00221399
Book: 2725 Page: 132

payment term from cash to a bogus certificate of deposit that he created and which was not issued by any bank nor supported by any currency or thing of value.

44.　Defendant further asserts that the "Conditional Acceptance" permitted him to file a UCC-1 financing statement and granted him a power of attorney to act on behalf of Chambers.

45.　Defendant's claims are without legal basis and no valid contract of any kind between Chambers and defendant was ever formed.

46.　Pursuant to 28 USC §2201, Chambers seeks a binding declaration that no valid contract was entered, defendant has no power of attorney to act on behalf of Chambers, and defendant had no valid security interest that would enable him to file a UCC-1 Financing Statement listing Chambers and/or its representatives as the debtors.

47.　Such determination of the issues presented will afford relief from uncertainty and insecurity with respect to rights, status, and legal relations between the parties.

## COUNT II

### (Declaratory Judgment 28 USC §2201 – Invalid UCC Filings)

48.　Chambers repeats and realleges paragraphs 1-47 as if fully set forth herein.

49.　The defendant has asserted through the UCC-1 filing that he has a security interest in the 2022 Range Rover Sport and, by virtue of the UCC-3, a security interest in other motor vehicles in Chambers' inventory valued at more than $2.7 Million. He also threatened to sell his alleged security interest to a third party.

50.　There is no valid contract, loan, or other instrument that grants defendant a security interest in any of Chambers' property and Chambers never authorized any security interest in its property, nor did its employees or counsel.

51.　Defendant's UCC filings with the Massachusetts Secretary of State have created an actual controversy within the jurisdiction of this court by falsely representing that Chambers

12

Doc: 00221399
Book: 2725 Page: 133

is indebted to defendant and that Chambers granted defendant a security interest in its property when Chambers never authorized or entered a contract granting any security interest in its property.

52. Pursuant to 28 USC §2201, Chambers seeks a binding declaration that the UCC-1 financing statement and UCC-3 amendment are fraudulent, invalid, null, void and of no legal effect.

53. Such determination of the issues presented will afford relief from uncertainty and insecurity with respect to rights, status, and legal relations between the parties.

## COUNT III

### (Declaratory Judgment 28 USC §2201 – Invalid Copyright)

54. Chambers repeats and realleges paragraphs 1-53 as if fully set forth herein.

55. Defendant has threatened copyright actions against Chambers and its employees, representatives, and counsel, for using defendant's name in correspondence, even going so far as send counsel an "Invoice" for $1,500,000 for alleged infringements.

56. Defendant's name, which is set out on his Rhode Island ID card, is not a proper subject of copyright pursuant to 17 U.S.C. § 102.

57. Pursuant to 28 USC §2201, Chambers seeks a binding declaration that defendant has no valid copyright and therefore no claim for any amount of damages against Chambers, its employees, or its counsel.

58. Defendant's assertion of a copyright claim has caused a genuine controversy in this case.

59. Such determination of the issues presented will afford relief from uncertainty and insecurity with respect to rights, status, and legal relations between the parties.

13

Doc: 00221399
Book: 2725 Page: 134

ACCEPTED FOR VALUE
AND RETURN FOR VALUE
EXEMPTION Rte#  Bond#
Date
BY

## COUNT IV

**(Declaratory Judgment 28 USC §2201 – Invalid Trademark)**

60.    Chambers repeats and realleges paragraphs 1-59 as if fully set forth herein.

61.    Defendant has asserted that his name is trademarked, and he has threatened actions against Chambers and its employees and representatives for allegedly violating his trademark.

62.    Defendant's claim of trademark has created an actual controversy within the jurisdiction of this court.

63.    Plaintiff's name is not a valid trademark pursuant to 15 U.S.C.A. § 1051, § 1125, and § 1127.

64.    There is no viable cause of action for a noncommercial use of a trademark. 15 USCA § 1125.

65.    Pursuant to 28 USC §2201, Chambers seeks a binding declaration that the defendant has no valid trademark on his name and therefore no claim against Chambers, its employees, or counsel for using his name in correspondence, communications, or otherwise.

66.    Such determination of the issues presented will afford relief from uncertainty and insecurity with respect to rights, status, and legal relations between the parties.

## COUNT V

**(Declaratory Judgment 28 USC §2201 – No Debt Owed and Invalid Form 1099)**

67.    Chambers repeats and realleges paragraphs 1-66 as if fully set forth herein.

68.    The defendant has asserted that that he "cancelled the debt ($147,498.00)" for the vehicle, even though no debt to him ever existed, and he submitted to the IRS a Form 1099C.

14

Doc: 00221399
Book: 2725 Page: 135

69.     The defendant threatened to bring an action against Chambers in the United States Tax Court and to also file a 3949A form with the IRS reporting Herb Chambers 1188, Inc. if the vehicle was not delivered to him.

70.     Defendant's actions are without legal basis as no debt was ever owed to him and there was therefore no debt for him to cancel and report to the IRS with a Form 1099C.

71.     Defendant's claim of a debt owed to him on which the purported cancellation and subsequent 1099C were based have created an actual controversy within the jurisdiction of this court.

72.     Pursuant to 28 USC §2201, Chambers seeks a binding declaration that defendant was not owed any debt by Chambers and the 1099C was therefore invalidly issued and is void.

73.     Such determination of the issues presented will afford relief from uncertainty and insecurity with respect to rights, status, and legal relations between the parties.

## COUNT VI

### (Injunctive Relief)

74.     Chambers repeats and realleges paragraphs 1-73 as if fully set forth herein.

75.     Pursuant to G.L. c. 106 § 9-625, upon establishing that defendant filed a false UCC-1, Chambers is entitled to an order enjoining defendant from taking any action to enforce the UCC-1 or from collecting or disposing of collateral pursuant to the UCC-1.

76.     Defendant's conduct described herein constitutes violations of G.L. c. 106 §9-509 by filing a UCC-1 statement without satisfying the conditions required by that section that Chambers authorize the filing by entering a security agreement or otherwise, and defendant does not hold any valid security interest against Chambers.

15

Doc: 00221399
Book: 2725 Page: 136

77.     Pursuant to G.L. c. 106 § 9-625, Chambers is entitled to an order permanently enjoining defendant, his agents, and all others in active participation with him from filing or recording documents which purport to create any nonconsensual lien against Chambers.

78.     Additionally, Chambers is entitled to an injunction prohibiting defendant from filing any further UCC-1 Financing Statements, liens, encumbrances, or any other instruments, clouding Chambers' title to its property and inventory. This request for relief is appropriate based on defendant's previous filing of multiple fraudulent documents concerning the property, including the UCC-1 Financing Statement, UCC-3 Amendment, and Form 1099C, forcing Chambers to engage in litigation to secure its ownership of the property.

79.     Chambers is further entitled to an injunction prohibiting defendant from filing any action in the United States Tax Court based on the fraudulent 1099C, or any Copyright or Trademark infringement claim regarding the use of defendant's name against Chambers, its officers, employees, attorneys, related entities and agents, without first seeking and obtaining leave from this Court.

80.     This injunction is necessary to preserve and protect the jurisdiction of this court to decide the merits of this case by preventing defendant from filing collateral attacks on Chambers in other forums. There is a substantial likelihood that defendant, who has threatened to file fraudulent claims in the Tax Court and elsewhere against Chambers and its officers, employees, attorneys, and agents, and who has already filed a fraudulent UCC-1 financing statement, UCC-3 amendment, and a Form 1099C, will file such fraudulent actions unless restrained.

## COUNT VII

### (Damages under UCC Section 9-625(e))

81.     Chambers repeats and realleges paragraphs 1-80 as if fully set forth herein.

82.     Defendant has falsely filed a UCC-1 statement against Chambers and a UCC-3 amendment.

16

Doc: 00221399
Book: 2725 Page: 137

83.     Section 9-625(e) authorizes the debtor to recover $500 in each case from a person who has falsely filed a record that the person is not entitled to file.

84.     Chambers is therefore entitled to the $500 for each false record defendant filed.

WHEREFORE, Chambers respectfully prays as follows:

1.     As to Count I, that the court determine, adjudge, and declare that no valid Motor Vehicle Purchase Contract was entered, defendant has no power of attorney to act on behalf of Chambers, and defendant had no valid security interest that would enable him to file a UCC-1 Financing Statement listing Chambers and/or its representatives as the debtors.

2.     As to Count II, that the court determine, adjudge, and declare that the UCC-1 financing statement and UCC-3 amendment are fraudulent, invalid, null, void and of no legal effect.

3.     As to Count III, that the court determine, adjudge, and declare that defendant has no valid copyright and therefore no claim for any amount of damages against Chambers, its employees, or its counsel.

4.     As to Count IV, that the court determine, adjudge, and declare that the defendant has no valid trademark on his name and therefore no claim against Chambers, its employees, or counsel for using his name in correspondence, communications, or otherwise.

5.     As to Count V, that the court determine, adjudge, and declare that Chambers owed no debt to defendant and the 1099C was invalidly issued and is void and of no legal effect.

6.     As to Count VI, that the court enjoin the defendant as follows:

> a. prohibiting defendant, his agents, and all others in active participation with him from taking any action to enforce the UCC-1 or from collecting or disposing of collateral pursuant to the UCC-1;

17

Doc: 00221399
Book: 2725 Page: 138

b. permanently enjoining defendant, his agents, and all others in active

participation with him from filing or recording documents which purport

to create any nonconsensual lien against Chambers including any further

UCC-1 Financing Statements, liens, encumbrances, or any other

instruments, clouding Chambers' title to its property and inventory.

c. prohibiting defendant from filing any action in the United States Tax

Court based on the fraudulent 1099C, or any Copyright or Trademark

infringement claim regarding the use of defendant's name against

Chambers, its officers, employees, attorneys, related entities and agents,

without first seeking and obtaining leave from this Court.

7.     As to Count VII, that the court enter judgment for Chambers in an amount to be

determined at trial.

8.     That the court award Chambers its reasonable attorneys' fees as an element of

damages, under its inherent powers as redress for bad faith filings and conduct that prompted this

litigation, and pursuant to 17 U.S.C. §505;

9.     That the court grant such other and further relief as the court deems to be just and

proper.

> Respectfully submitted,
> HERB CHAMBERS 1188 INC.
> By its attorney,
>
> /s/ Edward C. Cooley
> Edward C. Cooley, BBO # 550117
> GIARRUSSO, NORTON, COOLEY
> & McGLONE, P.C.
> 308 Victory Road
> Quincy, MA 02171
> (617)770-2900

18

Case 1:22-cv-10501 Document 1 Filed 04/05/22 Page 19 of 19

Doc: 00221399
Book: 2725 Page: 139

## VERIFICATION

...tate under the pains and penalties of perjury that I am the General Manager (also

...ager") of Herb Chambers 1188, Inc., the plaintiff in this action. I sign this

...plaint for and on behalf of the plaintiff and am duly authorized to do so. The facts stated in

th... ...regoing Verified Complaint are not all within my personal knowledge nor is there an officer of the

plaintiff who has personal knowledge of all such matters. The facts asserted in the Verified Complaint

which are not within my personal knowledge have been assembled by authorized employees and

managers of the plaintiff and are true and I so state under the pains and penalties of perjury this

_____2_____ day of April, 2022.

Sean King

RECEIVED IN WOONSOCKET R.I.
DATE Apr 18,2022 TIME 01:26:22P
Christina Harmon, CITY CLERK

19