Case 1:22-cv-10501-WGY Document 1-5 Number of pages 14

# EXHIBIT 5



MEMORANDUM
With Points and Authorities
(This is not an offer. This is not a public disclosure.)
Pertaining to Public Fraud, Law, Money, and Commercial Paper

To Whom these presents shall come; greetings, take notice:

With Points and Authorities

1.      That prior to 1938, all US Supreme Court Decisions were based upon what is termed: "public law" or that system of law that was controlled by Constitutional limitation. After 1938, all US Supreme Court decisions have been based upon "public policy" concerning commercial transactions made under the "Negotiable Instrument Law" as a result of the US Bankruptcy as declared by President Roosevelt on March 9, 1933 and codified at 12 USCA 95(a) and by Executive Orders. This bankruptcy caused the change from "public law" to "private commercial law" and was recognized by the Supreme Court in <u>Erie v Thomkins</u> (1938). After that case, all the procedures of law were officially blended with procedures of equity.

2.      That the Negotiable Instruments Law is a branch of the "international Law Merchant" which is now known as the "Uniform Commercial Code" (UCC) that was 'drafted' and made uniform, and "adopted in whole or substantially by all states." <u>Black's Law Dictionary, 6th ed., pg 1531</u>. Thus the UNITED STATES and all US vessels (strawman) are under the Uniform Commercial Code.

3.      That several (now 50) States accepted the "benefits" of federal grants offered by the federal United States as the "consideration" of a commercial agreement between themselves. Under the agreement, (the States Conference of Governors, March 6, 1933) pledged their full faith and credit and agreed to obey the dictates of Congress, and assume their portion of the National Debt, collected as "your fair share", as an example, in the nature of the "voluntary" income tax, wherein the IRS operates and collects such "taxes" under the same UCC.

4.      That, this system of Negotiable paper has bound all corporate entities (cities, municipalities, counties, etc.) of government together to the process/system of the (public) Commercial Venue of Commercial Law. This nationwide Commercial "bond" also altered the original (law) status of the Courts to nothing more than "administrative tribunals" merely administering the bankruptcy (private policy, using private law) of debt collections for the Creditors.

5.      That, by and through the bankruptcy, the UCC, and other acts, Congress in failing to uphold its constitutional duty to provide a lawful medium of exchange (i.e., money backed by silver and gold, or minted coin pursuant to Article I, Section 8, clause 5 of our national constitution) have by these various "Acts" created an abundance of this new type of fiat Money called Commercial Credit Money to circulate within the legislative democracy called the UNITED STATES... of which "they" are not bound by Constitutional law and limitation.

6.      That the Commercial Law Venue, compelled upon the people a forced "benefit" of "limited liability for the payment of debt" by the "use" of Federal Reserve Notes (debt instruments) wherein "your" debts are only discharged, (not paid) in the form of interest-



bearing negotiable instruments (Federal Reserve Notes). "There is a distinction between a debt discharged and one paid. When discharged the debt still exists, though divested of its character as a legal obligation…" Stanek v. White, 215 NWR 781 (1927). Federal Reserve Notes are only evidence of debt owed by the Federal Reserve Bank and Federal Reserve Notes are a commercial obligation or lien on the Federal Reserve Bank.

7.      That, since 1933, by the acts of the bankruptcy and the UCC, the law has been tainted, or "colored" (i.e. color of law) as if it were true, because the commercial law is operated in conjunction with the Negotiable Instruments Law, wherein the Federal Government by and through the Bankers, can/have declared that a "piece of paper" has and represents value.  Albeit that there is no substance (gold or silver) backing the "piece of paper," which the Federal Reserve Bank of Chicago in its publication "Modern Money Mechanics," page 3, has in fact declared the use of these debt instruments (Federal Reserve Notes) a "confidence" game.  The substance of the law (property) (i.e., gold and silver) has been removed from the public sector, like the substance that is the basis of money, accordingly, law like money becomes fiction, make-believe or simply "legal fiction."  Therefore, in the USA, by and through the UCC, all contracts, agreements, (implied or otherwise) applications, permits, etc. where the "colorable" consideration (Federal Reserve Notes) was passed in those "contract", etc., all such contracts are then also "colored" and are not genuine, for no lawful consideration (gold or silver) was paid or exchanged by either party to the contract to, by law, pass both the "possession and the property" to the lawful Buyer.  See Bouvier's Dictionary of Law, 1839, "TITLE", definition #5. "The lawful coin of the United States will pass the property along with the possession."

8.      That, today, all our "courts" sit as non-Constitutional, non-Article III Legislative Tribunals administering the bankruptcy through "their" private statutes which are in reality "commercial obligations" for the benefit or privilege of discharging your debts with the limited liability of the Federal Reserve "Colorable" Money Notes.

9.      That under the current "colorable" legal system, the de-facto (we just do it) legislature has created "colorable" rights called privileges, imposes duties, lays down rules of conduct, and the legislative tribunals declare the same as "rights."  These privileges are granted and given upon the people's voluntary act of asking "permission," then upon providing any colorable consideration (payment = discharge) the people then come under the administrative jurisdiction of Commercial law.

10.     That today in America everyone, all governments included, are statutory law merchants dealing in negotiable paper (instruments) under the UCC for the limited liability for the discharge of debts, wherein a debt remains (fraud) and nothing else! The so-called "judges" are operating only a commercial tribunal to administer their "corporate" regulations concerning all financial transactions…both voluntary and those compelled.

11.     That all debts are satisfied by one or both of two ways, a payment, or a promise to pay. Every payment is by substance, and every promise to pay is accomplished by a currency or paper that is technically known as a commercial lien or obligation. The satisfaction of the debt by providing substance is called "paying the debt." The satisfaction of the debt by a written or printed promise to pay the debt is called "discharging the debt."  All debts are "paid" by substance. All debts are only "discharged" by Currency, Pocket Money Notes, or other Commercial Liens or Obligations. (Negotiable Instruments, i.e., Commercial Lien/Asset, i.e., UCC-1 Asset).



12. That all paper money consists of notes which declare a debt or obligation, and which promise or demand payment. All such evidences of debt or obligations are technically known as Commercial Paper. Such "notes" includes currency, for example, Federal Reserve Notes, checks, drafts, conditional checks, notes of exchange (paper money/instruments between banks).

13. That a Federal Reserve Note is a commercial lien or obligation on the Federal Reserve Bank. A personal check is a commercial lien or obligation on the bank account of the maker of the check (cheque). A draft is a check (cheque) with a conditional agreement printed above the place of endorsement on the backside of the draft. A "note" of exchange is a commercial lien or obligation between the banks consisting of one bank demanding payment (discharge) form another bank. A personal check (cheque), while passing between banks, as a note of exchange, is a commercial lien or obligation.

14. That bank accounts are backed (supported) either by substance money or by paper money or by both. The substance money is called collateral. The paper money can be currency (for example, paper money notes), a loan of credit from the bank, or checks or other paper money such as, are commercial liens or obligations, received from other sources. Therefore the "property declared/pledged or claimed to secure the obligation and damages, is the collateral by and through Commercial Paper, establishes (creates) the credit called commercial credit money.

15. That the "people", men and women, operating in their private capacity, by and through the remedy provided in the Uniform Commercial Code at Article 9, and as a matter of right, secure their publicly created "strawman/US vessel" and utilize the Commercial Law Venue against their employees, the agents of government, their creations (corporations) and their officers (accountability = liability) by and through basic contract law through *__acceptance for value of their public offerings__*.

16. That these valid "UCC Contracts" are Commercial Paper and using a bill of exchange or documentary draft are enforceable for the consideration due, by having the fiduciary make presentment to the debtor, for the debtor's acceptance or dishonor.

17. That in the Commercial Venue, the Holder in Due Course, being a Secured Party and Creditor, is the Super-Plaintiff and no defenses can rise against him.

18. Under 18 USC 8, The term "*__obligation or other security of the United States__*" includes all bonds, certificates of indebtedness, national bank currency, Federal Reserve notes, Federal Reserve bank notes, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, issued under any Act of Congress, and canceled United States stamps.

19. **Under 12 USC 411, The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.(Dec. 23, 1913, Ch. 6, § 16 (par.), 38 Stat. 265; Jan. 30, 1934, Ch. 6, § 2(b)(1), 48 Stat. 337; Aug. 23, 1935, Ch. 614, title II, § 203(a), 49 Stat. 704.)**

END





LIBRARY OF CONGRESS

Office of Business Enterprises
Duplication Services Section

THIS IS TO CERTIFY that the collections of the Library of Congress contain a publication entitled **THE STATUTES AT LARGE OF THE UNITED STATES OF AMERICA,** and that the attached photocopies (from PART 1. VOL. XLVIII) - the title page and pages 112 and 113 on which appears H.J. Res. 192. a JOINT RESOLUTION To assure uniform value to the coins and currencies of the United States. June 5. 1933 - are a true representation from that work.

IN WITNESS WHEREOF. the seal of the Library of Congress is affixed hereto on May 2. 2012.

Gregory T. Cooper
Duplication Services. Section Head
Office of Business Enterprises
Library of Congress

101 Independence Avenue, SE Washington, DC 20540-4917 Tel 202.707.5650 www.loc.gov; duplicationservices@loc.gov



# THE

# STATUTES AT LARGE

## OF THE

## UNITED STATES OF AMERICA

### FROM

### MARCH 1933 to JUNE 1934

CONCURRENT RESOLUTIONS
RECENT TREATIES AND CONVENTIONS, EXECUTIVE PROCLAMATIONS
AND AGREEMENTS, TWENTY-FIRST AMENDMENT
TO THE CONSTITUTION

EDITED, PRINTED, AND PUBLISHED BY AUTHORITY OF CONGRESS
UNDER THE DIRECTION OF THE SECRETARY OF STATE

## VOL. XLVIII

### IN TWO PARTS

PART 1—Public Acts and Resolutions.

PART 2—Private Acts and Resolutions, Concurrent Resolutions
Treaties and Conventions, Executive Proclamations
and Agreements, Twenty-first Amendment to the
Constitution.

## PART 1

OS 330 · 4

UNITED STATES VOO3

GOVERNMENT PRINTING OFFICE
WASHINGTON : 1934

For sale by the Superintendent of Documents, Washington, D.C. · · · · · · · · · · · · Price $4.00 (Buckram)



## [CHAPTER 46.]

### AN ACT

*Authorizing a per capita payment of $100 to the members of the Menominee Tribe of Indians of Wisconsin from funds on deposit to their credit in the Treasury of the United States.*

[H.R. 4404.]
[Pub. Res., No. 23.]
June 3, 1933.
Menominee Indians of Wisconsin.
Per capita payments to, from tribal funds.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Secretary of the Interior be, and he is hereby, authorized to withdraw from the fund in the Treasury of the United States on deposit to the credit of the Menominee Indians in the State of Wisconsin a sufficient sum to make therefrom a per capita payment or distribution of $100, in three installments, $50 immediately upon passage of this Act, $25 on or about October 15, 1933, and $25 on or about January 15, 1934, to each of the living members on the tribal roll of the Menominee Tribe of Indians of the State of Wisconsin, under such rules and regulations as the said Secretary may prescribe.

Approved, June 3, 1933.

## [CHAPTER 47.]

### JOINT RESOLUTION

*Authorizing the Secretary of War to receive for instruction at the United States Military Academy at West Point, Poshang Yen, a citizen of China.*

[Pub. Res., No. 6.]
[S.J.Res. 48.]
June 3, 1933.
Poshang Yen, a citizen of China.
Admitted to Mil-itary Academy.
Conditions.
No Federal expense.
Oath and service waived.
R.S., secs. 1320, 1321, p. 237.
Existing resolution repealed.
Vol. 47, p. 1546.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Secretary of War be, and he is hereby, authorized to permit Poshang Yen to receive instruction at the United States Military Academy at West Point, for the course beginning not later than July 1, 1933: *Provided,* That no expense shall be caused to the United States thereby, and that Poshang Yen shall agree to comply with all regulations for the police and discipline of the Academy, to be studious, and to give his utmost efforts to accomplish the courses in the various departments of instruction, and that said Poshang Yen shall not be admitted to the Academy until he shall have passed the mental and physical examinations prescribed for candidates from the United States, and that he shall be immediately withdrawn if deficient in studies or in conduct and so recommended by the Academic Board: *Provided further,* That in the case of said Poshang Yen the provisions of sections 1320 and 1321 of the Revised Statutes shall be suspended: *Provided further,* That S.J.Res. 179, approved March 3, 1933, be, and the same is hereby, repealed.

Approved, June 5, 1933.

## [CHAPTER 48.]

### JOINT RESOLUTION

*To assure uniform value to the coins and currencies of the United States.*

[H.J.Res. 192.]
[Pub. Res., No. 10.]
June 5, 1933.
Uniform value of coins and currencies.
Treasuries.

Whereas the holding of or dealing in gold affect the public interest; and are therefore subject to proper regulation and restriction; and

Whereas the existing emergency has disclosed that provisions of obligations which purport to give the obligee a right to require payment in gold or a particular kind of coin or currency of the United States, or in an amount in money of the United States measured thereby, obstruct the power of the Congress to regulate the value of the money of the United States, and are inconsistent with the declared policy of the Congress to maintain at all times the equal power of every dollar, coined or issued by the United States, in the markets and in the payment of debts: Now, there-fore, be it



73d CONGRESS.  SESS. I.  CHS. 48, 49.  JUNE 5, 6, 1933.

**Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,** That (a) every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.

(b) As used in this resolution, the term "obligation" means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term "coin or currency" means coin or currency of the United States, including Federal Reserve notes and national banking associations.

Sec. 2. The last sentence of paragraph (1) of subsection (b) of section 43 of the Act entitled "An Act to relieve the existing national economic emergency by increasing agricultural purchasing power, to raise revenue for extraordinary expenses incurred by reason of such emergency, to provide emergency relief with respect to agricultural indebtedness, to provide for the orderly liquidation of joint-stock land banks, and for other purposes", approved May 12, 1933, is amended to read as follows:

"All coins and currencies of the United States (including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations) heretofore or hereafter coined or issued, shall be legal tender for all debts, public and private, public charges, taxes, duties, and dues, except that gold coins, when below the standard weight and limit of tolerance provided by law for the single piece, shall be legal tender only at valuation in proportion to their actual weight."

Approved, June 5, 1933, 4:40 p.m.

[CHAPTER 49.]

AN ACT

To provide for the establishment of a national employment system and for cooperation with the States in the promotion of such system, and for other purposes.

**Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,** That (a) In order to promote the establishment and maintenance of a national system of public employment offices there is hereby created in the Department of Labor a bureau to be known as the United States Employment Service, at the head of which shall be a director. The director shall be appointed by the President, by and with the advice and consent of the Senate, and shall receive a salary at the rate of $8,800 per annum.

(b) Upon the expiration of three months after the enactment of this Act the employment service now existing in the Department of Labor shall be abolished; and all records, files, and property (including office equipment) of the existing employment service

113

68887°—34——8



EFFECTIVE DATE OF 1980 AMENDMENT

Amendment by Pub. L. 96–417 applicable with respect to civil actions commenced on or after the 90th day after Nov. 1, 1980, see section 701(c)(1)(B) of Pub. L. 96–417, set out as a note under section 251 of this title.

## § 1357. Injuries under Federal laws

The district courts shall have original jurisdiction of any civil action commenced by any person to recover damages for any injury to his person or property on account of any act done by him, under any Act of Congress, for the protection or collection of any of the revenues, or to enforce the right of citizens of the United States to vote in any State.

(June 25, 1948, ch. 646, 62 Stat. 934.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 41(11) (Mar. 3, 1911, ch. 231, § 24, par. 11, 36 Stat. 1092.)

Words "any civil action" were substituted for "all suits," in view of Rule 2 of the Federal Rules of Civil Procedure.

Minor changes were made in phraseology.

## § 1358. Eminent domain

The district courts shall have original jurisdiction of all proceedings to condemn real estate for the use of the United States or its departments or agencies.

(June 25, 1948, ch. 646, 62 Stat. 935.)

HISTORICAL AND REVISION NOTES

Based on section 257 of title 40, U.S.C., 1940 ed., Public Buildings, Property, and Works (Aug. 1, 1888, ch. 728, § 1, 25 Stat. 357; Mar. 3, 1911, ch. 231, § 291, 36 Stat. 1167).

The venue provisions of section 257 of title 40, U.S.C., 1940 ed., are incorporated in section 1403 of this title.

Other provisions of section 257 of title 40, U.S.C., 1940 ed., are retained in said title 40.

Changes were made in phraseology.

## § 1359. Parties collusively joined or made

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

(June 25, 1948, ch. 646, 62 Stat. 935.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed. §§ 41(1) and 80 (Mar. 3, 1911, ch. 231, § 24(1), 37, 36 Stat. 1091, 1098; May 14, 1934, ch. 283, § 1, 48 Stat. 775; Aug. 21, 1937, ch. 726, § 1, 50 Stat. 738; Apr. 20, 1940, ch. 117, 54 Stat. 143).

Other provisions of section 41(1) of title 28, U.S.C., 1940 ed., are incorporated in sections 1331, 1332, 1341, 1342, 1345, and 1354 of this title.

Provisions of section 80 of title 28, U.S.C., 1940 ed., for payment of costs upon dismissal of an action for lack of jurisdiction are incorporated in section 1919 of this title. Other provisions of said section 80 appear in section 1447 of this title.

Provisions of section 80 of title 28, U.S.C., 1940 ed., for dismissal of an action not really and substantially involving a dispute or controversy within the jurisdiction of a district court, were omitted as unnecessary. Any court will dismiss a case not within its jurisdiction when its attention is drawn to the fact, or even on its own motion.

The assignee clause in section 41(1) of title 28, U.S.C., 1940 ed., "is a jumble of legislative jargon." (For further references to the consequences of "its obscure

phraseology." see, 35 Ill. Law Rev., January 1941, pp. 569–571.)

The revised section changes this clause by confining its application to cases wherein the assignment is improperly or collusively made to invoke jurisdiction. Furthermore, the difficulty of applying the original clause is overcome and the original purpose of such clause is better served by substantially following section 80 of title 28, U.S.C., 1940 ed.

The assignee clause was incorporated in the original Judiciary Act of 1789. Such section 80 was enacted in 1875. The history of the assignee clause "shows clearly that its purpose and effect, at the time of its enactment were to prevent the conferring of jurisdiction on the Federal courts, on grounds of diversity of citizenship, by assignment, in cases where it would not otherwise exist." (Sowell v. Federal Reserve Bank, 1925, 45 S.Ct. 528, 529, 268 U.S. 449, 453, 69 L.Ed. 1041, 1043.) Thus the purpose of the assignee clause was to prevent the manufacture of Federal jurisdiction by the device of assignment. It achieves this purpose only partially. For example, the assignee clause excepts two types of choses in action from its coverage: (1) Foreign bill of exchange; and (2) corporate bearer paper. But this does not prevent the use of assignment of these choses in action to create the necessary diversity or alienage for jurisdictional purposes. Such section 80 does, however, prevent that. (See Bullard v. City of Cisco, 1933, 54 S.Ct. 177, 290 U.S. 179, 78 L.Ed. 254, 93 A.L.R. 141.) Its coverage against collusive jurisdiction is unlimited, and its approach is direct. The assignee clause, on the other hand, prevents the bona fide assignee of a chose in action within its terms from resorting to the Federal courts unless there is jurisdiction to support the assignee-plaintiff's case and a showing that there would have been jurisdiction if the assignor had brought the action in lieu of the assignee-plaintiff. Since the assignee clause deals with the bona fide assignee, there has been much litigation to determine the assignments which should or should not be within the purview of the clause. Thus the courts have thought it advisable to limit the term "chose in action" and exclude from its scope (1) an implied in law duty or promise, and (2) a transfer of a property interest; and to exclude an assignment by operation of law from the coverage of the clause. Intermediate assignments and reassignment also give difficulty.

## § 1360. State civil jurisdiction in actions to which Indians are parties

(a) Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State:

| State of | Indian country affected |
| --- | --- |
| Alaska | All Indian country within the State. |
| California | All Indian country within the State. |
| Minnesota | All Indian country within the State, except the Red Lake Reservation. |
| Nebraska | All Indian country within the State. |
| Oregon | All Indian country within the State, except the Warm Springs Reservation. |
| Wisconsin | All Indian country within the State. |



(b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto: or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.

(c) Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.

(Added Aug. 15, 1953, ch. 505, §4, 67 Stat. 589; amended Aug. 24, 1954, ch. 910, §2, 68 Stat. 795; Pub. L. 85-615, §2, Aug. 8, 1958. 72 Stat. 545; Pub. L. 95-598, title II, §239, Nov. 6, 1978, 92 Stat. 2668; Pub. L. 98-353, title I, §110, July 10, 1984, 98 Stat. 342.)

AMENDMENTS

1984—Subsec. (a). Pub. L. 98-353 struck out "or Territories" after "Each of the States", struck out "or Territory" after "State" in 5 places, and substituted "within the State" for "within the Territory" in item relating to Alaska.

1978—Subsec. (a). Pub. L. 95-598 directed the amendment of subsec. (a) by substituting in the item relating to Alaska "within the State" for "within the Territory", which amendment did not become effective pursuant to section 402(b) of Pub. L. 95-598, as amended, set out as an Effective Date note preceding section 101 of Title 11, Bankruptcy.

1958—Subsec. (a). Pub. L. 85-615 gave Alaska jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in all Indian country within the Territory of Alaska.

1954—Subsec. (a). Act Aug. 24, 1954, brought the Menominee Tribe within the provisions of this section.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98-353 effective July 10, 1984, see section 122(a) of Pub. L. 98-353, set out as an Effective Date note under section 151 of this title.

ADMISSION OF ALASKA AS STATE

Admission of Alaska into the Union was accomplished Jan. 3, 1959, on issuance of Proc. No. 3269, Jan. 3, 1959, 24 F.R. 81, 73 Stat. c16, as required by sections 1 and 8(c) of Pub. L. 85-508, July 7, 1958. 72 Stat. 339, set out as notes preceding section 21 of Title 48, Territories and Insular Possessions.

AMENDMENT OF STATE CONSTITUTIONS TO REMOVE LEGAL IMPEDIMENT; EFFECTIVE DATE

Section 6 of act Aug. 15, 1953, provided that: "Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act [adding this section and section 1162 of Title 18, Crimes and Criminal Procedure]: Provided, That the provisions of this Act shall not become effective with respect to

such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes as the case may be."

CONSENT OF UNITED STATES TO OTHER STATES TO ASSUME JURISDICTION

Act Aug. 15, 1953, ch. 505, §7, 67 Stat. 590, which gave consent of the United States to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this section and section 1162 of Title 18, Crimes and Criminal Procedure, to assume jurisdiction at such time and in such manner as the people of the State shall, by legislative action, obligate and bind the State to assumption thereof, was repealed by section 403(b) of Pub. L. 90-284, title IV, Apr. 11, 1968, 82 Stat. 79, such repeal not to affect any cession of jurisdiction made pursuant to such section prior to its repeal.

Retrocession of jurisdiction by State acquired by State pursuant to section 7 of Act Aug. 15, 1953, prior to its repeal, see section 1323 of Title 25, Indians.

§ 1361. Action to compel an officer of the United States to perform his duty

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

(Added Pub. L. 87-748, §1(a), Oct. 5, 1962, 76 Stat. 744.)

§ 1362. Indian tribes

The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

(Added Pub. L. 89-635, §1, Oct. 10, 1966, 80 Stat. 880.)

§ 1363. Jurors' employment rights

The district courts shall have original jurisdiction of any civil action brought for the protection of jurors' employment under section 1875 of this title.

(Added Pub. L. 95-572, §6(b)(1), Nov. 2, 1978, 92 Stat. 2457.)

PRIOR PROVISIONS

A prior section 1363 was renumbered section 1366 of this title.

EFFECTIVE DATE

Section 7 of Pub. L. 95-572 provided that:

"(a) Except as provided in subsection (b) of this section, the amendments made by this Act [enacting this section and section 1875, renumbering section 1363, relating to construction of references to laws of the United States or Acts of Congress, as section 1364, and amending sections 1863, 1865, 1866, 1869, and 1871 of this title] shall apply with respect to any grand or petit juror summoned for service or actually serving on or after the date of enactment of this Act [Nov. 2, 1978].

"(b) The amendment made by section 5 of this Act [amending section 1871 of this title] shall apply with respect to any grand or petit juror serving on or after the sixtieth day following the date of enactment of this Act [Nov. 2, 1978]."



http://www.treasury.gov/resource-center/faqs/Currency/Pages/legal-tender.aspx

Resource Center
Legal Tender Status

I thought that United States currency was legal tender for all debts. Some businesses or
governmental agencies say that they will only accept checks, money orders or credit
cards as payment, and others will only accept currency notes in denominations of $20 or
smaller. Isn't this illegal?
The pertinent portion of law that applies to your question is the Coinage Act of 1965,
specifically Section 31 U.S.C. 5103, entitled "Legal tender," which states: "United States
coins and currency (including Federal reserve notes and circulating notes of Federal
reserve banks and national banks) are legal tender for all debts, public charges, taxes, and
dues."
This statute means that all United States money as identified above are a valid and legal
offer of payment for debts when tendered to a creditor. There is, however, no Federal
statute mandating that a private business, a person or an organization must accept
currency or coins as for payment for goods and/or services. Private businesses are free to
develop their own policies on whether or not to accept cash unless there is a State law
which says otherwise. For example, a bus line may prohibit payment of fares in pennies
or dollar bills. In addition, movie theaters, convenience stores and gas stations may refuse
to accept large denomination currency (usually notes above $20) as a matter of policy.

What are Federal Reserve notes and how are they different from United States notes?
Federal Reserve notes are legal tender currency notes. The twelve Federal Reserve Banks
issue them into circulation pursuant to the Federal Reserve Act of 1913. A commercial
bank belonging to the Federal Reserve System can obtain Federal Reserve notes from the
Federal Reserve Bank in its district whenever it wishes. It must pay for them in full,
dollar for dollar, by drawing down its account with its district Federal Reserve Bank.

http://www.treasury.gov/resource-center/faqs/Currency/Pages/legal-tender.aspx

Federal Reserve Banks obtain the notes from our Bureau of Engraving and Printing
(BEP). It pays the BEP for the cost of producing the notes, which then become liabilities
of the Federal Reserve Banks, and obligations of the United States Government.
Congress has specified that a Federal Reserve Bank must hold collateral equal in value to
the Federal Reserve notes that the Bank receives. This collateral is chiefly gold
certificates and United States securities. This provides backing for the note issue. The
idea was that if the Congress dissolved the Federal Reserve System, the United States
would take over the notes (liabilities). This would meet the requirements of Section 411,
but the government would also take over the assets, which would be of equal value.
Federal Reserve notes represent a first lien on all the assets of the Federal Reserve Banks,
and on the collateral specifically held against them.
Federal Reserve notes are not redeemable in gold, silver or any other commodity, and
receive no backing by anything This has been the case since 1933. The notes have no



value for themselves, but for what they will buy. In another sense, because they are legal tender, Federal Reserve notes are "backed" by all the goods and services in the economy.

What are United States Notes and how are they different from Federal Reserve notes? United States Notes (characterized by a red seal and serial number) were the first national currency, authorized by the Legal Tender Act of 1862 and began circulating during the Civil War. The Treasury Department issued these notes directly into circulation, and they are obligations of the United States Government. The issuance of United States Notes is subject to limitations established by Congress. It established a statutory limitation of $300 million on the amount of United States Notes authorized to be outstanding and in circulation. While this was a significant figure in Civil War days, it is now a very small fraction of the total currency in circulation in the United States.
Both United States Notes and Federal Reserve Notes are parts of our national currency and both are legal tender. They circulate as money in the same way. However, the issuing authority for them comes from different statutes. United States Notes were redeemable in gold until 1933, when the United States abandoned the gold standard. Since then, both currencies have served essentially the same purpose, and have had the same value. Because United States Notes serve no function that is not already adequately served by Federal Reserve Notes, their issuance was discontinued, and none have been placed in to circulation since January 21, 1971.

http://www.treasury.gov/resource-center/faqs/Currency/Pages/legal-tender.aspx

The Federal Reserve Act of 1913 authorized the production and circulation of Federal Reserve notes. Although the Bureau of Engraving and Printing (BEP) prints these notes, they move into circulation through the Federal Reserve System. They are obligations of both the Federal Reserve System and the United States Government. On Federal Reserve notes, the seals and serial numbers appear in green.
United States notes serve no function that is not already adequately served by Federal Reserve notes. As a result, the Treasury Department stopped issuing United States notes, and none have been placed into circulation since January 21, 1971.



# UNDER EXECUTIVE ORDER OF THE PRESIDENT

### issued April 5, 1933

## all persons are required to deliver

# ON OR BEFORE MAY 1, 1933

## all GOLD COIN, GOLD BULLION, AND GOLD CERTIFICATES now owned by them to a Federal Reserve Bank, branch or agency, or to any member bank of the Federal Reserve System.

## Executive Order

**FORBIDDING THE HOARDING OF GOLD COIN, GOLD BULLION AND GOLD CERTIFICATES.**

By virtue of the authority vested in me by Section 5(b) of the Act of October 6, 1917, as amended by Section 2 of the Act of March 9, 1933, entitled "An Act to provide relief in the existing national emergency in banking, and for other purposes", in which amendatory Act Congress declared that a serious emergency exists, I, Franklin D. Roosevelt, President of the United States of America, do declare that said national emergency still continues to exist and pursuant to said section do hereby prohibit the hoarding of gold coin, gold bullion, and gold certificates within the continental United States by individuals, partnerships, associations and corporations and hereby prescribe the following regulations for carrying out the purposes of this order:

Section 1. For the purposes of this regulation, the term "hoarding" means the withdrawal and withholding of gold coin, gold bullion or gold certificates from the recognized and customary channels of trade. The term "person" means any individual, partnership, association or corporation.

Section 2. All persons are hereby required to deliver on or before May 1, 1933, to a Federal reserve bank or a branch or agency thereof or to any member bank of the Federal Reserve System all gold coin, gold bullion and gold certificates now owned by them or coming into their ownership on or before April 28, 1933, except the following:

(a) Such amount of gold as may be required for legitimate and customary use in industry, profession or art within a reasonable time, including gold prior to refining and stocks of gold in reasonable amounts for the usual trade requirements of owners mining and refining such gold.

(b) Gold coin and gold certificates in an amount not exceeding in the aggregate $100.00 belonging to any one person; and gold coins having a recognized special value to collectors of rare and unusual coins.

(c) Gold coin and bullion earmarked or held in trust for a recognized foreign government or foreign central bank or the Bank for International Settlements.

(d) Gold coin and bullion licensed for other proper transactions (not involving hoarding) including gold coin and bullion imported for reexport or held pending action on applications for export licenses.

Section 3. Until otherwise ordered any person becoming the owner of any gold coin, gold bullion, or gold certificates after April 28, 1933, shall, within three days after receipt thereof, deliver the same in the manner prescribed in Section 2; unless such gold coin, gold bullion or gold certificates are held for any of the purposes specified in paragraphs (a), (b) or (c) of Section 2; or unless such gold coin or gold bullion is held for purposes specified in paragraph (d) of Section 2 and the person holding it is, with respect to such gold coin or bullion, a licensee or applicant for license pending action thereon.

Section 4. Upon receipt of gold coin, gold bullion or gold certificates delivered to it in accordance with Sections 2 or 3, the Federal reserve bank or member bank will pay therefor an equivalent amount of any other form of coin or currency coined or issued under the laws of the United States.

Section 5. Member bank[s] shall deliver all gold coin, gold bullion and gold certificates owned or received by them (other than as exempted under the provisions of Section 2) to the Federal reserve banks of their respective districts and receive credit or payment therefor.

Section 6. The Secretary of the Treasury, out of the sum made available to the President by Section 501 of the Act of March 9, 1933, will in all proper cases pay the reasonable costs of transportation of gold coin, gold bullion or gold certificates delivered to a member bank or Federal reserve bank in accordance with Sections 2, 3, or 5 hereof, including the cost of insurance, protection, and such other incidental costs as may be necessary, upon production of satisfactory evidence of such costs. Voucher forms for this purpose may be procured from Federal reserve banks.

Section 7. In cases where the delivery of gold coin, gold bullion or gold certificates by the owners thereof within the time set forth above will involve extraordinary hardship or difficulty, the Secretary of the Treasury may, in his discretion, extend the time within which such delivery must be made. Applications for such extensions must be made in writing under oath, addressed to the Secretary of the Treasury and filed with a Federal reserve bank. Each application must state the date to which the extension is desired, the amount and location of the gold coin, gold bullion and gold certificates in respect of which such application is made and the facts showing extension to be necessary to avoid extraordinary hardship or difficulty.

Section 8. The Secretary of the Treasury is hereby authorized and empowered to issue such further regulations as he may deem necessary to carry out the purposes of this order and to issue licenses thereunder, through such officers or agencies as he may designate, including licenses permitting the Federal reserve banks and member banks of the Federal Reserve System, in return for an equivalent amount of other coin, currency or credit, to deliver, earmark or hold in trust gold coin and bullion to or for persons showing the need for the same for any of the purposes specified in paragraphs (a), (c) and (d) of Section 2 of these regulations.

Section 9. Whoever wilfully violates any provision of this Executive Order or of these regulations or of any rule, regulation or license issued thereunder may be fined not more than $10,000, or, if a natural person, may be imprisoned for not more than ten years, or both; and any officer, director, or agent of any corporation who knowingly participates in any such violation may be punished by a like fine, imprisonment, or both

This order and these regulations may be modified or revoked at any time.

FRANKLIN D ROOSEVELT

THE WHITE HOUSE
*April 5, 1933.*

### For Further Information Consult Your Local Bank

**GOLD CERTIFICATES** may be identified by the words "GOLD CERTIFICATE" appearing thereon. The serial number and the Treasury seal on the face of a GOLD CERTIFICATE are printed in YELLOW. Be careful not to confuse GOLD CERTIFICATES with other issues which are redeemable in gold but which are <u>not</u> GOLD CERTIFICATES. Federal Reserve Notes and United States Notes are "redeemable in gold" but are <u>not</u> "GOLD CERTIFICATES" and are <u>not</u> required to be surrendered

### Special attention is directed to the exceptions allowed under Section 2 of the Executive Order

## CRIMINAL PENALTIES FOR VIOLATION OF EXECUTIVE ORDER
## $10,000 fine or 10 years imprisonment, or both, as provided in Section 9 of the order

Secretary of the Treasury.



# EXECUTIVE ORDER COPY FROM OTHER SIDE

### FORBIDDING THE HOARDING OF GOLD COIN, GOLD BULLION AND GOLD CERTIFICATES

By virtue of the authority vested in me by Section 5 (b) of the Act of October 6, 1917, as amended by Section 2 of the Act of March 9, 1933, entitled "An act to provide relief in the existing national emergency in banking, and for other purposes", in which amendatory Act Congress declared that a serious emergency exists I, Franklin D. Roosevelt, President of the United States of America, do declare that said national emergency still continues to exist and pursuant to said section do hereby prohibit the hoarding of gold coin, gold bullion, and gold certificates within the continental United States by individuals, partnerships, associations and corporations and hereby prescribe the following regulations for carrying out the purposes of this order.

Section 1  For the purposes of this regulation the term "hoarding" means the withdrawal and withholding of gold coin, gold bullion or gold certificates from the recognized and customary channels of trade. The term "person" means any individual, partnership, association or corporation.

Section 2  All persons are hereby required to deliver on or before May 1, 1933, to a Federal reserve bank or branch or agency thereof or to any member bank of the Federal Reserve System all gold coin, gold bullion and gold certificates now owned by them or coming into their ownership on or before April 28, 1933, except the following

(a) Such amount of gold as may be required for legitimate and customary use in industry, profession or art within a reasonable time including gold prior to refining and stocks of gold in reasonable amounts for the usual trade requirements of owners mining and refining such gold

(b) Gold coin and gold certificates in an amount not exceeding in the aggregate $100.00 belonging to any one person; and gold coins having a recognized special value to collectors of rare and unusual coins

(c) Gold coin and bullion earmarked or held in trust for a recognized foreign government or foreign central bank or the Bank for International Settlements

(d) Gold coin and bullion licensed for other proper transactions (not involving hoarding) including gold coin and bullion imported for re-export or held pending action on application for export licenses

Section 3  Until otherwise ordered any person becoming the owner of any gold coin, gold bullion or gold certificates after April 28, 1933, shall, within three days after receipt thereof, deliver same in the manner prescribed in Section 2; unless such gold coin, gold bullion or gold certificates are held in any of the purposes specified in paragraph (a), (b) or (c) of Section 2; or unless such gold coin, or gold bullion is held for purposes specified in paragraph (d) or Section 2 and the person holding it is, with respect to such gold coin or bullion, a licensee or applicant for license pending action thereupon.

Section 4  Upon receipt of gold coin, gold bullion or gold certificates delivered to it in accordance with Section 2 or 3, the Federal reserve bank or member bank will pay therefore an equivalent amount of any form of coin or currency coined or issued under the laws of the United States

Section 5  Member banks shall deliver all gold coin, gold bullion and gold certificates owned or received by them (other than as exempted under the provision of Section 2) to the Federal reserve banks of their respective districts and receive credit or payment therefore

Section 6  The Secretary of the Treasury, out of the sum made available to the President by Section 501 of the Act of March 9, 1933, will in all proper cases pay the reasonable cost of transportation of gold coin, gold bullion or gold certificates delivered to a member bank or Federal reserve bank in accordance with Section 2, 3, or 5 hereof, including the cost of insurance protection, and such other incidental costs as may be necessary, upon production of satisfactory evidence of such costs. Voucher forms for this purpose may be procured from the Federal reserve banks.

Section 7  In cases where the delivery of gold coin, gold bullion or gold certificates by the owners thereof within the time set forth above will involve extraordinary hardship or difficulty, the Secretary of the Treasury may, in his discretion, extend the time within which such delivery must be made. Applications for such extension must be made in writing under oath addressed to the Secretary of the Treasury and filed with a Federal reserve bank. Each application must state the date to which the extension is desired, the amount and location of the gold coin, gold bullion and gold certificates in respect of which such application is made and the facts showing extension to be necessary to avoid extraordinary hardship or difficulty.

Section 8  The Secretary of the Treasury is hereby authorized and empowered to issue such further regulations as he may deem necessary to carry out the purposes of this order and to issue licenses thereunder, through such offices or agencies as he may designate, including licenses permitting the Federal reserve banks and member banks of the Federal Reserve System, in return for an equivalent amount of other coin, currency or credit, to deliver, earmark or hold in trust gold coin and bullion to or for persons showing the need for the same for any of the purposes specified in paragraphs (a), (c) and (d) of Section 2 of these regulations

Section 9  Whoever willfully violates any provision of this Executive Order or of these regulations or of any rule, regulation or license issued thereunder may be fined not more than $10,000 or if a natural person  may be imprisoned for not more than ten years, or both; and any officer, director or agency of any corporation who knowingly participates in any such violation may be punished by a like fine  imprisonment, or both.

This order and these regulations may be modified or revoked at any time.

                                     FRANKLIN D. ROOSEVELT
THE WHITE HOUSE
        April 5  1933

