# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HERB CHAMBERS 1188, Inc., d/b/a ) HERB CHAMBERS JAGUAR ) LAND ROVER BOSTON, ) | |

_____ )
HERB CHAMBERS 1188, Inc., d/b/a )
HERB CHAMBERS JAGUAR )
LAND ROVER BOSTON, )
       )
      Plaintiff, )
       )     Civil Action No. 1:22-cv-10501-WGY
v. )
       )
DERIC MARCELL THOMPSON, )
       )
      Defendant. )
_____ )

## MOTION FOR RULE 11 SANCTIONS

Plaintiff Herb Chambers 1188, Inc. ("Chambers") moves pursuant to Federal Rules of

Civil Procedure rule 11 for an order imposing sanctions on defendant for gross

misrepresentations of fact and law which were submitted for an improper purpose and for

numerous frivolous filings which have expended valuable Court time and resources.

## I.    PROCEDURAL HISTORY

Chambers filed its Complaint in this case on April 5, 2022, along with a Motion for a

Preliminary Injunction to prevent the defendant from filing additional unsupported liens against

Chambers or from acting on previously filed fraudulent liens, from pursuing related threatened

copyright/trademark claims regarding the use of defendant's name, and from acting on a

fraudulently filed IRS 1099C. In response, defendant filed an Answer and Counterclaims against

Chambers, as well as filing documents titled "Acceptance for Value and Return for Value of

Plaintiff's Presentment", "Mandatory Judicial Notice", "Lawful Claim of Title, Living Will,

Declaration of Status, Appointment of Trustees, and Standing Orders for the Same", and

"Opposition to Plaintiff's Motion for Preliminary Injunction". Defendant then filed a Demand

For Writ of Mandamus alleging that the clerk had declined to file one of the papers previously

included in defendant's package of filings served on the Court.

## II.   ARGUMENT

### A.   <u>Standard of Review</u>

"'One of the central purposes of [Fed.R.Civ.P.] Rule 11 is to protect parties and the court

from wasteful, frivolous, and harassing lawsuits, and the rule provides for sanctions as a

deterrent to such abusive conduct.'  Under Rule 11, therefore, this court may

impose sanctions on an unrepresented party if he or she submits a pleading for an improper

purpose or if the claims within it are frivolous or malicious. *See* Fed.R.Civ.P. Rule 11(b)(1),

(2); <u>Eagle Eye Fishing Corp. v. Dep't of Commerce</u>, 20 F.3d 503, 506 (1st Cir.1994) (holding

that proceeding *pro* se 'is not a license not to comply with the relevant rules of procedural and

substantive law'). 'The imposition of a Rule 11 sanction usually serves two main purposes:

deterrence and compensation....[and][e]ncompassed within these objectives are several related

subsidiary goals, e.g., punishing litigation abuse and facilitating case management.'" <u>Azubuko v.</u>

<u>MBNA Am. Bank</u>, 396 F. Supp. 2d 1, 7 (D. Mass. 2005), <u>aff'd,</u> 179 F. App'x 66 (1st Cir. 2006)

citing <u>Jones v. Social Security Admin.</u>, 2004 WL 2915290 at *3 (D.Mass. Dec. 14, 2004);

<u>Navarro–Ayala v. Nunez</u>, 968 F.2d 1421, 1426 (1st Cir.1992).

Regarding factual allegations, rule 11(b) "prohibits ... the assertion of factual allegations

without 'evidentiary support' or the 'likely' prospect of such support." <u>Arkansas Tchr. Ret. Sys.</u>

<u>v. State St. Corp.</u>, 25 F.4th 55, 64 (1st Cir. 2022) citing <u>Young v. City of Providence ex rel.</u>

<u>Napolitano</u>, 404 F.3d 33, 39 (1st Cir. 2005). Though a party who misrepresents facts must "at the

very least, be culpably careless to commit a violation." <u>Id</u>.

Regarding legal allegations, "[a] claim is frivolous when it is 'either not well-grounded in

fact or unwarranted by existing law or a good faith argument for an extension, modification or

reversal of existing law.'  In determining whether a lawyer has offended Rule 11, a court

generally must use an objective standard, asking what is reasonable under the

circumstances. Factors to be considered include 'the complexity of the subject matter, the party's

familiarity with it, the time available for inquiry, and the ease (or difficulty) of access to the

requisite information.'" In re Ames, 993 F.3d 27, 34–35 (1st Cir. 2021)(internal citations

omitted) citing Cruz v. Savage, 896 F.2d 626, 631-2 (1st Cir. 1990) and Navarro-

Ayala v. Nunez, 968 F.2d 1421, 1425 (1st Cir. 1992).

 Rule 11 provides that sanctions issued may include "monetary sanctions comprised of

'part or all of the reasonable attorney's fees and other expenses directly resulting from the

violation.' While the purpose of sanctions is not strictly to compensate a wronged party for the

litigation expenses it incurs in defending against the wrong, *see Alston v. Town of Brookline*,

2019 WL 117605, at *1 (D. Mass. Jan. 7, 2019), the offender's knowledge that he may be held to

pay for the damages he causes by acting heedlessly is a useful deterrent." Saninocencio v. Pierce

& Mandell, PC, No. CV 21-11455, 2022 WL 425571, at *1 (D. Mass. Feb. 11, 2022) citing

Fed.R.Civ.P. 11(c)(4).

 Rule 11 also "prohibits filings made with 'any improper purpose,' the offering of

'frivolous arguments, and the assertion of factual allegations without 'evidentiary support' or the

'likely' prospect of such support." Roger Edwards, LLC v. Fiddes & Son Ltd., 437 F.3d 140, 142

(1st Cir. 2006) citing Young v. City of Providence ex rel. Napolitano, 404 F.3d 33, 39 (1st

Cir.2005).

### B.  Defendant's Excessive Filings are a Waste of Court Resources, are Submitted in Bad Faith, and he Deserves to be Sanctioned Accordingly.

 Defendant's filings are unintelligible in meaning or substance. They do not comport with

the letter or spirit of rule 11.

Defendant's Answer contains a blanket denial to 72 paragraphs of Chambers' Complaint, specifically responding that "Answering paragraphs Twelve (12) through Eighty-Four (84), Alleged Defendant states there is insufficient knowledge, misrepresentation of facts and omission of pertinent information by Plaintiff to form the truth of the allegations, and therefore denies them." (See Def's Ans. ¶5). Many of these paragraphs are straightforward factual allegations including replications of text message conversations with the defendant, email and mailing exchanges, and the content of the different versions of the Motor Vehicle Purchase Contract in question. See Compl. ¶¶12- 15, ¶17-41. Defendant's blanket denial or lack of knowledge of the bulk of the Complaint does not constitute a proper answer nor is it made in good faith. Defendant has no evidentiary support to deny these statements nor to allege that he has insufficient knowledge to know whether they are true, as these are text and email conversations in which he participated.

Rule 11(b) states that "[b]y presenting to the court a pleading . . . whether by signing, filing, submitting or later advocating it – an . . . unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b). Several courts applying this federal rule have held that "an answer asserting want of knowledge sufficient to form a belief as to the truth of facts alleged in a complaint does not serve as a denial if the assertion of ignorance is obviously a sham. In such circumstances the facts alleged in the complaint stand admitted." Harvey Aluminum, Inc. v. N.L.R.B., 335 F.2d 749, 758 (9th Cir.1964), citing authorities collected in 2 Moore *Federal Practice* P8.22 (1962); 1A Barron & Holtzoff, *Federal Practice & Procedure* § 277 at 148–53 (Rules ed.1960); 5 *Cyclopedia of*

*Federal Practice* §§ 15.136–.139 (1951), and <u>Mesirow v. Duggan</u>, 240 F.2d 751, 756 (8th Cir.1957); see also <u>Bank of Am., N.A. v. Malibu Canyon Invs., LLC</u>, No. 2:10-CV-00396-KJD, 2012 WL 115577, at *3 (D. Nev. Jan. 13, 2012) and <u>Clay v. D.C.</u>, 831 F. Supp. 2d 36, 46–47 (D.D.C. 2011)("An averment will be deemed admitted when the matter is obviously one as to which a defendant has knowledge or information.'") citing <u>Djourabchi v. Self</u>, 240 F.R.D. 5, 12 (D.D.C.2006) (quoting <u>David v. Crompton & Knowles Corp.</u>, 58 F.R.D. 444, 446 (E.D.Pa.1973)). Similarly, the First Circuit has stated that "It is settled law that a defendant's *good faith answer* that it lacks knowledge or information sufficient to form a belief as to the truth of an averment constitutes a denial." <u>Glater v. Eli Lilly & Co.</u>, 712 F.2d 735, 737 (1st Cir. 1983)(emphasis added) citing *E.g.,* Fed.R.Civ.P. 8(b); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1262 (1969).

Defendant's assertion that he is without knowledge of basic facts of this transaction is not made in good faith. If defendant had conducted even a cursory examination of these allegations, he could have properly answered, as required by rule 11. Fed. R. Civ. P. 11(b)(4). His baseless denials are therefore subject to sanctions under rule 11.

Similarly, defendant's counterclaim, in addition to failing to state a claim upon which relief may be granted, violates the mandates of rule 11 that it must be well-grounded in fact or warranted by existing law or a good faith argument for an extension, modification or reversal of existing law. Defendant asserts in Count 1 that Chambers is liable for "Misrepresentation of Facts and Omission of Key details" with respect to the allegations of Chambers made in the Complain that: 1) there was no binding contract, and 2) that defendant's "conditional acceptance" became a security agreement upon non-performance. See Counterclaim, ¶¶22–23.

As to the former contention, the allegations of the Complaint are not actionable pursuant to the Massachusetts anti-SLAPP statute, M.G.L.c. 231 ¶59H.  See Godin v. Schencks, 629 F.3d 79-88-89 (1st Cir. 2010) (state anti-SLAPP statute was a substantive provision, and thus applicable to pendant state claims in federal court.); see also de Lench v. Archie, 406 F. Supp. 3d 154, 157-58 (D. Mass. 2019) (Massachusetts' anti-SLAPP statute applied to plaintiff's Massachusetts claims). Additionally, the allegations of the Complaint cannot constitute misrepresentation of any kind since defendant did not rely on the allegations is any fashion.  See, Rodi v. S. New England Sch. of Law, 389 F.3d 5, 20 (1st Cir.2004) ("When, however, the facts alleged in the complaint preclude a finding of reasonable reliance, a court may enter an order of dismissal under Rule 12(b)(6)").

As to the latter contention, it is very simply a misstatement of the law: the "conditional acceptance" did not become a security agreement and defendant can point to no recognized legal authority in support of this bizarre claim; he simply says it is so and leaves it at that.

As to defendant's second count titled "Opportunity to handle Privately and Administratively", defendant contends that Chambers had a legal obligation to "resolve matters privately and administratively." See Counterclaim ¶27. First, there is no legal basis for claiming that a party must resolve things "privately". The courts were specifically created to resolve legal disputes in a public forum and that is what Chambers has sought to do here. Second, this is not a case where there was an available administrative remedy that Chambers failed to exhaust as a prerequisite to filing suit. As set forth in the Complaint, Chambers filed a UCC-5 to provide notice of defendant's fraudulently filed UCC-1 financing statement and followed up with a letter pursuant to M.G.L.c.106 ¶ 9–513 demanding that the defendant file a termination statement. See Complaint ¶¶ 33–34; Exhibits 10 – 11. In the absence of defendant filing a termination statement

as demanded within 20 days, Chambers was authorized by M.G.L.c.106 ¶ 9–625 to file this action.

In short, defendant's Counterclaim, like virtually all of his contentions, is simply nonsense and doesn't come close to satisfying the requirements of rule 11.

Defendant has also assaulted the Court with various other senseless filings. These include an "Acceptance for Value and Return for Value of Plaintiff's Presentment". This document is not a proper filing for the Court nor is it clear what defendant intends by its brief contents, which state:

> Herein lies Plaintiff's presentment to Alleged Defendant for Summons for Preliminary Injunction. + Which was served to Alleged Defendant on 4/9/2022 by Constable James Sylvester. I accept for value and return for value the presentment to the Honorable Court and Plaintiff's Counsel.

(Acceptance p. 1)[1]. Defendant signed this filing, which according to Fed. R. Civ. P. 11(b), certifies that defendant is not presenting the document for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" and "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." However, this document is not based on existing law and is designed solely to harass and needlessly increase the cost of litigation.

Defendant also filed a "Mandatory Judicial Notice" which purports to order this Court that "defendant-in-error is a Sovereign, who retains full Constitutional Rights and enjoys the benefits thereof, and hereby states that in contrast to *discretionary* judicial notice, *mandatory* judicial notice leaves no room, whatsoever, for discretion on the part of this Honorable Court, to disregard this Notice, pursuant to the presiding judge's oath and Constitutionally mandated

---

[1] Citations to defendant's various filings will use the court's filing page numbers.

duties thereunder." (Mandatory Judicial Notice p.3, emphasis in original). The Sovereign citizens movement is well documented and full of scams and bad faith papering of court dockets in an attempt to defraud parties and/or the government itself and overwhelm the courts. See United States v. Rivera, No. CIV 14-0579 JB/CG, 2015 WL 4042197, at *21 (D.N.M. June 30, 2015); United States v. Gutierrez, No. CR 15-3955 JB, 2018 WL 2107785, at *2 (D.N.M. May 5, 2018); United States v. Ulloa, 511 F. App'x 105 (2d Cir. 2013); Johnson v. Weare Police Dep't, No. 12-CV-032-SM, 2013 WL 5740453, at *2 (D.N.H. Oct. 23, 2013).

In fact, "[t]he Court of Appeals for the Second Circuit has described the 'sovereign citizens' as 'a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior' and noted that the 'FBI has labeled the sovereign citizens a domestic terrorist group.'" Johnson v. Weare Police Dep't, No. 12-CV-032-SM, 2013 WL 5740453 at note 1 citing United States v. Ulloa, 511 Fed. Appx. 105, 107 n.1 (2d Cir.2013) (citing "Sovereign Citizens A Growing Domestic Threat to Law Enforcement," FBI Law Enforcement Bulletin (Sept.2011), http://www.fbi.gov/stats-ser vices/publications/law-enforcementbulletin/ september–2011/sovereign–citizens) (the "FBI Bulletin"). U.S. v. Riviera quoted the Southern Poverty Law Center to describe that "[t]he weapon of choice for sovereign citizens is paper" and went on to describe that followers of the Sovereign citizens movement will often flood dockets with thousands of pages of nonsensical filings. United States v. Rivera, No. CIV 14-0579 JB/CG, 2015 WL 4042197, at *21 citing Sovereign Citizens Movement, Southern Poverty Law Center, http:// www.splcenter.org/get-informed/intelligence-files/ideology/ sovereign-citizens-movement (last visited June 26, 2015). Additionally, "sovereign citizens' legal arguments are so common that the Tenth Circuit maintains a list of them, which the Court of Appeals directs district courts

to reject out of hand." <u>United States v. Rivera</u>, No. CIV 14-0579 JB/CG, 2015 WL 4042197, at

*22.

        <u>U.S. v. Rivera</u> summarizes the beliefs of the sovereign citizen movement:

        Since 1933, the U.S. dollar has been backed not by gold, but by the "full faith and credit" of the U.S.... According to sovereign "researchers," this means that the government has pledged its citizenry as collateral, by selling their future earning capabilities to foreign investors, effectively enslaving all Americans. This sale, they claim, takes place at birth. When a baby is born in the U.S., a birth certificate is issued, and the hospital usually requires that the parents apply for a Social Security number at that time. Sovereigns say that the government then uses that birth certificate to set up a kind of corporate trust in the baby's name—a secret Treasury account—which it funds with an amount ranging from $600,000 to $20 million, depending on the particular variant of the sovereign belief system. By setting up this account, every newborn's rights are cleverly split between those held by the flesh-and-blood baby and the ones assigned to his or her corporate shell account. . .Since most certificates use all capital letters to spell out a baby's name, JOHN DOE, for example, is actually the name of the corporate shell identity, or "straw man," while John Doe is the baby's "real," flesh-and-blood name. . .The process sovereigns have devised to split the straw man from the flesh-and-blood man is called "redemption," and its purpose is two-fold. Once separated from the corporate shell, the newly freed man is now outside of the jurisdiction of all admiralty laws. More importantly, by filing a series of complex, legal-sounding documents, the sovereign can tap into that secret Treasury account for his own purposes.

<u>United States v. Rivera</u>, No. CIV 14-0579 JB/CG, 2015 WL 4042197, at *20–21 (D.N.M. June

30, 2015) quoting *Sovereign Citizens Movement,* Southern Poverty Law Center, http://

www.splcenter.org/get-informed/intelligence-files/ideology/ sovereign-citizens-movement (last

visited June 26, 2015).

        Following the trend of the movement, defendant does not believe he is subject to this

Court's jurisdiction, as he asserts in his Mandatory Judicial Notice without any reasoning or

support. (Mandatory Judicial Notice p.1).

        As part of defendant's assault of filings on this Court, he additionally filed a "Lawful

Claim of Title, Living Will, Declaration of Status, Appointment of Trustees, and Standing

Orders for the Same." The document purports to claim and exercise Claimant's birthright and

claim his entire inheritance. It then purports to appoint a host of trustees including all courts, the

Commonwealth of Massachusetts, the United States, military branches of the government, the

I.R.S. and so on. (Lawful Claim p. 7-17). On its face this document is irrelevant, illogical, and

untruthful. It is over sixty pages long and includes an "Ohio Self-Proving Affidavit" despite the

fact that defendant lives in Rhode Island. (Lawful Claim p. 87). The document also includes

what appears to be defendant's birth certificate with a red inked stamp over it stating:

> Non-Negotiable non-Transferable Charge Back Office Holder Secretary of the
> Treasury I accept for value all related endorsements in accordance with UCC 3-
> 419. HJR 192 of June 5, 1933 and Public Law 73-10. Charge my personal UCC
> Contract Trust Account – . . . for the registration fees and command the memory
> of the account to charge the same to the Debtor's Order, or your Order. Employer
> Identification # . . . Pre Paid – Preferred Stock – Priority Exempt from Levy –
> Posted: Certified Account

(Lawful Claim p. 89). Also included is a document requesting recording in Rhode Island of

defendant's "Nationality Declaration". The following page purports to be such declaration and

states that:

> I, Deric-Marcell:Thompson Beneficiary Heir, am not a corporate citizen, fictitious
> entity, artificial person, 14th amendment citizen of the United States subject to the
> public debt obligation, or surety that is civilly dead. I am a Certified Ministerial
> Ambassador of my Autochthonous Government, Faith, and Spiritual Practices. I
> have no tax liability from any corporate agencies due to my status. I herein
> Reserve All of my inherent Natural Rights, Autochthonous Ab Origin Rights as
> an Autochthonous American, my Divine Rights, any and all Liberties, and all
> international rights and liberties apply.

Again, these writings are consistent with the Sovereign Citizens movement beliefs including the

lack of tax liability, the belief that a person's birth certificate confers a corporate shell identity

and secret trust account and that by separating the sovereign identity and corporate shell identity,

a person can tap into that secret Treasury account for their own use. See United States v. Rivera,

No. CIV 14-0579 JB/CG, 2015 WL 4042197, at *20–21.

Chambers need not spell out how defendant's excessive filings of irrelevant documents have cost the Court and Chambers valuable time and resources. Needless to say documents which purport to give mandatory orders to the Court and appoint trustees over defendant's fictitious estate based on his secret trust account assigned at birth through his birth certificate are inappropriate and irrelevant to a dispute over a vehicle transaction from a dealership.

Understandably, courts are typically hesitant to sanction pro se defendants. However, the district court of New Mexico explained that:

> None of this material complies with the local rules, and the Court will, therefore, decline to wrestle at length with any of it.  The Court is willing to bend the local rules—or, more accurately, the Court is willing to excuse instances of noncompliance with the local rules—when parties—especially pro se parties—are arguing in good faith, but what the Riveras are doing is the opposite of good faith: they are violating the local rules in the hopes that their violations will overwhelm the Court, and that the Court, out of a good-faith desire to consider all their submissions on the merits, will either defer to them or put off considering the case indefinitely. The Court has skimmed the Riveras' post-Motion materials to ascertain their noncompliance with the local rules and their substantive lack of merit, and the Court will treat these materials the same as if the Riveras' had not made a substantive response to the Motion.

United States v. Rivera, No. CIV 14-0579 JB/CG, 2015 WL 4042197, at *22 (internal citations omitted).

Importantly, defendant also included a "Notice of Liability Regarding Trespass Fee Schedule and Remedy" which begins:

> This matter is by the decree of the watchers and the demand by the word of the Holy ones: to the intent that the living may know that the most High ruleth in the kingdom of men and giveth it to whomsoever He will and setteth up over it the basest of men.

(Lawful Claim of Title p. 97). The document goes on to include a Fee Schedule whereby defendant insists that written permission is required to use his name and he does not authorize "you or your agents/third parties" to do so. The Fee Schedule includes "for each page of

documents an agent, clerk or clerk of courts refuses to file: $10,000 (ten thousand) per page in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24:1 of Federal reserve notes to silver dollars per person per violation pursuant to Federal Rules of Civil procedure 5(d)(4). . . ." (Lawful Claim p.99). Defendant goes on to list a myriad of other fees for such acts like unsolicited phone calls, correspondence defendant writes himself to "court services and agents", special or general appearances by defendant, and unfounded accusations by "an Officer of the Court". (Lawful Claim p.99-103).

There is no clearer example of a situation in which rule 11 is necessary to "protect parties and the court from wasteful, frivolous, and harassing" conduct nor is there a clearer reason for imposing "sanctions on an unrepresented party if he or she submits a pleading for an improper purpose or if the claims within it are frivolous or malicious." Azubuko v. MBNA Am. Bank, 396 F. Supp. 2d 1, 7 (D. Mass. 2005), aff'd, 179 F. App'x 66 (1st Cir. 2006). Defendant has clearly submitted these filings in bad faith to perpetrate his scam against Chambers and this Court. Additionally, as deterrence and compensation are the objectives of the rule 11 sanctions, both are duly required in this case as defendant shows no signs of stopping his campaign of paper terrorism and because Chambers has expended time and attorneys' fees in responding to these filings.

### III.   CONCLUSION

For the foregoing reasons, Chambers requests that this Court issue sanctions against defendant pursuant to rule 11 of the Federal Rules of Civil Procedure in an amount sufficient to cover its attorneys' fees in drafting and filing this motion, its motion to dismiss, and any further motions required to bring this matter to conclusion.

Respectfully submitted,
Herb Chambers 1188, Inc.
By its attorneys,


   /s/ Edward C. Cooley
Edward C. Cooley BBO# 550117
Abigail C. Hogan BBO# 707299
GIARRUSSO, NORTON, COOLEY
& MCGLONE, P.C.
308 Victory Road
Quincy, MA 02171
(617)770-2900


**CERTIFICATE OF SERVICE**

I, Edward C. Cooley, hereby certify that a true copy of the foregoing document was served this day upon the defendant by email and first class mail.

DATED: May 5, 2022

   /s/ Edward C. Cooley
Edward C. Cooley