



**DERIC MARCELL THOMPSON**
233 Halsey Road
Woonsocket, Rhode Island 02895
United States

6178692101

## Invoice

Fee Schedule Invoice

**BILL TO**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
Matthew Paine - Clerk
1 Courthouse Way
Suite 2300 - Clerk's Office
Boston, Massachusetts 02210
United States

**Invoice Number:** 6
**P.O./S.O. Number:** 1:22-CV-10501-WGY
**Invoice Date:** June 25, 2022
**Payment Due:** July 10, 2022
**Amount Due (USD):** **$1,928,000.00**

| Items | Quantity | Price | Amount |
|---|---|---|---|
| **Special Appearances**<br>3 Court Appearances | 3 | $30,000.00 | $90,000.00 |
| **Unlawful Interferance**<br>Trespass of Private Commercial Affairs | 1 | $100,000.00 | $100,000.00 |
| **Written Correspondence**<br>Conditional Acceptances | 2 | $2,000.00 | $4,000.00 |
| **Items Request**<br>Failure to Provide Requested Items | 2 | $5,000.00 | $10,000.00 |
| **False Statements**<br>False Statements from Trustees/Agents | 1 | $20,000.00 | $20,000.00 |
| **Offenses Committed**<br>Prima Facie Evidence | 1 | $300,000.00 | $300,000.00 |
| **Refuse to File**<br>Clerk's Refusal to File | 4 | $10,000.00 | $40,000.00 |



**DERIC MARCELL THOMPSON**
233 Halsey Road
Woonsocket, Rhode Island 02895
United States

6178692101



Fee Schedule Invoice

| Items | Quantity | Price | Amount |
|---|---|---|---|
| **Correspondence Written**<br>Motions to Court | 7 | $2,000.00 | $14,000.00 |
| **Coercion of Real Man**<br>Liability of Ens Legis against Secured Party | 1 | $200,000.00 | $200,000.00 |
| **Trespass**<br>Trespass on Cestui Que Trust Matters | 1 | $100,000.00 | $100,000.00 |
| **Violations**<br>Breach of Trustee Fiduciary Duties | 1 | $50,000.00 | $50,000.00 |
| **Every Trustee/Agent**<br>Court Matters against Cestui Que Trust | 5 | $200,000.00 | $1,000,000.00 |

| | **Total:** | $1,928,000.00 |
|---|---|---|
| | **Amount Due (USD):** | **$1,928,000.00** |

**Notes / Terms**
Per Fee Schedule filed with the United States District Court for the District of Massachusetts

# 26 CFR § 301.7701-7 - Trusts - domestic and foreign.

## § 301.7701-7 Trusts - domestic and foreign.

**(a)** *In general.*

**(1)** A trust is a United States person if -

**(i)** A court within the United States is able to exercise primary supervision over the administration of the trust (court test); and

**(ii)** One or more United States persons have the authority to control all substantial decisions of the trust (control test).

**(2)** A trust is a United States person for purposes of the Internal Revenue Code (Code) on any day that the trust meets both the court test and the control test. For purposes of the regulations in this chapter, the term *domestic trust* means a trust that is a United States person. The term *foreign trust* means any trust other than a domestic trust.

**(3)** Except as otherwise provided in part I, subchapter J, chapter 1 of the Code, the taxable income of a foreign trust is computed in the same manner as the taxable income of a nonresident alien individual who is not present in the United States at any time. Section 641(b). Section 7701(b) is not applicable to trusts because it only applies to individuals. In addition, a foreign trust is not considered to be present in the United States at any time for purposes of section 871(a)(2), which deals with capital gains of nonresident aliens present in the United States for 183 days or more.

**(b)** *Applicable law.* The terms of the trust instrument and applicable law must be applied to determine whether the court test and the control test are met.

**(c)** *The court test* -

**(1)** *Safe harbor.* A trust satisfies the court test if -

**(i)** The trust instrument does not direct that the trust be administered outside of the United States;

**(ii)** The trust in fact is administered exclusively in the United States; and

**(iii)** The trust is not subject to an automatic migration provision described in paragraph (c)(4)(ii) of this section.

**(2)** *Example.* The following example illustrates the rule of paragraph (c)(1) of this section:

**EXAMPLE. A**
creates a trust for the equal benefit of *A*'s two children, *B* and *C.* The trust instrument provides that *DC,* a State *Y* corporation, is the trustee of the trust. State *Y* is a state within the United States. *DC* administers the trust exclusively in State *Y* and the trust instrument is silent as to where the trust is to be administered. The trust is not subject to an automatic migration provision described in paragraph (c)(4)(ii) of this section. The trust satisfies the safe harbor of paragraph (c)(1) of this section and the court test.

**(3)** *Definitions.* The following definitions apply for purposes of this section:

**(i)** *Court.* The term *court* includes any federal, state, or local court.

**(ii)** *The United States.* The term *the United States* is used in this section in a geographical sense. Thus, for purposes of the court test, the United States includes only the States and the District of Columbia. See section 7701(a)(9). Accordingly, a court within a territory or possession of the United States or within a foreign country is not a court within the United States.

**(iii)** *Is able to exercise.* The term *is able to exercise* means that a court has or would have the authority under applicable law to render orders or judgments resolving issues concerning administration of the trust.

**(iv)** *Primary supervision.* The term *primary supervision* means that a court has or would have the authority to determine substantially all issues regarding the administration of the entire trust. A court may have primary supervision under this paragraph (c)(3)(iv) notwithstanding the fact that another court has jurisdiction over a trustee, a beneficiary, or trust property.

**(v)** *Administration.* The term *administration* of the trust means the carrying out of the duties imposed by the terms of the trust instrument and applicable law, including maintaining the books and records of the trust, filing tax returns, managing and investing the assets of the trust, defending the trust from suits by creditors, and determining the amount and timing of distributions.

**(4)** *Situations that cause a trust to satisfy or fail to satisfy the court test.*

**(i)** Except as provided in paragraph (c)(4)(ii) of this section, paragraphs (c)(4)(i) (A) through (D) of this section set forth some specific situations in which a trust satisfies the court test. The four situations described are not intended to be an exclusive list.

**(A)** *Uniform Probate Code.* A trust meets the court test if the trust is registered by an authorized fiduciary or fiduciaries of the trust in a court within the United States pursuant to a state statute that has provisions substantially similar to Article VII, *Trust Administration,* of the Uniform Probate Code, 8 Uniform Laws Annotated 1 (West Supp. 1998), available from the National Conference of Commissioners on Uniform State Laws, 676 North St. Clair Street, Suite 1700, Chicago, Illinois 60611.

**(B)** *Testamentary trust.* In the case of a trust created pursuant to the terms of a will probated within the United States (other than an ancillary probate), if all fiduciaries of the trust have been qualified as trustees of the trust by a court within the United States, the trust meets the court test.

**(C)** *Inter vivos trust.* In the case of a trust other than a testamentary trust, if the fiduciaries and/or beneficiaries take steps with a court within the United States that cause the administration of the trust to be subject to the primary supervision of the court, the trust meets the court test.

**(D)** *A United States court and a foreign court are able to exercise primary supervision over the administration of the trust.* If both a United States court and a foreign court are able to exercise primary supervision over the administration of the trust, the trust meets the court test.

**(ii)** *Automatic migration provisions.* Notwithstanding any other provision in this section, a court within the United States is not considered to have primary supervision over the administration of the trust if the trust instrument provides that a United States court's attempt to assert jurisdiction or otherwise supervise the administration of the trust directly or indirectly would cause the trust to migrate from the United States. However, this paragraph (c)(4)(ii) will not apply if the trust instrument provides that the trust will migrate from the United States only in the case of foreign invasion of the United States or widespread confiscation or nationalization of property in the United States.

**(5)** *Examples.* The following examples illustrate the rules of this paragraph (c):

**EXAMPLE 1. A,**

a United States citizen, creates a trust for the equal benefit of *A*'s two children, both of whom are United States citizens. The trust instrument provides that *DC,* a domestic corporation, is to act as trustee of the trust and that the trust is to be administered in Country *X,* a foreign country. *DC* maintains a branch office in Country *X* with personnel authorized to act as trustees in Country *X.* The trust instrument provides that the law of State *Y,* a state within the United States, is to govern the interpretation of the trust. Under the law of Country *X,* a court within Country *X* is able to exercise primary supervision over the administration of the trust. Pursuant to the trust instrument, the Country *X* court applies the law of State *Y* to the trust. Under the terms of the trust instrument the trust is administered in Country *X.* No court within the United States is able to exercise primary supervision over the administration of the trust. The trust fails to satisfy the court test and therefore is a foreign trust.

### EXAMPLE 2. A,

a United States citizen, creates a trust for *A*'s own benefit and the benefit of *A*'s spouse, *B,* a United States citizen. The trust instrument provides that the trust is to be administered in State *Y,* a state within the United States, by *DC,* a State *Y* corporation. The trust instrument further provides that in the event that a creditor sues the trustee in a United States court, the trust will automatically migrate from State *Y* to Country *Z,* a foreign country, so that no United States court will have jurisdiction over the trust. A court within the United States is not able to exercise primary supervision over the administration of the trust because the United States court's jurisdiction over the administration of the trust is automatically terminated in the event the court attempts to assert jurisdiction. Therefore, the trust fails to satisfy the court test from the time of its creation and is a foreign trust.

## (d) *Control test* -

## (1) *Definitions* -

**(i) *United States person.*** The term *United States person* means a United States person within the meaning of section 7701(a)(30). For example, a domestic corporation is a United States person, regardless of whether its shareholders are United States persons.

**(ii) *Substantial decisions.*** The term *substantial decisions* means those decisions that persons are authorized or required to make under the terms of the trust instrument and applicable law and that are not ministerial. Decisions that are ministerial include decisions regarding details such as the bookkeeping, the collection of rents, and the execution of investment decisions. Substantial decisions include, but are not limited to, decisions concerning -

**(A)** Whether and when to distribute income or corpus;

**(B)** The amount of any distributions;

**(C)** The selection of a beneficiary;

**(D)** Whether a receipt is allocable to income or principal;

**(E)** Whether to terminate the trust;

**(F)** Whether to compromise, arbitrate, or abandon claims of the trust;

**(G)** Whether to sue on behalf of the trust or to defend suits against the trust;

**(H)** Whether to remove, add, or replace a trustee;

**(I)** Whether to appoint a successor trustee to succeed a trustee who has died, resigned, or otherwise ceased to act as a trustee, even if the power to make such a decision is not accompanied by an unrestricted power to remove a trustee, unless the power to make such a decision is limited such that it cannot be exercised in a manner that would change the trust's residency from foreign to domestic, or vice versa; and

**(J)** Investment decisions; however, if a United States person under section 7701(a)(30) hires an investment advisor for the trust, investment decisions made by the investment advisor will be considered substantial decisions controlled by the United States person if the United States person can terminate the investment advisor's power to make investment decisions at will.

**(iii)** *Control.* The term *control* means having the power, by vote or otherwise, to make all of the substantial decisions of the trust, with no other person having the power to veto any of the substantial decisions. To determine whether United States persons have control, it is necessary to consider all persons who have authority to make a substantial decision of the trust, not only the trust fiduciaries.

**(iv)** *Safe harbor for certain employee benefit trusts and investment trusts.* Notwithstanding the provisions of this paragraph (d), the trusts listed in this paragraph (d)(1)(iv) are deemed to satisfy the control test set forth in paragraph (a)(1)(ii) of this section, provided that United States trustees control all of the substantial decisions made by the trustees of the trust -

**(A)** A qualified trust described in section 401(a);

**(B)** A trust described in section 457(g);

**(C)** A trust that is an individual retirement account described in section 408(a);

**(D)** A trust that is an individual retirement account described in section 408(k) or 408(p);

**(E)** A trust that is a Roth IRA described in section 408A;

**(F)** A trust that is an education individual retirement account described in section 530;

**(G)** A trust that is a voluntary employees' beneficiary association described in section 501(c)(9);

**(H)** A group trust described in Rev. Rul. 81-100 (1981-1 C.B. 326) (**See** § 601.601(d)(2) of this chapter);

**(I)** An investment trust classified as a trust under § 301.7701-4(c), provided that the following conditions are satisfied -

**(1)** All trustees are United States persons and at least one of the trustees is a bank, as defined in section 581, or a United States Government-owned agency or United States Government-sponsored enterprise;

**(2)** All sponsors (persons who exchange investment assets for beneficial interests with a view to selling the beneficial interests) are United States persons; and

**(3)** The beneficial interests are widely offered for sale primarily in the United States to United States persons;

**(J)** Such additional categories of trusts as the Commissioner may designate in revenue procedures, notices, or other guidance published in the Internal Revenue Bulletin (see § 601.601(d)(2)(ii)(*b*)).

**(v)** *Examples.* The following examples illustrate the rules of paragraph (d)(1) of this section:

**EXAMPLE 1.**
Trust is a testamentary trust with three fiduciaries, *A, B,* and *C. A* and *B* are United States citizens, and *C* is a nonresident alien. No persons except the fiduciaries have authority to make any decisions of the trust. The trust instrument provides that no substantial decisions of the trust can be made unless there is unanimity among the fiduciaries. The control test is not satisfied because United States persons do not control all the substantial decisions of the trust. No substantial decisions can be made without *C*'s agreement.
**EXAMPLE 2.**

Assume the same facts as in *Example 1,* except that the trust instrument provides that all substantial decisions of the trust are to be decided by a majority vote among the fiduciaries. The control test is satisfied because a majority of the fiduciaries are United States persons and therefore United States persons control all the substantial decisions of the trust.

### EXAMPLE 3.

Assume the same facts as in *Example 2,* except that the trust instrument directs that *C* is to make all of the trust's investment decisions, but that *A* and *B* may veto *C*'s investment decisions. *A* and *B* cannot act to make the investment decisions on their own. The control test is not satisfied because the United States persons, *A* and *B,* do not have the power to make all of the substantial decisions of the trust.

### EXAMPLE 4.

Assume the same facts as in *Example 3,* except *A* and *B* may accept or veto *C*'s investment decisions and can make investments that *C* has not recommended. The control test is satisfied because the United States persons control all substantial decisions of the trust.

### EXAMPLE 5. X,

a foreign corporation, conducts business in the United States through various branch operations. *X* has United States employees and has established a trust as part of a qualified employee benefit plan under section 401(a) for these employees. The trust is established under the laws of State *A,* and the trustee of the trust is *B,* a United States bank governed by the laws of State *A. B* holds legal title to the trust assets for the benefit of the trust beneficiaries. A plan committee makes decisions with respect to the plan and the trust. The plan committee can direct *B*'s actions with regard to those decisions and under the governing documents *B* is not liable for those decisions. Members of the plan committee consist of United States persons and nonresident aliens, but nonresident aliens make up a majority of the plan committee. Decisions of the plan committee are made by majority vote. In addition, *X* retains the power to terminate the trust and to replace the United States trustee or to appoint additional trustees. This trust is deemed to satisfy the control test under paragraph (d)(1)(iv) of this section because *B,* a United States person, is the trust's only trustee. Any powers held by the plan committee or *X* are not considered under the safe harbor of paragraph (d)(1)(iv) of this section. In the event that *X* appoints additional trustees including foreign trustees, any powers held by such trustees must be considered in determining whether United States trustees control all substantial decisions made by the trustees of the trust.

**(2)** *Replacement of any person who had authority to make a substantial decision of the trust* -

**(i)** *Replacement within 12 months.* In the event of an inadvertent change in any person that has the power to make a substantial decision of the trust that would cause the domestic or foreign residency of the trust to change, the trust is allowed 12 months from the date of the change to make necessary changes either with respect to the persons who control the substantial decisions or with respect to the residence of such persons to avoid a change in the trust's residency. For purposes of this section, an inadvertent change means the death, incapacity, resignation, change in residency or other change with respect to a person that has a power to make a substantial decision of the trust that would cause a change to the residency of the trust but that was not intended to change the residency of the trust. If the necessary change is made within 12 months, the trust is treated as retaining its pre-change residency during the 12-month period. If the necessary change is not made within 12 months, the trust's residency changes as of the date of the inadvertent change.

**(ii)** *Request for extension of time.* If reasonable actions have been taken to make the necessary change to prevent a change in trust residency, but due to circumstances beyond the trust's control the trust is unable to make the modification within 12 months, the trust may provide a written statement to the district director having jurisdiction over the trust's return setting forth the reasons for failing to make the necessary change within the required time period. If the district director determines that the failure was due to reasonable cause, the district director may grant the trust an extension of time to make the necessary change. Whether an extension of time is granted is in the sole discretion of the district director and, if granted, may contain such terms with respect to assessment as may be necessary to ensure that the correct amount of tax will be collected from the trust, its owners, and its beneficiaries. If the district director does not grant an extension, the trust's residency changes as of the date of the inadvertent change.

**(iii)** *Examples.* The following examples illustrate the rules of paragraphs (d)(2) (i) and (ii) of this section:

### EXAMPLE 1.

A trust that satisfies the court test has three fiduciaries, *A, B,* and *C. A* and *B* are United States citizens and *C* is a nonresident alien. All decisions of the trust are made by majority vote of the fiduciaries. The trust instrument provides that upon the death or resignation of any of the fiduciaries, *D,* is the successor fiduciary. *A* dies and *D* automatically becomes a fiduciary of the trust. When *D* becomes a fiduciary of the trust, *D* is a nonresident alien. Two months

after *A* dies, *B* replaces *D* with *E,* a United States person. Because *D* was replaced with *E* within 12 months after the date of *A*'s death, during the period after *A*'s death and before *E* begins to serve, the trust satisfies the control test and remains a domestic trust.

**EXAMPLE 2.**

Assume the same facts as in *Example 1* except that at the end of the 12-month period after *A*'s death, *D* has not been replaced and remains a fiduciary of the trust. The trust becomes a foreign trust on the date *A* died unless the district director grants an extension of the time period to make the necessary change.

**(3) *Automatic migration provisions.*** Notwithstanding any other provision in this section, United States persons are not considered to control all substantial decisions of the trust if an attempt by any governmental agency or creditor to collect information from or assert a claim against the trust would cause one or more substantial decisions of the trust to no longer be controlled by United States persons.

**(4) *Examples.*** The following examples illustrate the rules of this paragraph (d):

**EXAMPLE 1. A,**

a nonresident alien individual, is the grantor and, during *A*'s lifetime, the sole beneficiary of a trust that qualifies as an individual retirement account (IRA). *A* has the exclusive power to make decisions regarding withdrawals from the IRA and to direct its investments. The IRA's sole trustee is a United States person within the meaning of section 7701(a)(30). The control test is satisfied with respect to this trust because the special rule of paragraph (d)(1)(iv) of this section applies.

**EXAMPLE 2. A,**

a nonresident alien individual, is the grantor of a trust and has the power to revoke the trust, in whole or in part, and revest assets in *A. A* is treated as the owner of the trust under sections 672(f) and 676. *A* is not a fiduciary of the trust. The trust has one trustee, *B,* a United States person, and the trust has one beneficiary, *C. B* has the discretion to distribute corpus or income to *C.* In this case, decisions exercisable by *A* to have trust assets distributed to *A* are substantial decisions. Therefore, the trust is a foreign trust because *B* does not control all substantial decisions of the trust.

**EXAMPLE 3.**

A trust, Trust T, has two fiduciaries, *A* and *B.* Both *A* and *B* are United States persons. *A* and *B* hire *C,* an investment advisor who is a foreign person, and may terminate *C*'s employment at will. The investment advisor makes the investment decisions for the trust. *A* and *B* control all other decisions of the trust.

Although *C* has the power to make investment decisions, *A* and *B* are treated as controlling these decisions. Therefore, the control test is satisfied.

**EXAMPLE 4. G,**
a United States citizen, creates a trust. The trust provides for income to *A* and *B* for life, remainder to *A*'s and *B*'s descendants. *A* is a nonresident alien and *B* is a United States person. The trustee of the trust is a United States person. The trust instrument authorizes *A* to replace the trustee. The power to replace the trustee is a substantial decision. Because *A,* a nonresident alien, controls a substantial decision, the control test is not satisfied.

**(e) *Effective date* -**

**(1) *General rule.*** Except for the election to remain a domestic trust provided in paragraph (f) of this section and except as provided in paragraph (e)(3) of this section, this section is applicable to taxable years ending after February 2, 1999. This section may be relied on by trusts for taxable years beginning after December 31, 1996, and also may be relied on by trusts whose trustees have elected to apply sections 7701(a)(30) and (31) to the trusts for taxable years ending after August 20, 1996, under section 1907(a)(3)(B) of the Small Business Job Protection Act of 1996, (the SBJP Act) Public Law 104-188, 110 Stat. 1755 (26 U.S.C. 7701 note).

**(2) *Trusts created after August 19, 1996.*** If a trust is created after August 19, 1996, and before April 5, 1999, and the trust satisfies the control test set forth in the regulations project REG-251703-96 published under section 7701(a)(30) and (31) (1997-1 C.B. 795) (See § 601.601(d)(2) of this chapter), but does not satisfy the control test set forth in paragraph (d) of this section, the trust may be modified to satisfy the control test of paragraph (d) by December 31, 1999. If the modification is completed by December 31, 1999, the trust will be treated as satisfying the control test of paragraph (d) for taxable years beginning after December 31, 1996, (and for taxable years ending after August 20, 1996, if the election under section 1907(a)(3)(B) of the SBJP Act has been made for the trust).

**(3) *Effective date of safe harbor for certain employee benefit trusts and investment trusts.*** Paragraphs (d)(1)(iv) and (v) *Examples 1* and *5* of this section apply to trusts for taxable years ending on or after August 9, 2001. Paragraphs (d)(1)(iv) and (v) *Examples 1* and *5* of this section may be relied on by trusts for taxable years beginning after December 31, 1996, and also may be relied on by trusts whose trustees have elected to apply sections 7701(a)(30) and

(31) to the trusts for taxable years ending after August 20, 1996, under section 1907(a)(3)(B) of the SBJP Act.

**(f) *Election to remain a domestic trust* -**

**(1) *Trusts eligible to make the election to remain domestic.* A** trust that was in existence on August 20, 1996, and that was treated as a domestic trust on August 19, 1996, as provided in paragraph (f)(2) of this section, may elect to continue treatment as a domestic trust notwithstanding section 7701(a)(30)(E). This election is not available to a trust that was wholly-owned by its grantor under subpart E, part I, subchapter J, chapter 1, of the Code on August 20, 1996. The election is available to a trust if only a portion of the trust was treated as owned by the grantor under subpart E on August 20, 1996. If a partially-owned grantor trust makes the election, the election is effective for the entire trust. Also, a trust may not make the election if the trust has made an election pursuant to section 1907(a)(3)(B) of the SBJP Act to apply the new trust criteria to the first taxable year of the trust ending after August 20, 1996, because that election, once made, is irrevocable.

**(2) *Determining whether a trust was treated as a domestic trust on August 19, 1996* -**

**(i) *Trusts filing Form 1041 for the taxable year that includes August 19, 1996.* For** purposes of the election, a trust is considered to have been treated as a domestic trust on August 19, 1996, if: the trustee filed a Form 1041, "U.S. Income Tax Return for Estates and Trusts," for the trust for the period that includes August 19, 1996 (and did not file a Form 1040NR, "U.S. Nonresident Alien Income Tax Return," for that year); and the trust had a reasonable basis (within the meaning of section 6662) under section 7701(a)(30) prior to amendment by the SBJP Act (prior law) for reporting as a domestic trust for that period.

**(ii) *Trusts not filing a Form 1041.* Some** domestic trusts are not required to file Form 1041. For example, certain group trusts described in Rev. Rul. 81-100 (1981-1 C.B. 326) (See § 601.601(d)(2) of this chapter) consisting of trusts that are parts of qualified retirement plans and individual retirement accounts are not required to file Form 1041. Also, a domestic trust whose gross income for the taxable year is less than the amount required for filing an income tax return and that has no taxable income is not required to file a Form 1041. Section 6012(a)(4). For purposes of the election, a trust that filed neither a Form 1041 nor a Form 1040NR for the period that includes August 19, 1996, will be

considered to have been treated as a domestic trust on August 19, 1996, if the trust had a reasonable basis (within the meaning of section 6662) under prior law for being treated as a domestic trust for that period and for filing neither a Form 1041 nor a Form 1040NR for that period.

**(3)** *Procedure for making the election to remain domestic* -

**(i)** *Required Statement.* To make the election, a statement must be filed with the Internal Revenue Service in the manner and time described in this section. The statement must be entitled "Election to Remain a Domestic Trust under Section 1161 of the Taxpayer Relief Act of 1997," be signed under penalties of perjury by at least one trustee of the trust, and contain the following information -

**(A)** A statement that the trust is electing to continue to be treated as a domestic trust under section 1161 of the Taxpayer Relief Act of 1997;

**(B)** A statement that the trustee had a reasonable basis (within the meaning of section 6662) under prior law for treating the trust as a domestic trust on August 19, 1996. (The trustee need not explain the reasonable basis on the election statement.);

**(C)** A statement either that the trust filed a Form 1041 treating the trust as a domestic trust for the period that includes August 19, 1996, (and that the trust did not file a Form 1040NR for that period), or that the trust was not required to file a Form 1041 or a Form 1040NR for the period that includes August 19, 1996, with an accompanying brief explanation as to why a Form 1041 was not required to be filed; and

**(D)** The name, address, and employer identification number of the trust.

**(ii)** *Filing the required statement with the Internal Revenue Service.*

**(A)** Except as provided in paragraphs (f)(3)(ii)(E) through (G) of this section, the trust must attach the statement to a Form 1041. The statement may be attached to either the Form 1041 that is filed for the first taxable year of the trust beginning after December 31, 1996 (1997 taxable year), or to the Form 1041 filed for the first taxable year of the trust beginning after December 31, 1997 (1998 taxable year). The statement, however, must be filed no later than the due date for filing a Form 1041 for the 1998 taxable year, plus extensions. The election will be effective for the 1997 taxable year, and thereafter, until revoked or terminated. If the trust filed a Form 1041 for the 1997 taxable

year without the statement attached, the statement should be attached to the Form 1041 filed for the 1998 taxable year.

**(B)** If the trust has insufficient gross income and no taxable income for its 1997 or 1998 taxable year, or both, and therefore is not required to file a Form 1041 for either or both years, the trust must make the election by filing a Form 1041 for either the 1997 or 1998 taxable year with the statement attached (even though not otherwise required to file a Form 1041 for that year). The trust should only provide on the Form 1041 the trust's name, name and title of fiduciary, address, employer identification number, date created, and type of entity. The statement must be attached to a Form 1041 that is filed no later than October 15, 1999.

**(C)** If the trust files a Form 1040NR for the 1997 taxable year based on application of new section 7701(a)(30)(E) to the trust, and satisfies paragraph (f) (1) of this section, in order for the trust to make the election the trust must file an amended Form 1040NR return for the 1997 taxable year. The trust must note on the amended Form 1040NR that it is making an election under section 1161 of the Taxpayer Relief Act of 1997. The trust must attach to the amended Form 1040NR the statement required by paragraph (f)(3)(i) of this section and a completed Form 1041 for the 1997 taxable year. The items of income, deduction and credit of the trust must be excluded from the amended Form 1040NR and reported on the Form 1041. The amended Form 1040NR for the 1997 taxable year, with the statement and the Form 1041 attached, must be filed with the Philadelphia Service Center no later than the due date, plus extensions, for filing a Form 1041 for the 1998 taxable year.

**(D)** If a trust has made estimated tax payments as a foreign trust based on application of section 7701(a)(30)(E) to the trust, but has not yet filed a Form 1040NR for the 1997 taxable year, when the trust files its Form 1041 for the 1997 taxable year it must note on its Form 1041 that it made estimated tax payments based on treatment as a foreign trust. The Form 1041 must be filed with the Philadelphia Service Center (and not with the service center where the trust ordinarily would file its Form 1041).

**(E)** If a trust forms part of a qualified stock bonus, pension, or profit sharing plan, the election provided by this paragraph (f) must be made by attaching the statement to the plan's annual return required under section 6058 (information return) for the first plan year beginning after December 31, 1996, or to the plan's information return for the first plan year beginning after December 31, 1997. The

statement must be attached to the plan's information return that is filed no later than the due date for filing the plan's information return for the first plan year beginning after December 31, 1997, plus extensions. The election will be effective for the first plan year beginning after December 31, 1996, and thereafter, until revoked or terminated.

**(F)** Any other type of trust that is not required to file a Form 1041 for the taxable year, but that is required to file an information return (for example, Form 5227) for the 1997 or 1998 taxable year must attach the statement to the trust's information return for the 1997 or 1998 taxable year. However, the statement must be attached to an information return that is filed no later than the due date for filing the trust's information return for the 1998 taxable year, plus extensions. The election will be effective for the 1997 taxable year, and thereafter, until revoked or terminated.

**(G)** A group trust described in Rev. Rul. 81-100 consisting of trusts that are parts of qualified retirement plans and individual retirement accounts (and any other trust that is not described above and that is not required to file a Form 1041 or an information return) need not attach the statement to any return and should file the statement with the Philadelphia Service Center. The trust must make the election provided by this paragraph (f) by filing the statement by October 15, 1999. The election will be effective for the 1997 taxable year, and thereafter, until revoked or terminated.

**(iii)** *Failure to file the statement in the required manner and time.* If a trust fails to file the statement in the manner or time provided in paragraphs (f) (3)(i) and (ii) of this section, the trustee may provide a written statement to the district director having jurisdiction over the trust setting forth the reasons for failing to file the statement in the required manner or time. If the district director determines that the failure to file the statement in the required manner or time was due to reasonable cause, the district director may grant the trust an extension of time to file the statement. Whether an extension of time is granted shall be in the sole discretion of the district director. However, the relief provided by this paragraph (f)(3)(iii) is not ordinarily available if the statute of limitations for the trust's 1997 taxable year has expired. Additionally, if the district director grants an extension of time, it may contain terms with respect to assessment as may be necessary to ensure that the correct amount of tax will be collected from the trust, its owners, and its beneficiaries.

**(4)** *Revocation or termination of the election* -

**(i)** *Revocation of election.* The election provided by this paragraph (f) to be treated as a domestic trust may only be revoked with the consent of the Commissioner. See sections 684, 6048, and 6677 for the federal tax consequences and reporting requirements related to the change in trust residence.

**(ii)** *Termination of the election.* An election under this paragraph (f) to remain a domestic trust terminates if changes are made to the trust subsequent to the effective date of the election that result in the trust no longer having any reasonable basis (within the meaning of section 6662) for being treated as a domestic trust under section 7701(a)(30) prior to its amendment by the SBJP Act. The termination of the election will result in the trust changing its residency from a domestic trust to a foreign trust on the effective date of the termination of the election. See sections 684, 6048, and 6677 for the federal tax consequences and reporting requirements related to the change in trust residence.

**(5)** *Effective date.* This paragraph (f) is applicable beginning on February 2, 1999.

[T.D. 8813, 64 FR 4970, Feb. 2, 1999, as amended by T.D. 8962, 66 FR 41779, Aug. 9, 2001]

Doc: 00221399
Book: 2725 Page: 66



### **Affidavit**

## **Notice of Liability Regarding Trespass**
## **Fee Schedule and Remedy**

Acknowledgment
In the Nature of Supplemental Rules
for Administrative and Maritime Claims Rules C (6)
for Personal Protection From
Federal/State/County/City/Municipal/Corporation Employees/Agents/Individuals

**Notice to Agent is Notice to Principal.**
**Notice to Principal is Notice to Agent.**
**Notice to Individual, Natural Living Soul is Notice to All Human Beings.**
**Notice to All Human Beings is Notice to Individual, Natural Living Soul.**

"Ignorance of the law does not excuse misconduct in anyone, least of all in a sworn officer of the law."
--- In re McCowan (1917), 177 C. 93, 170

Public Law § 97-280 acknowledges the Holy Bible as the Word of God.

**Silence is Acquiescence, Agreement, and Dishonour**
**This is a Self-Executing Contract.**

**Notice**

**Daniel Chapter 4 verse 17 (K.J.V.)**
": This matter is by the decree of the watchers and the demand by the word of
the Holy ones: to the intent that the living may know that the most High
ruleth in the kingdom of men and giveth it to whomsoever He will and setteth
up over it the basest of men."

I, Deric-Marcell of the family Thompson, as a natural person / a People on
the state known as *Rhode Island and Providence Plantations*, am hereby, as a
gesture of peace, giving proper notice to the COMMONWEALTH OF MASSACHUSETTS
corporation and to the UNITED STATES corporation and to all municipal,
county, and city corporations, and all other STATE CORPORATIONS, agents,
employees, and all other individuals of the following:

As a peaceful, natural Man desiring to avoid conflict and to live lawfully
with all of my freedoms, I am providing you with this Affidavit of Notice of
Liability regarding Trespass **Fee Schedule and Remedy for personal protection
from Federal / State / County / City / Municipal / Corporation employees** as a
courtesy to you and as a remedy should you decide to trespass upon me or
other members of my Family. Failure to know or disobey any of your thousands
of corporate regulations, statutes, or codes does not constitute a crime
absent a victim or damaged property or fraud - no corpus delecti.

> "In every prosecution for crime it is necessary to establish the
> 'corpus delecti', i.e., the body or elements of the crime." *People
> v. Lopez.* "The corpus delecti consists of two elements, namely, 1)
> the injury of loss or harm; and 2) a criminal agency causing them to
> exist." *People v. Frey*

Please note that this self-defense **Notice of Fee Schedule and Remedy for
personal protection from Federal/State/County/City/Municipal/Corporation
employees** is just per *Trezevant v. City of Tampa*, 741 F.2d 336 (11th Cir.
1984) Motorist was illegally held for 23 minutes on a traffic charge and was
awarded $25,000 in damages. This sets the foundation for $1,066.00 per minute
or $1,800,000.00 per day. When an individual is detained without a signed
lawful 4ᵗʰ amendment warrant and without having committed a crime (Traffic
infractions are NOT crimes.), the detention is a false arrest and unlawful
imprisonment.

*__WHEREAS this is a formal and lawful Notice of Fee Schedule and Remedy that is
established for Deric-Marcell: Thompson, Spouse and his immediate family__*

It is not my intention to harass, to intimidate, to offend, to conspire, to blackmail, to coerce, or to
cause anxiety, alarm, or distress. This document and attachments are presented with honorable and peaceful
intentions and are expressly for your benefit to provide you with due process and a good faith opportunity
to state a verified claim.



Case 1:22-cv-10501-WGY  Document 29  Filed 06/30/22  Page 20 of 33
Case 1:22-cv-10501-WGY  Document 12  Filed 04/20/22  Page 99 of 126

Doc: 00221399
Book: 2725 Page:      67

*members to include the  lawful and unlawful matters relating to the Office of the Executor.*

**Written permission is required for the express use of my LEGAL NAME, and I do not authorize its use by you or your AGENTS / third parties.**

Attorney fees and other remedies not listed in this fee schedule are determined under special circumstances and submitted via certified mail with return receipt to all parties involved.

1. **For every unlawful solicited / unsolicited interference and trespass in my private matters and/or commercial affairs, the following administrative fees apply: $100,000.00** (one hundred thousand) per offense in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

2. **For every offense committed against entities, DERIC MARCELL THOMPSON©, THOMPSON, DERIC MARCELL©, DERIC M THOMPSON©, DERIC THOMPSON©, and any and all derivations thereof on any document which is in any way associated with me, the living soul, Deric-Marcell: Thompson©**

3. **, shall, by such document acting as *prima facie* evidence of violation, become liable for penalties of $300,000.00** (three hundred thousand) payable in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

4. **For every offense or action taken against me: $1,000,000.00** (one million) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation of the RICO Act of 1970 for fraudulently and unlawfully under color of law misguiding natural persons to believe they are the entities (corporate fictions) to gain access to their TRUST ACCOUNTS.

5. **For each page of documents an agent, clerk or clerk of the courts refuses to file: $10,000.00** (ten thousand) per page in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal reserve notes to silver dollars per person per violation pursuant to **Federal Rules of Civil Procedures 5(d)(4)) –**
   Acceptance by the clerk.
   [A clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice and 18 USC § 2071: '(a) Whoever willfully and unlawfully conceals, removes, mutilates. Obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceedings, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned not more than three (3) years, or both; **(b)** Whoever, having the custody of any such record, proceedings, map, book, document, paper, or other thing, willfully and unlawfully conceals, removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined under this titles or imprisoned not more than three (3) years or both; and shall forfeit his/her office and be disqualified from holding any office under the United States. As used in this subsection, the term "office" does not include the office held by any person as a retired officer of the Armed Forces of the United States. **It is settled law that delivery of a pleading to a proper official is sufficient to constitute filing thereof.** *United States v. Lombardo*, 241 U.S. 73, 36 S. Ct. 508, 60 L. Ed. 897 (1916); *Milton v. United States*, 105 F.2d 253, 255 (5th Cir. 1939). In *Greeson v. Sherman*, 265 F. Supp. 340 (D.C.Va. 1967), it was held that a pleading delivered to a deputy clerk at his home at night was thereby filed. [*Freeman v. Giacomo Costa Fu Adrea*, 282 F. Supp. 525 (E.D.Pa. 1968)]

6. **For each unsolicited / solicited phone call: $7,000** (seven thousand) in silver dollar coin convertible at the legal and lawful ratio

It is not my intention to harass, to intimidate, to offend, to conspire, to blackmail, to coerce, or to cause anxiety, alarm, or distress. This document and attachments are presented with honorable and peaceful intentions and are expressly for your benefit to provide you with due process and a good faith opportunity to state a verified claim.



Case 1:22-cv-10501-WGY   Document 29   Filed 06/30/22   Page 22 of 33
Case 1:22-cv-10501-WGY   Document 12   Filed 04/20/22   Page 101 of 126
Doc#: 00221399
Book: 2725 Page: 68

prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

7. **For each unsolicited / solicited letter of harassment :** $7,000.00 (seven thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

8. **For each correspondence that I write to RESPONDENTS and/or AGENTS / third parties of due to solicited and/or unsolicited meetings, letters of harassment or breach of the Common Law :** $2,000.00 (two thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

9. **For each correspondence I receive from the commissioner's office regarding RESPONDENTS / AGENTS / third parties or unlawful letters of harassment: $5,000.00 (five thousand)** in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

10. **For each correspondence I write to the Office of Fair Trading:** $2,000.00 (two thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

11. **For each correspondence I write to court services and agents:** $2,000.00 (two thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

12. **For each correspondence I have to write to Trading Standards:** $2,000.00 (two thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

13. **For each correspondence I have to write to the chief of police / sheriff agent after first notice sent: $2,000.00 (two thousand)** in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

14. **For each court special appearance / general appearance : $30,000.00 (thirty thousand)** Federal Reserve notes per person per violation.

15. **For each phone call I make to relevant bodies / agents:** $2,000.00 (two thousand) plus $500 per hour or part thereof / $5.00 per minute in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

16. **For each individual failure to provide per individual requested evidence, items, documents, proof of certified public oaths, or other lawfully required and requested items/documents for the inspection of the Undersigned, the fee of $5,000.00 (five thousand)** per individual breach of this notice shall apply. It is your tacit agreement that these fees become automatically subscribed to by the RESPONDENT (named in due course) if all requested and named items are not sent to the Sovereign Beneficiary with proof of receipt by recorded delivery and signed for within (7) days after receipt of this notice payable in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per violation.

17. **For each individual failure to perform a directive given by the Sovereign Beneficiary: $10,000.00 (ten thousand)** in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

18. **For every direct order given to the Sovereign Beneficiary by a magistrate, a judge, or any so-called government official or agent: $30,000.00 (thirty thousand)** in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal reserve notes to silver dollars per person per violation.

19. **For every Unlawful Arrest, Illegal Arrest, or Restraint or Distraint, or Trespassing/Trespass without a lawful, correct, complete, and original 4th amendment warrant with a wet ink signature: $1,000,000.00 (one million) plus additional damages pursuant to Trezevant v. City of Tampa, 741 F.2d 336 (11th Cir. 1984)** _ and 2 acres of government, state, county, or city land, per occurrence, per officer,

It is not my intention to harass, to intimidate, to offend, to conspire, to blackmail, to coerce, or to cause anxiety, alarm, or distress. This document and attachments are presented with honorable and peaceful intentions and are expressly for your benefit to provide you with due process and a good faith opportunity to state a verified claim.



Doc# 00221399
Book# 2725 Page# 69

or agent involved in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per violation.

20. **For every Excessive Bail, Fraudulent Bond, Fraudulent Warrant, Cruel / Unusual Punishment, Violation of Rights to a Speedy Trial or Freedom of Speech, Conspiracy, Aiding and Abetting, Racketeering, and/or Abuse of Authority** as per Title 18 U.S.C.A. § 241 and 242 or definitions contained herein for encroachment: **$1,000,000.00** (one million) and 1 acre of government, state, county, or city land per occurrence per officer or agent involved in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

21. **For every Assault (with or without Weapon): $1,000,000.00** (one million) and 1 acre of government, state, county, or city land per occurrence in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

22. **For all Unfounded Accusations by an Officer of the Court, Police Officer, or Officers of the Sheriff's Department and State Troopers: $3,000.00** (three thousand) per occurrence per officer or agent involved in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24: 1 of Federal Reserve notes to silver dollars per person per violation.

23. **For all Unlawful Detention or Incarceration:  $200,000.00** (two hundred thousand) per day and 1 acre of government, state, county, or city land in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars.

24. **For every Incarceration for Civil or Criminal Contempt of court without lawful and valid reason: $200,000.00** (two hundred thousand) per day and 2 acres of government, state, county, or city land per occurrence in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

25. **For every Threat, Coercion, Deception, or Attempted Deception by any officer of the court: $5,000.00** (five thousand) per occurrence per officer or agent involved in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation.

26. **For each Refusal of Lawful Bailment as Provided by the aforementioned Constitution and/or Honorable Bill of Rights: $100,000.00** (one hundred thousand) per day in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars as per *Trafficante v. Florida* per occurrence per officer and/or agent involved and 1 acre of government, state, county, or city land.

27. **For every Coercion or Attempted Coercion of the Real Natural Person to hold the liability of the Corporate Citizen against the Natural Person and Secured Party's Will: $200,000.00** (two hundred thousand) per occurrence per officer or agent involved in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars.

28. **For each Recording of an Unlawful or Improper Lien, Levy, Impoundment, or Garnishment against any funds, bank accounts, savings accounts, retirement funds, investment funds, social security funds, intellectual property, or any other property belonging to the Secured Party by any agency as aforementioned herein: 1 acre of government, state, county, or city land and $300,000.00** (three hundred thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars and **$500.00** (five hundred) per day penalty until all lien(s), levy(s), impoundment(s), and/or garnishment(s) are terminated along with all funds reimbursed and all property returned in the same condition as it was when taken with 18% annual interest and my declared value of property.

29. **For every destruction, deprivation, concealment, defacing, alteration, or theft of property,** including buildings, structures, equipment, furniture, fixtures, and supplies belonging to the Natural Person and Secured Party will incur a penalty of total new replacement costs of property as indicated by owner and secured party including but not limited to purchase price and labor costs for locating, purchasing, packaging, shipping, handling, transportation, delivery, set up, assembly, installation, tips and fees, permits, replacement of computer information and data, computer hardware and software, computer supplies, office equipment and supplies, or any other legitimate fees and costs associated with total replacement of new items of the same type, like, kind, quality, and quantity as the lost items. The list and description of affected property will be provided by the owner and secured party which will be accepted as complete, accurate, and uncontestable by the agency(s), representative(s), and/or person(s) thereof that caused such action. In addition to the aforementioned cost, **there will be a $6,000.00** (six thousand) fee per day in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars until property is restored in full, beginning on the first day after the incident as provided by this contract.

It is not my intention to harass, to intimidate, to offend, to conspire, to blackmail, to coerce, or to cause anxiety, alarm, or distress. This document and attachments are presented with honorable and peaceful intentions and are expressly for your benefit to provide you with due process and a good faith opportunity to state a verified claim.



Doc: 00221399
Book: 2725 Page:   70

30. **For every Denial and/or Abuse of Due Process: $200,000.00** (two hundred thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per violation per person per officer or agent involved.

31. **For every Obstruction of Justice: $100,000.00** (one hundred thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per occurrence per officer and/or agent involved.

32. **For every Reckless Endangerment, Failure to Identify, Refusal to Present Credentials, and/or Failure to Charge within 48 (Forty-Eight) Hours after being Detained / Arrested: $300,000.00** (three hundred thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per occurrence per officer and/or agent involved.

33. **For every Counterfeit Statute Staple Security Instrument: $20,000.00** (twenty thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per violation per officer and/or agent involved.

34. **For every Trespass on Cestui Que Trust matter(s) and trust property including any trust property impaired as a result of any action taken without consent: $100,000.00** (one hundred thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per trespass per officer and/or agent involved.

35. **For every Trustee, agent, or individual Correspondence not signed in affidavit form under penalties of perjury or commercial liability: $5,000.00** (five thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per communication not in compliance.

36. **For every Trustee, agent, or individual Foreclosure, Repossession, Court Matters against Cestui Que Trust: $200,000.00** (two hundred thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars and 2 acres of government, state, county, or city land per occurrence per officer and/or agent involved.

37. **For every Trustee or agent taking any Cestui Que Trust property through force, duress, coercion, conversion, including but not limited to arrest / assault / kidnapping / human trafficking : $1,000,000.00** (one million) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars.

38. **For Harassment after Notice: $100,000.00** (one hundred thousand) per occurrence per officer and/or agent involved in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per occurrence and 1 acre of government, state, county, or city land.

39. **For each Violation, Breach of Trust, Breach of Contract, Breach of Fiduciary Duty, Breach of the Peace, Perjury of Oath(s) of Office of Trustee, False Swearing and acting without Authority / Jurisdiction by Trustees / Agents: $50,000.00** (fifty thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars per person per violation and 100 acres of government, state, county, or city land per occurrence per officer and/or agent involved.

40. **For False Statements from Trustees, agents, or individuals: $20,000.00** (twenty thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24: 1 of Federal Reserve notes to silver dollars per false statement per officer and/or agent involved.

41. **For each Impairment of Contract by Trustees, agents, or individuals: $30,000.00** (thirty thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars user fee per impairment.

42. **For each Violation of any unalienable rights including but not limited to all rights protected by Trusts, Trust Law, Common Law, International Law, Constitutions, Law of Nations, etc. by the actions of Trustees, agents, or individuals :**

   a. one Troy ounce of .999 pure gold (or its equivalent in Federal Reserve Notes) per hour for violating and of my unalienable rights or any of my family's unalienable rights under any and all circumstances by any law enforcement officer, judge, magistrate, corporate agent, and/or citizen;

It is not my intention to harass, to intimidate, to offend, to conspire, to blackmail, to coerce, or to cause anxiety, alarm, or distress. This document and attachments are presented with honorable and peaceful intentions and are expressly for your benefit to provide you with due process and a good faith opportunity to state a verified claim.



Doc: 00221399
Book: 2725 Page:    71

b. one Troy ounce of .999 pure gold (or its equivalent in Federal
   Reserve Notes) per detention initiated by any law enforcement
   officer, judge, magistrate, corporate agent, and/or citizen;
c. my body's weight in .999 pure gold (or its equivalent in Federal
   Reserve Notes) for the taking of my life. This lawful paper is to be
   honored by the People of the fifty states and the People of the
   United States of America for the protection of the People on the
   land known as any of the fifty states which make up the union known
   as the Unites States of America. This lawful paper must be honored
   in any court with any of the fifty states which make up the union
   known as the Unites States of America.
d. One Troy ounce of .999 pure gold (or its equivalent in Federal
   Reserve Notes) per hour for any of my time consumed in detention,
   imprisonment, or attempts by any law enforcement officer, judge,
   magistrate, corporate agent, and/or citizen to establish their
   statutory jurisdiction upon Me or my family without expressed,
   written consent.

43. **For any harm done to our family pets without cause and/or
    justification:** $100,000.00 (one hundred thousand) in silver dollar
    coin convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal
    Reserve notes to silver dollars per violation per person and 1 acre of government per
    officer and/or agent involved.

44. **For each request or demand under lack of full disclosure without
    the autograph of the Beneficiary on any lawful contract:**
    $15,000.00 (fifteen thousand) in silver dollar coin convertible at the legal
    and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars
    per person per violation.

45. **For each taking of fingerprints by force, coercion, or duress:**
    $4,000.00 (four thousand) in silver dollar coin convertible at the legal and
    lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars.

46. **For each field test demanded during unlawful detainment /
    traffic stop:** $20,000.00 (twenty thousand) in silver dollar coin
    convertible at the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve
    notes to silver dollars.

47. **For each D.N.A. test demanded or taken by force, duress, or
    coercion during unlawful detainment:** $200,000.00 (two hundred
    thousand) in silver dollar coin convertible at the legal and lawful ratio prescribed
    by law of 24 : 1 of Federal Reserve notes to silver dollars per violation.

48. **For any fraudulent foreclosures, liens, contracts, auctions
    placed against my property:** $500,000.00 (five hundred thousand)
    in silver dollar coin convertible at the legal and lawful ratio prescribed by law of 24
    : 1 of Federal Reserve notes to silver dollars per person per violation and 2 acres of
    government, state, county, or city land per occurrence per officer and/or agent involved.

49. **For all ex-parte hearings or meetings without my knowledge or
    consent and without given proper notice of 14 days in advance:**
    $30,000.00 (thirty thousand) in silver dollar coin convertible at the legal
    and lawful ratio prescribed by law of 24: 1 of Federal Reserve notes to silver dollars.

50. **For failure to fully disclose any contract under acts of fraud:**
    $50,000.00 (fifty thousand) in silver dollar coin convertible at the legal
    and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to silver dollars
    per violation.

51. **For every theft of property of conveyance / automobile by
    impounding, towing, or forced removal from any private or public
    property without written consent from me:**
    $7,000.00 (seven thousand) per day in silver dollar coin convertible at
    the legal and lawful ratio prescribed by law of 24 : 1 of Federal Reserve notes to
    silver dollars per violation.

**Matthew Chapter 5 verses 25-26**

It is not my intention to harass, to intimidate, to offend, to conspire, to blackmail, to coerce, or to
cause anxiety, alarm, or distress. This document and attachments are presented with honorable and peaceful
intentions and are expressly for your benefit to provide you with due process and a good faith opportunity
to state a verified claim.



# FORM 3

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**
**Form 3**
## INITIAL STATEMENT OF BENEFICIAL OWNERSHIP OF SECURITIES

(Print or Type Responses)

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0104 |
| Expires: | July 31, 2024 |
| Estimated average burden hours per response. . . . . . 0.5 | |

**1. Name and Address of Reporting Person***

(Last)        (First)        (Middle)

(Street)

(City)        (State)        (Zip)

**2. Date of Event Requiring Statement (Month/Day/Year)**

**3. Issuer Name and Ticker or Trading Symbol**

**4. Relationship of Reporting Person(s) to Issuer**
(Check all applicable)
_____ Director         _____ 10% Owner
_____ Officer (give         _____ Other (specify
         title below)                  below)
_____

**5. If Amendment, Date Original Filed** (Month/Day/Year)

**6. Individual or Joint/Group Filing** (Check Applicable Line)
__ Form filed by One Reporting Person
__ Form filed by More than One Reporting Person

### Table I — Non-Derivative Securities Beneficially Owned

| 1. Title of Security (Instr. 4) | 2. Amount of Securities Beneficially Owned (Instr. 4) | 3. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 4. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, *see* Instruction 5(b)(v).

**Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

**FORM 3 (continued)**

**Table II — Derivative Securities Beneficially Owned ( *e.g.,* puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 4) | 2. Date Exercisable and Expiration Date (Month/Day/Year) | | 3. Title and Amount of Securities Underlying Derivative Security (Instr. 4) | | 4. Conversion or Exercise Price of Derivative Security | 5. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 5) | 6. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|---|---|---|---|
| | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Explanation of Responses:

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
  *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient,
  *See* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not
required to respond unless the form displays a currently valid OMB Number.

_____        _____
**Signature of Reporting Person                Date

# FORM 4

☐ **Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue.** *See Instruction 1(b).*

(Print or Type Responses)

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | December 31 2024 |
| Estimated average burden hours per response | 0.5 |

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

| (Last)          (First)          (Middle) | 3. Date of Earliest Transaction Required to be Reported (Month/Day/Year) | 4. If Amendment, Date Original Filed(Month/Day/Year) | ____ Director            ____ 10% Owner<br>____ Officer (give title below)      ____ Other (specify below) |
|---|---|---|---|

(Street)

(City)          (State)          (Zip)

6. Individual or Joint/Group Filing (Check Applicable Line)<br>____ Form filed by One Reporting Person<br>____ Form filed by More than One Reporting Person

**Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/ Day/ Year) | 2A. Deemed Execution Date, if any (Month/ Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction (s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

(Over)

SEC 1474 (11-11)

**FORM 4 (continued)**

**Table II — Derivative Securities Acquired, Disposed of, or Beneficially Owned**
*( e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned following Reported Transaction(s)(Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

Explanation of Responses:

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
    *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient,
    *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not
required to respond unless the form displays a currently valid OMB Number.

**Signature of Reporting Person _____      Date _____